UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | Case No. 16-bk-11983-REF |
| TIMOTHY DOUGLAS HAYES, | Chapter Number:  7 |
| Debtor. | Adv. No. _____ |
| 315 BOWERY HOLDINGS, LLC and CBGB FESTIVAL, LLC | COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT |
| Plaintiffs, | |
| v. | |
| TIMOTHY HAYES, | |
| Defendant. | |

Pursuant to 11 U.S.C. § 523(a) and Bankruptcy Rules 4007 and 7001(6) of the

Federal Rules of Bankruptcy Procedure, Creditors and Plaintiffs 315 Bowery Holdings, LLC

("Bowery") and CBGB Festival, LLC ("CBGB Festival") (collectively, "CBGB" or the "CBGB

Parties") file this complaint in the United States Bankruptcy Court for the Eastern District of

Pennsylvania to have certain debts owed to CBGB by and from Timothy Hayes (hereinafter

"Debtor" or "Hayes") declared nondischargeable.

## INTRODUCTION

1.      CBGB files this Complaint to establish the nondischargeability of Debtor's

liability to CBGB concerning over half a million dollars in stolen funds.  Debtor filed the instant

bankruptcy petition shortly after CBGB discovered that Debtor had defrauded and embezzled

CBGB out of hundreds of thousands of dollars, which CBGB is attempting to recover in a civil

action in New York state court.

2.      CBGB is an entertainment company that had hired Hayes as a consultant to

promote the CBGB brand and to arrange live music events for CBGB in New York City.

Starting in 2012, Hayes arranged for CBGB to hire SW Productions, Inc. ("SWP"), a local live

music production company in New York City, and its principal, Stuart Weissman ("Weissman"),

to handle the permitting and production for live music events.  Over the course of SWP working

for CBGB on three major live music events, however, Hayes arranged for CBGB to overpay for

SWP's services by tens or hundreds of thousands of dollars at a time, with Hayes pocketing the

difference.

3.      Hayes's and SWP's schemes included false representations about amounts due,

bogus line items included in SWP's budgets, and the intentional concealment or alteration of

estimates and invoices.  Indeed, Hayes expressly told CBGB's owners that his wholly owned

company Productions New York City, LLC ("Productions NYC") had ceased operations and no

longer made a dime, when in fact he was secretly using that very company to divert hundreds of

thousands of dollars from CBGB to his own pockets.  Through the schemes, Hayes and his

cohorts defrauded CBGB out of more than $550,000 that CBGB has identified, injuring CBGB

in its property.

4.      The alliance between Hayes and SWP eventually disintegrated, and SWP

ultimately filed a lawsuit against CBGB, Hayes and others based on various promises Hayes had

supposedly made on CBGB's behalf.  CBGB thereafter discovered the massive fraudulent

schemes of Hayes and his co-conspirators, and CBGB has effectively assumed the role as

plaintiff in that action.  In that court, CBGB is pursuing numerous claims against Hayes,

Productions NYC, SWP and others, including for violations of the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), as well as for fraud, conversion,

fraudulent conveyance, unjust enrichment, money had and received, and, in the alternative,

breach of fiduciary duty and negligent misrepresentation, among others.  The New York lawsuit,

captioned *SW Productions, Inc. v. CBGB Festival, LLC et al.*, No. 652990/2014 (N.Y. Sup. Ct.

N.Y. County), is referred to herein as the "New York Action."

## JURISDICTION AND VENUE

5.      On or about March 23, 2016, the Debtor filed for relief pursuant to Chapter 7 of

the United States Bankruptcy Code and the case was assigned number 16-bk-11983-REF.

6.      This is an adversary proceeding brought by CBGB pursuant to 11 U.S.C.

§ 523(a).  This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

7.      The Bankruptcy Court has jurisdiction over the subject matter raised in this

complaint pursuant to 28 U.S.C. § 1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

8.      Plaintiff Bowery is a limited liability company organized under the laws of the

State of Delaware, with its principal place of business located in New York, New York.

9.      Plaintiff CBGB Festival is a limited liability company organized under the laws of

the State of Delaware, with its principal place of business located in New York, New York.

CBGB Festival is a wholly owned subsidiary of Bowery and was responsible for putting on the

CBGB Music and Film Festival in 2012, 2013 and 2014.

10.     Defendant Hayes is an individual who, on information and belief, at all relevant

times has resided in New York, New York, and/or Mount Bethel, Pennsylvania.

## FACTUAL ALLEGATIONS

**I.      Background and Procedural History**

11.      Bowery owns the rights to the storied brand CBGB®, which refers to the iconic

music venue that had operated in downtown Manhattan from 1973 until 2006.  From 2012

through 2014, CBGB Festival, Bowery's wholly owned subsidiary, produced a multi-day, city-

wide festival featuring live music performances, music-related film screenings and other events

branded as the "CBGB Music and Film Festival."  Each year, the multi-day festival culminated

in an all-day multi-stage free music concert, open to the public, in Times Square (the "Times

Square Concert").  CBGB also funded and co-branded with Amnesty International a live music

event at the Barclays Center in Brooklyn in February 2014 (the "Amnesty Concert").

12.      Bowery is owned by individual owners and is managed by the Board, composed

of Michael Smith and Michael Arougheti, who collectively hold a majority interest in Bowery.

Bowery has no officers and the Board has the exclusive authority to bind Bowery.  Bowery's

wholly owned subsidiaries are all member-managed and have no officers and as a result, Bowery

has the exclusive authority to bind such subsidiaries (including CBGB Festival).

13.      CBGB engaged Hayes to promote the CBGB brand, in part due to Hayes's

professed relationships in the entertainment industry and his experience holding live events in

New York City, including through his wholly owned production company Productions NYC.  At

Hayes's request, all payments for Hayes's services were directed to Hayes's company,

Productions NYC.  Hayes and Productions NYC are referred herein collectively as the "Hayes

Defendants."

14.      Bowery and Hayes reached an agreement as follows: Bowery would pay Hayes,

through his company Productions NYC, approximately $10,000 per month to develop the CBGB

brand, an amount that Bowery and Hayes later agreed to increase to approximately $12,000 per

month; Hayes was not permitted to enter into any agreement on behalf of CBGB without the

written approval of the Board; with respect to using CBGB credit cards and/or checks, Hayes

was not permitted to consummate any transaction over $1,000 without the approval of at least

one member of the Board; and Hayes would keep CBGB and the Board informed of CBGB-

related business.

15.    In or around late 2011, CBGB directed Hayes to begin work on attempting to

produce a large, multi-day annual music festival in New York City under the CBGB brand,

which concept would become the CBGB Music and Film Festival.  One component of the CBGB

Music and Film Festival was the Times Square Concert.

16.    Hayes arranged for CBGB Festival to engage SWP to produce the 2012 Times

Square Concert, as well as two additional live entertainment events in New York City.

Unbeknownst to CBGB at the time, Hayes had set up CBGB to be the victim of sustained

fraudulent schemes that would cost CBGB hundreds of thousands of dollars over a nearly two-

year period.

17.    CBGB discovered the fraud years after the fact, as a result of the New York

Action.  SWP commenced the New York Action in October 2014, in which it sued CBGB for

hiring a different production vendor to handle the 2014 Times Square Concert, claiming that

Hayes had promised the production work to SWP.  During the litigation, documents produced by

SWP and recovered from Tim Hayes's email account revealed numerous irregular payments

funneled from CBGB to Hayes's company Productions NYC.  In November 2015, CBGB filed a

third-party complaint against Hayes seeking damages for two illegal payments totaling $50,000 –

a figure that turned out to be the tip of the iceberg.  In the months that followed, additional

document discovery exposed a much larger fraudulent overcharge scheme by which Hayes had embezzled some $550,000 from CBGB.

18.     CBGB disclosed to Hayes that it had discovered his more than half-million dollar overcharge scheme.  On February 19, 2016, CBGB sent Hayes and the other parties a proposed draft of an amended seventeen-count pleading against them, including claims sounding in RICO, fraud and conversion, among others.  Hayes filed his bankruptcy petition very soon thereafter.

19.     On March 23, 2016, CBGB filed a letter to the Honorable Jeffrey K. Oing, Justice of the Supreme Court, State of New York, seeking leave to file its amended pleading, including to add its RICO claims against Hayes and the other defendants.  The following day, March 24, 2016, Hayes's bankruptcy counsel sent notice of this Bankruptcy Case to the parties in the New York Action.  The parties also made Justice Oing aware of this Bankruptcy Action.

20.     None of the parties, including Hayes and Productions NYC, opposed CBGB's request to amend its pleading in the New York Action.  On April 27, 2016, Justice Oing granted CBGB's request to file its Second Amended Answer, including its RICO and other fraud-related claims.  CBGB's Second Amended Answer in the New York Action, filed May 3, 2016, sets forth its current claims against Hayes and others, a copy of which, with exhibits, is attached as **Exhibit A** (the "SAA").  On the consent of the parties, Justice Oing entered a general stay as to all parties, pending CBGB's anticipated application before this Bankruptcy Court to lift the automatic stay as to the New York Action.

21.     In the New York Action, CBGB asserts claims against Hayes, Weissman, Productions NYC, SWP, and SWP former employee Jennifer Douglas (the "RICO Defendants").  CBGB's RICO claims are based principally on Hayes's fraud, his willful and malicious injury to CBGB and its property, his material written misstatements about his financial condition, and, as

pleaded in the alternative, his fraud or defalcation while acting as a fiduciary.  Accordingly,

Hayes's resulting liability to CBGB is nondischargeable, and CBGB therefore submits this

Complaint to Determine Nondischargeability of Debt.

## II.    Hayes, Weissman, Productions NYC and SWP Form an Association-in-Fact Enterprise to Produce Live Events in New York City

22.    From at least 2012 until 2014, Hayes, SWP, Productions NYC, and Weissman

operated as an enterprise, producing live events for clients such as CBGB, but also engaged in a

corrupt scheme to defraud.  CBGB has alleged that the association of Hayes, Productions NYC,

SWP and Weissman constituted an "Enterprise" for purposes of establishing a RICO violation.

(*See* SAA at ¶¶ 176-183, 265-67.)

23.    For CBGB, that enterprise arranged and produced three major live music events:

the Times Square Concert in July 2012, the Times Square Concert in October 2013 and the

Amnesty Concert in February 2014.

24.    Hayes, Weissman, Productions NYC and SWP functioned as a collusive unit,

focused on extracting the maximum amount of money from CBGB.  Hayes, individually and

through Productions NYC, sourced clients who wanted to promote live events, and arranged for

them to engage SWP, which was headed by Weissman and staffed with various employees,

including Jennifer Douglas, a co-defendant to CBGB's RICO claims in the New York Action.

25.    Hayes secured the CBGB Board's financial commitment or specific payments by

misrepresenting the purpose or deadline for the charges, by falsely reporting the preferences or

promises of the City of New York (the "City"), or by misrepresenting that some charges were for

the benefit of the City rather than SWP.  Including without limitation in emails from Hayes to

Michael Smith and others in June 2012, Hayes conveyed that SWP was the City's preferred live

event vendor, and portrayed himself as negotiating at arm's length on CBGB's behalf for better

terms.

26.     In reality, SWP and the Hayes Defendants did not operate at arm's length at all.

Hayes and Weissman worked collusively to obtain the largest possible payments that CBGB

might agree to pay.  Thus, Hayes all but ignored a written agreement (the so-called "Proposal

Agreement") when it suited SWP – allowing SWP to charge fees and other payments well

beyond what that agreement allowed.  Meanwhile, Hayes proposed to Weissman that their

companies enter into a "Business Alliance Agreement" that would commit their exchange of

ideas to secrecy, and at some point Weissman and Hayes even discussed having their businesses

work out of adjoining office spaces.

## III.    Hayes, Weissman, Productions NYC and SWP Engage in Repeated Fraudulent Schemes to Overcharge CBGB

27.     Hayes, Weissman, Productions NYC and SWP conducted the affairs of the

Enterprise through a pattern of racketeering activity, including wire fraud, causing substantial

injury to CBGB's business or property.

28.     Hayes, Weissman, Productions NYC and SWP knowingly and intentionally

participated in schemes to defraud CBGB and to obtain money from CBGB under false or

fraudulent pretenses and representations.  Pursuant to the schemes, Hayes requested that CBGB

make payments to SWP purportedly as amounts needed for production of CBGB live events,

including the 2012 and 2013 Times Square Concerts and the 2014 Amnesty Concert.  The

amounts, however, were deliberately inflated.  Weissman and SWP would pay the excess

amounts to Hayes through Productions NYC, and Hayes and Productions NYC in turn continued

to source live events to SWP for production.

29.    On numerous occasions, the RICO Defendants transmitted or caused to be transmitted writings through interstate wires for the purpose of executing those fraudulent schemes, in violation of 18 U.S.C. § 1343, the federal Wire Fraud statute.

30.    Over the course of producing three separate live events from 2012 to 2014, the RICO Defendants arranged for CBGB to make at least nine payments to SWP, totaling over $3 million.  As a result of the RICO Defendants' fraudulent scheme, most of those payment requests were for deliberately inflated amounts.  Upon receiving payment from CBGB, SWP forwarded some or all of the overcharged portions to the Hayes Defendants, in some cases on the same day.

31.    In some instances, the fraudulent overcharges were built into the production budgets prepared by SWP, as bogus line items representing amounts that Weissman intended to divert to Hayes.  The RICO Defendants, in production budgets circulated among themselves, listed these line items as "production management services" or "miscellaneous," sometimes with Productions NYC expressly listed as the vendor.  These amounts were included in the total amounts requested or invoiced by SWP.  Hayes and Productions NYC would then communicate those amounts (or still larger, further inflated amounts) to the CBGB Board.  These bogus budget items totaled $100,000 in fraudulent overcharges.   Later, in an email to Hayes, Weissman would refer to these charges as amounts he had "paid your other company out of the production budget as a 'consulting fee' for the first two years."

32.    Later, when a dispute arose between SWP and Productions NYC, Weissman openly mocked the notion that these production budget entries had any legitimate purpose:

> Thank you for the swift reply.  I can't help but to see the irony of
> your $100,000.00 settlement offer being the exact same amount
> SWP paid your other company out of the production budget as a
> "consulting fee" for the first two years.

S. Weissman email to T. Hayes, Aug. 27, 2014 (SAA, Exhibit 16).

33.    On other occasions, Hayes and Productions NYC simply requested the CBGB Board to pay SWP amounts that were significantly above the amounts SWP had requested or invoiced.  SWP then transferred the excess amounts to Hayes and Productions NYC, either as a separate payment or as a credit against other SWP-related projects.  SWP recorded at least some of these excess side-payments as debits against CBGB's earlier payments, thus inflating the amounts still "outstanding" from CBGB.

34.    Hayes, therefore, took steps to ensure that CBGB never saw the actual amounts SWP requested.  In July 2012, Hayes and Douglas exchanged emails whereby she would send him SWP's invoice as a Word document, so he could "edit" it.  Douglas also affirmatively avoided disclosing to anyone working with CBGB other than Hayes information about the payments to SWP.  She provided assurances to Hayes that she would keep such information secret, including in an October 2013 email, in which Hayes warned Douglas, "only talk budget & money with me," and Douglas replied, "I never speak numbers with anyone else."  J. Douglas email to T. Hayes, Oct. 11, 2013 (SAA, Exhibit 6).

35.    On information and belief, Douglas agreed to participate in the schemes with respect to some or all of the overcharges.  Douglas did so with actual knowledge of the fraudulent schemes and intending to carry out those schemes.  Douglas took affirmative acts in furtherance of the schemes and substantially assisted Hayes, Weissman, SWP and Productions NYC in carrying out the schemes, including by composing and/or transmitting the production budgets with the bogus line entries, helping the Hayes Defendants in altering or concealing the actual production expenses, composing and/or transmitting records of the excess amounts received from CBGB, composing and/or transmitting records of the excess amounts diverted to Productions NYC, and issuing one or more checks to divert funds to Productions NYC.

36.    Through their pattern of racketeering activities, the RICO Defendants defrauded CBGB out of no less than $550,000, and potentially much more.  The RICO Defendants imposed numerous fraudulent overcharges on CBGB, including without limitation, the particular payments set forth below:

37.    **$43,445 - July 2012.**   On or about July 17, 2012, for the 2012 Times Square Concert, Hayes requested and CBGB issued a payment to SWP, in the form of a check for $81,545.25.  That amount was inflated in two respects.  First, the invoice that Hayes had received from SWP was for only $63,103.28 – meaning that the amount reported to CBGB by Hayes exceeded the actual invoiced amount by $18,441.97.  The same day, July 17, 2012, SWP issued a check to Hayes's company, Productions NYC, for $18,444.97 (exactly three dollars ($3.00) more than the overpayment).  Second, even the invoiced amount was inflated by a $25,000 "production management services" charge for the benefit of Productions NYC.  In fact, SWP had already paid the $25,000 to Hayes or Productions NYC by check the previous month, on or about June 14, 2012.

38.    **$47,500 - May 2013.**   On or about May 8, 2013, Hayes sent an email to the CBGB Board requesting that they arrange for a $100,000 check to be paid to SWP, which he represented was a "deposit."  T. Hayes email to M. Smith, M. Arougheti, dated May 8, 2013.  On or about May 16, 2013, CBGB issued the check requested by Hayes to SWP for $100,000.  Around that same day, SWP paid $47,500 back to Hayes by issuing a check to Productions NYC.

39.    **$45,000 - July 2013.**   On or about July 8, 2013, Douglas transmitted to Hayes by email over interstate wires an invoice for the "TS Festival" for $100,000.00, consisting of a "June 2013 Production Fee" for $50,000 and a "July 2013 Production Fee" for $50,000.  Under

the payment terms that SWP had accepted in the Proposal Agreement, no production fees were in fact due in June or July 2013.  At Hayes's request, CBGB issued a check to SWP for $100,000 in response to the invoices.  On or about July 16, 2013, SWP paid $45,000 back to Hayes by issuing a check to Productions NYC.

40.    **$250,000 - August 2013.**  In August 2013, the RICO Defendants extracted their single largest overcharge from CBGB: $250,000 in one payment.  On August 12, 2013, Hayes requested by email sent over interstate wires that the CBGB Board issue a wire to SWP's account for $1.3 million, including in an email dated August 12, 2013 (SAA, Exhibit 3).  In another email that day, Hayes represented to Michael Smith, "I just spent the last 90 minutes with Evan Korn from the Mayors [*sic*] office.  It will make our path forward much more favorable if the funds get wired today," which on information and belief, Hayes knew to be false.  T. Hayes email to M. Smith, Aug. 12, 2013 (SAA, Exhibit 4).  Following Hayes's request, CBGB wired $1,300,000 to SWP on or about August 12, 2013.  That same day, SWP paid $250,000 back to Hayes by issuing a check to Productions NYC.  Douglas signed the SWP check.  (SAA, Exhibit 5).

41.    **$57,275 - October 2013.**  On October 11, 2013, Hayes sent an email requesting that CBGB wire $531,275 to SWP, which he misrepresented consisted of "additions above and beyond the core production."  T. Hayes email to M. Smith, Oct. 11, 2013 (SAA, Exhibit 7).  CBGB wired $531,275 to SWP on or about that day.  One week later, on or about October 18, 2013, SWP paid $57,275 back to Hayes by issuing a check to Productions NYC.  SWP recorded the payment to Hayes as two separate transactions, one for $25,000 corresponding to a line item on the budget for Production Management Services, and one for $32,275.

42.    **$111,511 - January and February 2014.**  In connection with the February 2014 Amnesty Concert,  at Hayes's requests, CBGB wired $107,350 to SWP on or about January 29, 2014, and wired $603,000 to SWP on or about February 4, 2014.  In both instances, Hayes assured CBGB that these were legitimate concert expenses, supportable by "full, itemized documents for every item," that "will show each vendor and asset" and, similarly, that Hayes would later demonstrate in a "full accounting."  (*See* T. Hayes email to M. Smith, Jan. 27, 2014 (SAA, Exhibit 11); T. Hayes email to M. Smith, Feb. 4, 2014 (SAA, Exhibit 12).)  These requests included substantial overcharges for Hayes's and SWP's benefit. On February 24, 2014, Weissman sent Hayes a "closing out" worksheet (SAA,  Exhibit 13), which clearly documented Hayes and SWP had again fraudulently overcharged CBGB by $61,511.43 – a figure that appeared on the worksheet with the description "Amount Due back Productions NY."  The worksheet revealed an additional overcharge of $50,000 – a bogus "expense" in the production budget labeled miscellaneous, but merely another kickback for Hayes.  In the "closing out" spreadsheet, next to the figure purportedly due SWP ($648,838.57), Weissman had noted for Hayes, "your $50k is in this number."  Thus, through their fraudulent schemes, Hayes and the other RICO Defendants arranged for CBGB to pay at least at least $111,511.43 in fraudulent overcharges for the 2014 Amnesty Concert.

43.    On information and belief, after Productions NYC received the above payments, Hayes transferred those amounts to himself or used them for his personal benefit without fair consideration to Productions NYC, leaving Productions NYC insolvent.

44.    Accordingly, Hayes and the other RICO Defendants defrauded CBGB out of some $554,731 that was used to make side payments to Hayes, in addition to certain improper charges, and perhaps other amounts not yet discovered.

**IV.    Hayes Made Written Misrepresentations of His Financial Condition, Falsely Stating
that He Depended Exclusively on His Monthly Fee from CBGB, and No Longer
Generated Income from Productions NYC**

45.    In connection with diverting the fraudulent overcharges, Hayes repeatedly
misrepresented that he was honoring his agreement as to the total compensation he would receive
for his services to Bowery.  Bowery paid Hayes $12,000 per month to promote the CBGB brand,
including to oversee production of each Times Square Concert and the 2014 Amnesty Concert.
Hayes arranged additional unauthorized compensation for himself, in the form of the excess
payments charged to CBGB, without CBGB's knowledge.

46.    Hayes nonetheless expressly told the CBGB Board in writing, including in emails,
that Productions NYC was not receiving any other money – in each instance a blatantly false
statement.  Such written statements included, without limitation, an email from Hayes to Michael
Smith, dated Jan. 23, 2013, an email from Hayes to Michael Smith, dated July 22, 2013, and an
email from Hayes to M. Smith, dated Oct. 14, 2013.

47.    Hayes sent Smith emails stating that Hayes was "all in" with CBGB, that he had
"walked away" from Productions NYC, that he had "closed" Productions NYC, and that he was
"not doing any work 'on the side' for someone else."  These included emails in January 2013 and
July 2013.  In one instance, Hayes sent such an email less than a week after having received a
secret side payment from SWP for $45,000 through Productions NYC.

48.    In October 2013, Hayes emailed Smith specifically that he and his family's sole
source of income was his monthly fee from CBGB: "I would like to have Melissa cut a salary
check for me tomorrow.  *I am focused on CBGB 24/7 and I depend on it now to keep the family
going since leaving productions ny.*"  T. Hayes email to M. Smith, Oct. 14, 2013 (SAA, Exhibit
8) (emphasis added).  In fact, by October 2013, Hayes had already diverted hundreds of
thousands of dollars from CBGB through Productions NYC, through the fraudulent overcharge

schemes.  Days after the October 14 email, Hayes received another $57,275 in side payments that SWP made to Productions NYC.

49.    The CBGB Board reasonably relied on Hayes's assurances that Productions NYC had closed all operations and was no longer generating any income for Hayes other than his agreed-upon compensation for CBGB services.  The CBGB Board also reasonably relied on Hayes's assurances that he was honoring their agreement with respect to the total compensation he received for working on CBGB matters.  Had the CBGB Board known that Hayes was using his role at CBGB to arrange overpayments to SWP and funnel the extra dollars into his own pocket through Productions NYC, the CBGB Board would have terminated its relationship with Hayes, would have stopped making compensation payments to Hayes, and would have ceased making the payments to SWP that enabled Hayes to obtain the illegal side payments.

**V.    Hayes's Misconduct Was Willful, Malicious and Made with Intent to Deceive**

50.    In his participation in the above fraudulent schemes and in his dealings with CBGB as set forth above, Hayes and the other RICO Defendants acted willfully and maliciously to injure CBGB in its property, with felonious intent, and with the intent to deceive CBGB.

51.    CBGB makes its allegations as to Hayes's state of mind, without limitation, based on the following:

(a)    Hayes received at least $550,000 from CBGB's payments that Hayes knew to be overcharges, while he misrepresented to CBGB that he, Hayes, was honoring the agreed-upon compensation for his services of $144,000 per year.

(b)    Hayes misrepresented to CBGB that Productions NYC was inactive and no longer a source of income for him, when in fact Hayes was using Productions NYC to funnel side-payments to himself.

(c)      Hayes sent emails and other communications to CBGB that blatantly misrepresented the amount and nature of payments that were due, and Hayes sent altered and/or incorrect financial information to CBGB.

(d)      Hayes arranged for CBGB Festival to hire SWP based on false pretenses, presenting SWP as the City's "preferred" vendor, while concealing from CBGB certain aspects of his relationship with SWP, Weissman and Douglas.

(e)      Hayes concealed from CBGB and the Board that he had signed a two-year commitment to SWP purportedly on behalf of CBGB Festival in the Proposal Agreement, including in some instances on better financial terms than Hayes later allowed SWP to charge CBGB.

(f)      Hayes received production budgets from Weissman and Douglas, making clear that SWP recorded side-payments to Hayes as debits against CBGB's payments, thus inflating the amounts "outstanding" from CBGB.

52.      CBGB states, in the alternative, that information regarding Hayes's state of mind is peculiarly within Hayes's knowledge and therefore alleges such state of mind on information and belief, including based on the information set forth above.

**FIRST CLAIM FOR RELIEF**
**11 U.S.C. § 523(a)(2)(A)**
**(money or property obtained by false pretenses,**
**false representation or actual fraud)**

53.      CBGB repeats and incorporates by reference each of the allegations set forth above.

54.      Hayes further engaged in false statements, false pretenses and actual fraud in his communications with CBGB regarding the payment amounts due to SWP for its performance of production services.  Hayes's conduct included, without limitation, the communications set forth

above in or around July 2012 for the 2012 Times Square Concert, in or around August and

October 2013 for the 2013 Times Square Concert, and in or around January and February 2014

for the Amnesty Concert.  In these communications by phone, email and in person, Hayes

misstated to CBGB that the requested amounts represented the funds that SWP required for its

own services or to pay others for necessary resources.

55.     Hayes engaged in false statements, false pretenses and actual fraud in his

communications with CBGB regarding the nature of his relationship with SWP, SWP's

relationship with the City, and the purpose and deadlines for payments supposedly due SWP.

56.     Hayes's representations were expressly and materially false and misleading

because Hayes was not operating at arm's length with SWP, SWP was not the City's preferred

live event vendor, and the purpose of the payments to SWP was not what Hayes represented

them to be.  Moreover, the amounts Hayes represented as being due to SWP, in fact, were not

necessary to pay for SWP's services but were inflated for the sake of funding side payments to

Productions NYC, for the benefit of Hayes.

57.     CBGB relied on Hayes's false pretenses, false representations and actual fraud,

and CBGB's reliance was reasonable.  In reliance on Hayes's false pretenses, false

representation and actual fraud, CBGB continued to make payments to SWP, made payments to

SWP at inflated amounts, and continued to pay Hayes his monthly consulting fee.

58.     Hayes further engaged in actual fraud, on information and belief, by arranging

fraudulent transfers of the proceeds of his overcharge schemes from Productions NYC to

himself.  On information and belief, Hayes arranged the transfers from Productions NYC to

himself with the intent to hinder, obstruct and impede creditors of Productions NYC, and such

transfers left Productions NYC insolvent and unable to pay existing or anticipated liabilities.

59.     CBGB therefore suffered losses as a direct and proximate result of Hayes's false

pretenses, false representations and actual fraud.

60.     Accordingly, Hayes's liability to CBGB is a debt for money or property that

Hayes obtained by false pretenses, false representations and actual fraud.

61.     Based on the foregoing, CBGB is entitled to a determination that Hayes's liability

to CBGB as set forth above and, without limitation, as set forth in the SAA, constitutes a

nondischargeable debt under 11 U.S.C. § 523(a)(2)(A).

## SECOND CLAIM FOR RELIEF
## 11 U.S.C. § 523(a)(2)(B)
## (materially false written statement of
## debtor's financial condition)

62.      CBGB repeats and incorporates by reference each of the allegations set forth

above.

63.     Hayes composed and transmitted written statements to CBGB regarding his

financial condition, including that he no longer generated any revenue from Productions NYC,

that the agreed-upon $12,000 monthly fee that CBGB paid him was his sole source of income,

that he was not making any money "on the side," and that he and his family depended

exclusively on his agreed-upon CBGB compensation.   These statements were transmitted by

email, including without limitation in the communications set forth above from January 2013,

July 2013 and October 2013.

64.     Hayes's written statements were false.  Hayes and his family did not depend on

his monthly CBGB fee as his only source of income, he continued to generate significant

revenue through the fraudulent overcharge schemes he carried out against CBGB, and he was

carrying out that scheme through the entity he represented to have been closed, Productions

NYC.  Hayes made his written false statements with the intent to deceive CBGB.

65.     Hayes's false statements were material.  From 2012 to 2014, Hayes diverted excess payments from CBGB to himself worth more than twice as much as his agreed-upon compensation.  Hayes's false statements also helped conceal the fraudulent scheme from CBGB.  Moreover, had the CBGB Board known about Hayes's side-payments from SWP, CBGB would have terminated its relationship with Hayes, would have stopped making compensation payments to Hayes, and would have ceased making fraudulently inflated payments to SWP.

66.     CBGB relied on Hayes's false statements, and CBGB's reliance was reasonable.  Without limitation, in reliance on Hayes's false statements, CBGB continued to make payments to SWP, made payments to SWP at inflated amounts, and continued to pay Hayes his monthly consulting fee.

67.     Accordingly, Hayes's liability to CBGB is a debt for money or property that Hayes obtained by materially false statements that Hayes made in writing respecting his financial condition with the intent to deceive CBGB and on which CBGB reasonably relied.

68.     Based on the foregoing, CBGB is entitled to a determination that Hayes's liability to CBGB as set forth above and, without limitation, as set forth in the SAA, constitutes a nondischargeable debt under 11 U.S.C. § 523(a)(2)(B).

### THIRD CLAIM FOR RELIEF
### 11 U.S.C. § 523(a)(4)
### (larceny or embezzlement)

69.     CBGB repeats and incorporates by reference each of the allegations set forth above.

70.     In carrying out the fraudulent overcharge schemes against CBGB, Hayes appropriated and colluded with others to appropriate CBGB's money illegally, without CBGB's consent and through fraud and deceit.  Hayes misappropriated CBGB's money for Hayes's own benefit, and did so with fraudulent and felonious intent.

71.    Further, in carrying out the fraudulent overcharge schemes against CBGB, Hayes and the other RICO defendants deposited and colluded to deposit the excess payments that belonged to CBGB, on information and belief, into a bank account for Productions NYC accessible only to Hayes.  Hayes used or disbursed CBGB's funds, on information and belief, by transferring such funds to himself and/or using them for his own personal benefit.

72.    Accordingly, Hayes's liability to CBGB is a debt for embezzlement or larceny.

73.    Based on the foregoing, CBGB is entitled to a determination that Hayes's liability to CBGB as set forth above and, without limitation, as set forth in the SAA, constitutes a nondischargeable debt under 11 U.S.C. § 523(a)(4).

**FOURTH CLAIM FOR RELIEF**
**11 U.S.C. § 523(a)(6)**
**(willful and malicious injury)**

74.    CBGB repeats and incorporates by reference each of the allegations set forth above.

75.    In carrying out the fraudulent overcharge schemes against CBGB, Hayes injured CBGB and its property, including by causing CBGB to pay more than $550,000 in fraudulent overcharges.

76.    At all times in connection with the fraudulent overcharge schemes, Hayes acted with the willful and malicious intent to injure CBGB by misappropriating its money.

77.    Accordingly, Hayes's liability to CBGB is a debt for willful and malicious injury to another entity or to the property of another entity.

78.    Based on the foregoing, CBGB is entitled to a determination that Hayes's liability to CBGB as set forth above and, without limitation, as set forth in the SAA, constitutes a nondischargeable debt under 11 U.S.C. § 523(a)(6).

### FIFTH CLAIM FOR RELIEF
### 11 U.S.C. § 523(a)(4)
### (alternative claims for fraud or defalcation in a fiduciary capacity)

79.    CBGB repeats and incorporates by reference each of the allegations set forth above.

80.    As an alternative basis for relief, to the extent that Hayes is found to have been an agent of CBGB empowered to enter into transactions on its behalf, then Hayes owed fiduciary duties to CBGB.  In such alternative scenario, Hayes's liability to CBGB arising from the fraudulent overcharge schemes and the false and fraudulent statements set forth above is a debt for fraud or defalcation while acting in a fiduciary capacity.

81.    Based on the foregoing, CBGB asserts an alternative basis for relief that Hayes's liability to CBGB as set forth above and, without limitation, as set forth in the SAA, constitutes a nondischargeable debt under 11 U.S.C. § 523(a)(4).

### PRAYER FOR RELIEF

WHEREFORE, CBGB prays for judgment as follows:

1.    A judgment denying the dischargeability of any debts owed by the Debtor to CBGB, including without limitation any claim, liability for, or award of, compensatory damages, treble damages, punitive damages, restitution, costs, attorneys' fees and interest:

(a)    for money or property that Debtor obtained by false pretenses, false representations or actual fraud, pursuant to 11 U.S.C. § 523(a)(2)(A);

(b)    for money or property that Debtor obtained by materially false written statements respecting Debtor's financial condition, pursuant to 11 U.S.C. § 523(a)(2)(B);

(c)    for larceny or embezzlement pursuant to 11 U.S.C. § 523(a)(4);

(d)    for willful and malicious injury to another entity or its property, pursuant to 11 U.S.C. § 523(a)(6); and/or

    (e)      as an alternative basis for relief, for fraud or defalcation while acting in a

fiduciary capacity, pursuant to 11 U.S.C. § 523(a)(4).

2.      An award of attorneys' fees and costs arising from this adversary proceeding.

3.      Any and all further relief the Court deems just and proper.

Dated: June 6, 2016                   Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: _/s Diana L. Eisner_____
      Diana L. Eisner

1050 Connecticut Avenue, NW, Suite 600
Washington, DC 20036
(202) 585-6500

Kimo S. Peluso (*pro hac vice* pending)
Benjamin J. Wolfert (*pro hac vice* pending)
7 Times Square
New York, NY 10036
(212) 790-4500

*Attorneys for Plaintiffs 315 Bowery Holdings,
LLC and CBGB Festival, LLC*

203539955.4