# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 05/03/2016 05:05 PM    INDEX NO. 652990/2014

NYSCEF DOC. No. 1555    Case 16-00186-ref    Doc 1-1    Filed 06/06/16    Entered 06/06/16 14:02:00    Desc    RECEIVED NYSCEF: 05/03/2016
Exhibit A    Page 2 of 149

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------- X

SW PRODUCTIONS, INC.

        Plaintiff,

        v.


CBGB FESTIVAL, LLC, CBGB HOLDINGS, LLC,
CBGB LLC, PRODUCTIONS NEW YORK CITY LLC,
315 BOWERY HOLDINGS, LLC, NUMBERS AND
FIGURES, INC., iDEKO PRODUCTIONS and
JENNIFER DOUGLAS,

        Defendants.

---------------------------------------------------------------- X

CBGB FESTIVAL, LLC and 315 BOWERY
HOLDINGS, LLC,

        Counterclaimants,

        v.

SW PRODUCTIONS, INC.,

        Counterclaim Defendant.

---------------------------------------------------------------- X

CBGB FESTIVAL, LLC and 315 BOWERY
HOLDINGS, LLC,

        Cross-Claim and Third-Party Plaintiffs,

        v.

PRODUCTIONS NEW YORK CITY LLC,

        Cross-Claim Defendant,

        and

TIMOTHY HAYES, STUART WEISSMAN and
JENNIFER DOUGLAS,

        Third-Party Defendants.

---------------------------------------------------------------- X

Index No. 652990/2014

Third Party Action No. 595801/2015

Hon. Jeffrey K. Oing
Part. 48

**CBGB FESTIVAL, LLC'S AND
315 BOWERY HOLDINGS, LLC'S
SECOND AMENDED ANSWER
TO AMENDED COMPLAINT,
AMENDED COUNTERCLAIMS,
AMENDED CROSS-COMPLAINT
AND AMENDED THIRD-PARTY
COMPLAINT**

**JURY TRIAL DEMANDED**

# TABLE OF CONTENTS

**Page**

THE CBGB PARTIES' ANSWER TO SWP'S AMENDED COMPLAINT ............................... 1

AFFIRMATIVE DEFENSES ....................................................................................... 23

COUNTERCLAIMS, CROSS-COMPLAINT AND THIRD-PARTY COMPLAINT
AGAINST SWP, PRODUCTIONS NYC, WEISSMAN, HAYES AND DOUGLAS .............. 25

    Nature of the Counterclaims, Cross-Claims and Third-Party Claims ............................ 25

    Overview of CBGB's Civil RICO, Common Law and New York Statutory Claims ...... 26

    Parties ........................................................................................................................... 28

    Jurisdiction and Venue ................................................................................................. 29

    Factual Background ...................................................................................................... 30

    I.     Hayes, Weissman, Productions NYC and SWP Form an Association-in-
         Fact Enterprise to Produce Live Events in New York City ................................ 31

    II.    Hayes, Weissman, Productions NYC and SWP Conduct the Affairs of the
         Enterprise Through a Pattern of Racketeering, Repeatedly Defrauding
         CBGB Through Overcharges ............................................................................ 34

         a.     Overcharges in Connection with the 2012 Times Square Concert .......... 36

         b.     Overcharges in Connection with the 2013 Times Square Concert .......... 37

         c.     Overcharges in Connection with the 2014 Amnesty Event ..................... 40

         d.     Hayes Misrepresents Productions NYC as Inactive in Order to
               Continue Eliciting Consulting Fees from CBGB, in Addition to the
               Fraudulent Overcharges ......................................................................... 41

         e.     The RICO Defendants' Participation in the Schemes to Defraud
               was Knowing and Intentional ................................................................. 43

    III.   SWP Violates the Contractual Terms of Its Engagement By Charging
         Excessive Fees and by Providing Shoddy Work ................................................. 46

    IV.   Weissman and Hayes End Their Relationship in Hostility, and Ultimately
         Sabotage the 2014 Times Square Concert .......................................................... 48

         a.     Hayes Declines to Hire SWP for the 2014 Times Square Concert,
               and SWP Retaliates by Interfering with CBGB Festival's Business ....... 48

         b.     Hayes Keeps CBGB in the Dark Regarding SWP's Increasingly
               Hostile Demands ................................................................................... 51

    Causes of Action ........................................................................................................... 53

    First Claim for Relief, Racketeering in Violation of 18 U.S.C. § 1962(c)
        (CBGB Parties against SWP, Productions NYC, Weissman and Hayes) ............ 53

-i-

# TABLE OF CONTENTS
(continued)

**Page**

Second Claim for Relief, Conspiracy to Commit Racketeering in Violation of 18 U.S.C. § 1962(d)  (CBGB Parties against Douglas, SWP, Productions NYC, Weissman and Hayes) ............................................................. 57

Third Claim for Relief,  Conversion (CBGB Parties against SWP, Productions NYC, Weissman, Hayes and Douglas) ............................................... 58

Fourth Claim for Relief,  Aiding and Abetting Conversion (CBGB Parties against SWP, Productions NYC, Weissman, Hayes and Douglas) .................... 59

Fifth Claim for Relief, Fraud (CBGB Parties against Productions NYC and Hayes and for conspiracy against SWP, Weissman, and Douglas) .................... 62

Sixth Claim for Relief, Aiding and Abetting Fraud (CBGB Parties against SWP, Weissman and Douglas) ............................................................ 64

Seventh Claim for Relief, Unjust Enrichment (CBGB Parties against SWP, Productions NYC & Hayes) ............................................................... 65

Eighth Claim for Relief, Money Had and Received (CBGB Parties against SWP, Productions NYC & Hayes) ....................................................... 66

Ninth Claim for Relief, Constructive Fraudulent Conveyance in Violation of N.Y. Debtor and Creditor Law §§ 273 and 275  (CBGB Parties against SWP, Productions NYC & Hayes) ....................................................... 67

Tenth Claim for Relief, Intentional Fraudulent Conveyance in Violation of N.Y. Debtor and Creditor Law §§ 276 and 276-a  (CBGB Parties against SWP, Productions NYC & Hayes) ....................................................... 68

Eleventh Claim for Relief, Alter Ego Liability (CBGB Parties against Hayes) ........ 70

Twelfth Claim for Relief, Alternative Claims for Breach of Fiduciary Duty, Negligent Misrepresentation and Faithless Servant (CBGB Parties against Productions NYC & Hayes) ................................................................ 71

Thirteenth Claim for Relief, Alternative Claim for Aiding and Abetting Breach of Fiduciary Duty (CBGB Parties against SWP, Weissman and Douglas) ........................................................................................ 72

Fourteenth Claim for Relief, Alternative Claim for Breach of Contract (CBGB Festival against SWP) ....................................................................... 73

Fifteenth Claim for Relief, Tortious Interference with Prospective Business Opportunity (CBGB Festival against SWP) ............................................ 75

Sixteenth Claim For Relief, Breach of Contract (CBGB Parties against Productions NYC & Hayes) ................................................................. 77

Seventeenth Claim for Relief, Common Law Indemnification and Contribution (CBGB Parties against Productions NYC & Hayes) ..................... 78

-ii-

## TABLE OF CONTENTS
(continued)

**Page**

DEMAND FOR ANSWER TO CROSS-CLAIM AND THIRD-PARTY CLAIM .................... 79

PRAYER FOR RELIEF ........................................................................................................... 80

-iii-

Defendants 315 Bowery Holdings, LLC ("Bowery") and its wholly owned subsidiary

CBGB Festival, LLC ("CBGB Festival" and, together with Bowery, "CBGB" or "CBGB

Parties"), by and through their attorneys, Manatt, Phelps & Phillips, LLP, for their second

amended answer and affirmative defenses to the Amended Complaint dated November 3, 2014

("Amended Complaint") filed by SW Productions, Inc. ("SWP" or "Plaintiff"), their amended

counterclaims against SWP, their amended cross-complaint against defendant Productions New

York City LLC ("Productions NYC") and their amended third-party complaint against third-

party defendants Stuart Weissman ("Weissman"), Timothy Hayes ("Hayes") and Jennifer

Douglas ("Douglas"), allege as follows.

<u>**THE CBGB PARTIES' ANSWER TO SWP'S AMENDED COMPLAINT**</u>

For their Answer to the Amended Complaint, the CBGB Parties plead as follows. To the

extent any allegations in the Amended Complaint relate to claims that have been dismissed in

this action, the CBGB Parties state that no response to such allegations is required. For the

avoidance of doubt, the CBGB Parties deny any and all statements in the Amended Complaint's

section headings, footnotes or otherwise made outside the numbered paragraphs therein. As to

the allegations stated in the numbered paragraphs of the Amended Complaint, the CBGB Parties

hereby answer and respond as follows:

1.      The CBGB Parties deny the allegations in paragraph 1 of the Amended

Complaint, except admit that the Amended Complaint, after the Court's order on the CBGB

Parties' motion to dismiss,[1] purports to assert claims against the CBGB Parties for promissory

---

[1] The Court dismissed Plaintiff's claims for breach of contract in connection with the Production Agreement (Cause of Action I); breach of contract in connection with the Proposal Agreement (Cause of Action II); tortious interference with prospective business relations (Cause of Action V); tortious interference with contract (Cause of Action VI); and unfair competition (Cause of Action VII) (collectively, "Dismissed Claims"). (*See* Dkt. Nos. 110-112.) Accordingly, no response is required to any allegations or purported claims in connection with the Dismissed Claims, and responses are only required to the extent related to Cause of Action III for unjust enrichment and Cause of Action IV for promissory estoppel (collectively, "Remaining Claims").

estoppel and unjust enrichment.  The CBGB Parties further aver that, to the extent paragraph 1

relates to the Dismissed Claims, no response is required.

2.      The CBGB Parties deny the allegations in paragraph 2 of the Amended

Complaint.  To the extent paragraph 2 states allegations of law, not fact, no response is required,

and they are therefore deemed denied.

3.      The CBGB Parties deny the allegations in paragraph 3 of the Amended

Complaint.  The CBGB Parties further aver that, to the extent paragraph 3 relates to the

Dismissed Claims, no response is required.  To the extent paragraph 3 states allegations of law,

no response is required, and they are therefore deemed denied.

4.      The CBGB Parties deny the allegations in paragraph 4 of the Amended

Complaint, except admit that CBGB Festival caused to be filed an application for and obtained a

permit in connection with CBGB Festival's 2014 Times Square Concert.  The CBGB Parties

further aver that, to the extent paragraph 4 relates to the Dismissed Claims, no response is

required.  To the extent paragraph 4 states allegations of law, not fact, no response is required,

and they are therefore deemed denied.

5.      The CBGB Parties deny the allegations in paragraph 5 of the Amended

Complaint.  To the extent paragraph 5 states allegations of law, no response is required, and they

are therefore deemed denied.

6.      The CBGB Parties deny knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 6 of the Amended Complaint.

7.      The CBGB Parties deny knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 7 of the Amended Complaint.

2

8.      The CBGB Parties deny the allegations in paragraph 8 of the Amended Complaint, except admit that CBGB Festival is a limited liability company formed under the laws of Delaware with its principal place of business in New York, New York.

9.      The CBGB Parties deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Amended Complaint, except aver that CBGB Holdings, LLC is not affiliated with the CBGB Parties.

10.     The CBGB Parties deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Amended Complaint, except aver that CBGB LLC is not affiliated with the CBGB Parties.

11.     The CBGB Parties deny the allegations in paragraph 11 of the Amended Complaint, except that they deny knowledge or information sufficient to form a belief as to the truth of the first two sentences of paragraph 11.

12.     The CBGB Parties deny the allegations in paragraph 12 of the Amended Complaint, except admit that Bowery is a limited liability company, formed under the laws of Delaware with its principal place of business in New York, New York.  The CBGB Parties further state that paragraph 12 contains allegations of law, not fact, to which no response is required.

13.     The CBGB Parties deny the allegations in paragraph 13 of the Amended Complaint, and further state that paragraph 13 contains allegations of law, not fact, to which no response is required.

14.     The CBGB Parties deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Amended Complaint.

3

15.     The CBGB Parties deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Amended Complaint.

16.     Paragraph 16 of the Amended Complaint contains allegations of law, not fact, to which no response is required, and is deemed denied.

17.     The CBGB Parties deny the allegations in paragraph 17 of the Amended Complaint that SWP conceived of the "Times Square Festival" as an annual event in 2010, and first produced it in 2011.  The CBGB Parties deny information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 17.

18.     The CBGB Parties deny the allegations in paragraph 18 of the Amended Complaint.

19.     The CBGB Parties deny the allegations in paragraph 19 of the Amended Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the first sentence of paragraph 19.

20.     The CBGB Parties deny the allegations in paragraph 20 of the Amended Complaint.

21.     The CBGB Parties deny the allegations in paragraph 21 of the Amended Complaint, except deny information or knowledge sufficient to form a belief as to the truth of the allegations in the last two sentences of paragraph 21.

22.     The CBGB Parties deny the allegations in paragraph 22 of the Amended Complaint, and respectfully refer the Court to the email purportedly quoted therein for a complete and accurate statement of its contents.

4

23.     The CBGB Parties deny the allegations in paragraph 23 of the Amended Complaint, and respectfully refer the Court to the email purportedly quoted therein for a complete and accurate statement of its contents.

24.     The CBGB Parties deny the allegations in paragraph 24 of the Amended Complaint, and respectfully refer the Court to the emails purportedly quoted therein for a complete and accurate statement of their contents.

25.     The CBGB Parties deny information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 25 of the Amended Complaint regarding the purported business opportunities of SWP or Stuart Weissman ("Weissman").  The CBGB Parties deny the remaining allegations in paragraph 25, except admit that the Amended Complaint purports to attach a copy of a document titled Proposal Agreement as Exhibit A ("Proposal Agreement"), and the CBGB Parties respectfully refer the Court to the Proposal Agreement for a complete and accurate statement of its contents.  The CBGB Parties further aver that, to the extent paragraph 25 relates to the Dismissed Claims, no response is required.

26.     The CBGB Parties deny the allegations in paragraph 26 of the Amended Complaint, and respectfully refer the Court to the Proposal Agreement for a complete and accurate statement of its contents.

27.     The CBGB Parties deny the allegations in paragraph 27 of the Amended Complaint, and respectfully refer the Court to the Proposal Agreement for a complete and accurate statement of its contents.

28.     The CBGB Parties deny the allegations in paragraph 28 of the Amended Complaint, and respectfully refer the Court to the Proposal Agreement for a complete and accurate statement of its contents.

29.    The CBGB Parties deny the allegations in paragraph 29 of the Amended Complaint, and respectfully refer the Court to the Proposal Agreement for a complete and accurate statement of its contents, except admit that SWP was one of many vendors that provided production and other services in connection with the 2012 CBGB Music and Film Festival (the "2012 Festival") held by CBGB Festival, including free concerts held in Times Square as part of the 2012 Festival (the "2012 Times Square Concert") and that CBGB Festival compensated SWP for its work on the 2012 Times Square Concert.  The CBGB Parties further aver that, to the extent paragraph 29 relates to the Dismissed Claims, no response is required.

30.    The CBGB Parties deny the allegations in paragraph 30 of the Amended Complaint, and respectfully refer the Court to the emails purportedly quoted therein for a complete and accurate statement of their contents.

31.    The CBGB Parties deny the allegations in paragraph 31 of the Amended Complaint.

32.    The CBGB Parties deny the allegations in paragraph 32 of the Amended Complaint.

33.    The CBGB Parties deny the allegations in paragraph 33 of the Amended Complaint.

34.    The CBGB Parties deny the allegations in paragraph 34 of the Amended Complaint, and respectfully refer the Court to the emails purportedly quoted therein for a complete and accurate statement of their contents.

35.    The CBGB Parties deny the allegations in paragraph 35 of the Amended Complaint.

6

36.     The CBGB Parties deny the allegations in paragraph 36 of the Amended Complaint.

37.     The CBGB Parties deny the allegations in paragraph 37 of the Amended Complaint.

38.     The CBGB Parties deny the allegations in paragraph 38 of the amended complaint, except admit that Jennifer Douglas, through her company Numbers and Figures, Inc. ("Numbers & Figures"), and Evan Korn ("Korn"), in his capacity as working for iDEKO Productions, performed work in connection with the 2014 CBGB Music and Film Festival (the "2014 Festival") held by CBGB Festival, including a free concert held in Times Square as part of the 2014 Festival (the "2014 Times Square Concert"), and deny information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 38 regarding what knowledge Douglas and Korn may or may not have had, or regarding the circumstances of SWP hiring or training them.  The CBGB Parties further aver that, to the extent paragraph 38 relates to the Dismissed Claims, no response is required.

39.     The CBGB Parties deny information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 39 of the Amended Complaint.  The CBGB Parties further aver that, to the extent paragraph 39 relates to the Dismissed Claims, no response is required.

40.     The CBGB Parties deny information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 40 of the Amended Complaint.  The CBGB Parties further aver that, to the extent paragraph 40 relates to the Dismissed Claims, no response is required.

41.     The CBGB Parties deny the allegations in paragraph 41 of the Amended Complaint, except deny information or knowledge sufficient to form a belief as to the truth of the allegations regarding Korn's experience or the circumstances of his being hired by SWP.  The CBGB Parties further aver that, to the extent paragraph 41 relates to the Dismissed Claims, no response is required.

42.     The CBGB Parties deny the allegations in paragraph 42 of the Amended Complaint, except deny information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 42 regarding Korn's personal knowledge.  The CBGB Parties further aver that, to the extent paragraph 42 relates to the Dismissed Claims, no response is required.

43.     The CBGB Parties deny information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 43 of the Amended Complaint.  The CBGB Parties further aver that, to the extent that paragraph 43 relates to the Dismissed Claims, no response is required.

44.     The CBGB Parties deny the allegations in paragraph 44 of the Amended Complaint, except admit that defendant CBGB Festival retained SWP to provide production services for the 2012 Times Square Concert and the free concert held in Times Square (the "2013 Times Square Concert") that occurred in connection with the 2013 CBGB Music and Film Festival (the "2013 Festival") held by CBGB Festival and that CBGB Festival compensated SWP for those services.  The CBGB Parties further aver that, to the extent the allegations in paragraph 44 relate to Dismissed Claims, no response is required.

45.     The CBGB Parties deny the allegations in paragraph 45 of the Amended Complaint, and respectfully refer the Court to the publicly available news articles cited therein for a complete and accurate statement of their contents.

8

46.    The CBGB Parties deny information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 46 of the Amended Complaint.  The CBGB Parties further aver that, to the extent the allegations in paragraph 46 relate to Dismissed Claims, no response is required.

47.    The CBGB Parties deny the allegations in paragraph 47 of the Amended Complaint to the extent such allegations relate to the CBGB Parties, as opposed to Productions NYC or other defendants purportedly included in the Amended Complaint's definition of "CBGB", and in all other respects deny sufficient knowledge or information to form a belief as to the truth of the allegations.  The CBGB Parties further aver that, to the extent the allegations in paragraph 47 relate to Dismissed Claims, no response is required.

48.    The CBGB Parties deny the allegations in paragraph 48 of the Amended Complaint, and respectfully refer the Court to the documents purportedly quoted therein for a complete and accurate statement of their contents.

49.    The CBGB Parties deny the allegations in paragraph 49 of the Amended Complaint.

50.    The CBGB Parties deny the allegations in paragraph 50 of the Amended Complaint.

51.    The CBGB Parties deny the allegations in paragraph 51 of the Amended Complaint, except deny information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 51 regarding SWP's alleged in-person conferences and correspondence.

52.    The CBGB Parties deny the allegations in paragraph 52 of the Amended Complaint, except admit that in or about April 2014, Weissman emailed Hayes and other consultants engaged by the CBGB Parties with respect to the 2014 Times Square Concert,

9

attaching documents purporting to be budgets and invoices for the 2014 Times Square Concert. The CBGB Parties respectfully refer the Court to the documents referenced in paragraph 52 for a complete and accurate statement of their contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 52 relate to Dismissed Claims, no response is required.

53.    The CBGB Parties deny the allegations in paragraph 53 of the Amended Complaint, except admit that on or about April 29, 2014, Weissman forwarded to Louise Staley and Hayes email correspondence between Weissman and Emil Lissauer.  The CBGB Parties respectfully refer the Court to the email referenced in paragraph 53 for a complete and accurate statement of its contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 53 relate to Dismissed Claims, no response is required.

54.    The CBGB Parties deny the allegations in paragraph 54 of the Amended Complaint, except admit that in or about May 2014, Weissman and Hayes corresponded regarding the 2014 Times Square Concert.  The CBGB Parties respectfully refer the Court to the documents purportedly quoted in paragraph 54 for a complete and accurate statement of their contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 54 relate to Dismissed Claims, no response is required.

55.    The CBGB Parties deny the allegations in paragraph 55 of the Amended Complaint, except admit that on or about June 2, 2014, Weissman emailed Louise Staley and Hayes a document purported to be a "CBGB Budget."  The CBGB Parties respectfully refer the Court to the documents purportedly referenced in paragraph 55 for a complete and accurate statement of their contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 55 relate to Dismissed Claims, no response is required.

56.     The CBGB Parties deny the allegations in paragraph 56 of the Amended Complaint, except admit that in or about June 2014, Hayes and Weissman corresponded regarding the 2014 Times Square Concert.  The CBGB Parties respectfully refer the Court to the documents purportedly quoted in paragraph 56 for a complete and accurate statement of their contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 56 relate to Dismissed Claims, no response is required.

57.     The CBGB Parties deny the allegations in paragraph 57 of the Amended Complaint, except admit that in or about June 2014, Hayes and Weissman corresponded regarding the 2014 Times Square Concert.  The CBGB Parties respectfully refer the Court to the documents purportedly quoted in paragraph 57 for a complete and accurate statement of their contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 57 relate to Dismissed Claims, no response is required.

58.     The CBGB Parties deny the allegations in paragraph 58 of the Amended Complaint and respectfully refer the Court to the documents purportedly quoted therein for a complete and accurate statement of their contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 58 relate to Dismissed Claims, no response is required.

59.     The CBGB Parties deny the allegations in paragraph 59 of the Amended Complaint.

60.     The CBGB Parties deny the allegations in paragraph 60 of the Amended Complaint.  The CBGB Parties further aver that, to the extent the allegations relate to Dismissed Claims, no response is required.

61.     The CBGB Parties deny the allegations in paragraph 61 of the Amended Complaint, except admit that in or about April 2014, Hayes and Weissman corresponded

regarding the 2014 Times Square Concert.  The CBGB Parties respectfully refer the Court to the documents purportedly quoted in paragraph 61 for a complete and accurate statement of their contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 61 relate to Dismissed Claims, no response is required.

62.      The CBGB Parties deny the allegations in paragraph 62 of the Amended Complaint, except admit that in or about April 2014, Hayes and Weissman corresponded regarding the 2014 Times Square Concert.  The CBGB Parties respectfully refer the Court to the documents purportedly quoted in paragraph 62 for a complete and accurate statement of their contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 62 relate to Dismissed Claims, no response is required.

63.      The CBGB Parties deny the allegations in paragraph 62 of the Amended Complaint, except admit that in or about April 2014, Hayes and Weissman corresponded regarding the 2014 Times Square Concert.  The CBGB Parties respectfully refer the Court to the documents purportedly quoted in paragraph 63 for a complete and accurate statement of their contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 63 relate to Dismissed Claims, no response is required.

64.      The CBGB Parties deny the allegations in paragraph 64 of the Amended Complaint, except admit that in or about April 2014, Hayes and Weissman corresponded regarding the 2014 Times Square Concert.  The CBGB Parties respectfully refer the Court to the documents purportedly quoted in paragraph 64 for a complete and accurate statement of their contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 64 relate to Dismissed Claims, no response is required.

65.     The CBGB Parties deny the allegations in paragraph 65 of the Amended Complaint.

66.     The CBGB Parties deny the allegations in paragraph 66 of the Amended Complaint, except admit that in or about May 2014, Hayes and Weissman corresponded regarding the 2014 Times Square Concert.  The CBGB Parties respectfully refer the Court to the documents purportedly quoted in paragraph 66 for a complete and accurate statement of their contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 66 relate to Dismissed Claims, no response is required.

67.     The CBGB Parties deny the allegations in paragraph 67 of the Amended Complaint, except admit that in or about May 2014, Hayes and Weissman corresponded regarding the 2014 Times Square Concert.  The CBGB Parties respectfully refer the Court to the documents purportedly quoted in paragraph 67 for a complete and accurate statement of their contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 67 relate to Dismissed Claims, no response is required.

68.     The CBGB Parties deny the allegations in paragraph 68 of the Amended Complaint, except admit that in or about May 2014, Hayes and Weissman corresponded regarding the 2014 Times Square Concert.  The CBGB Parties respectfully refer the Court to the documents purportedly quoted in paragraph 68 for a complete and accurate statement of their contents.  The CBGB Parties further aver that, to the extent the allegations in paragraph 68 relate to Dismissed Claims, no response is required

69.     The CBGB Parties deny the allegations in paragraph 69 of the Amended Complaint, except admit that Leslie Zigel, purportedly acting as outside counsel for SWP, emailed Hayes on or about June 13, 2014, *inter alia*, attaching an unsigned, draft agreement

13

purporting to be in connection with the 2014 Times Square Concert, and that Hayes replied on or about August 28, 2014, that he would review Mr. Zigel's email. The CBGB Parties respectfully refer the Court to the documents purportedly quoted in paragraph 69 for a complete and accurate statement of their content. The CBGB Parties further aver that, to the extent the allegations in paragraph 69 relate to Dismissed Claims, no response is required.

70.    The CBGB Parties deny the allegations in paragraph 70 of the Amended Complaint. To the extent the allegations relate to the Dismissed Claims or are allegations of law, not fact, no response is required.

71.    The CBGB Parties deny the allegations in paragraph 71 of the Amended Complaint.

72.    The CBGB Parties deny the allegations in paragraph 72 of the Amended Complaint, except admit that defendant CBGB Festival did not exercise an option under the Proposal Agreement to engage SWP for the 2014 Times Square Concert and therefore did not pay any deposit. The CBGB Parties further state that, to the extent the allegations in paragraph 72 relate to Dismissed Claims, no response is required.

73.    The CBGB Parties deny the allegations in paragraph 73 of the Amended Complaint, except admit that CBGB Festival submitted its own application for a permit for the 2014 Times Square Concert.

74.    The CBGB Parties deny the allegations in paragraph 74 of the Amended Complaint and respectfully refer the Court to the documents purportedly quoted therein for a complete and accurate statement of their contents.

75.    The CBGB Parties deny the allegations in paragraph 75 of the Amended Complaint, except admit that Douglas and Korn, through their respective companies, Numbers &

14

Figures and iDEKO, performed work on the 2014 Festival, and deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding cease and desist letters served on Defendants Numbers & Figures and iDEKO.  The CBGB Parties further aver that, to the extent the allegations in paragraph 75 relate to Dismissed Claims, no response is required.

76.    The CBGB Parties deny the allegations in paragraph 76 of the Amended Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76 regarding Douglas's and Korn's personal knowledge.  The CBGB Parties further aver that, to the extent the allegations in paragraph 76 relate to Dismissed Claims, no response is required.

77.    The CBGB Parties deny the allegations in paragraph 77 of the Amended Complaint, except deny knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 77 as to Korn's and Douglas's states of mind.  The CBGB Parties further aver that, to the extent the allegations in paragraph 77 relate to Dismissed Claims, no response is required.

78.    The CBGB Parties deny the allegations in paragraph 78 of the Amended Complaint, and respectfully refer the Court to the publicly available news articles cited therein for a complete and accurate statement of their contents.

79.    The CBGB Parties deny the allegations in paragraph 79 of the Amended Complaint, except admit that CBGB Festival did not exercise an option under the Proposal Agreement to engage SWP for the 2014 Times Square Concert, and on or about Friday, September 5, 2014, Hayes emailed Leslie Zigel, cc-ing Weissman and Louise Staley, stating, "We are not interested in any further discussions with SWP.  We are not asking SWP to work on the 2014 festival.  We are engaging counsel to address SWP's threats of legal action, so any

15

further communications will be forwarded to our attorneys.  Thank you."  The CBGB Parties

further aver that, to the extent the allegations in paragraph 79 relate to Dismissed Claims, no

response is required.

80.     The CBGB Parties deny the allegations in paragraph 80 of the Amended

Complaint.  To the extent the allegations relate to the Dismissed Claims or are allegations of law,

not fact, no response is required.

81.     The CBGB Parties deny the allegations in paragraph 81 of the Amended

Complaint, except admit that the 2014 Festival occurred from on or about October 8 through on

or about October 12, 2014, and several bands performed at the 2014 Times Square Concert,

including Jane's Addiction, Cheeky Parade, We Are Scientists, Robert DeLong, Surfer Blood,

Devo and others.

82.     The CBGB Parties deny the allegations in paragraph 82 of the Amended

Complaint.

83.     The CBGB Parties deny the allegations in paragraph 83 of the Amended

Complaint, and respectfully refer the Court to the publicly available news article cited therein for

a complete and accurate statement of its contents.

84.     The CBGB Parties deny the allegations in paragraph 84 of the Amended

Complaint.  To the extent the allegations relate to the Dismissed Claims or are allegations of law,

not fact, no response is required, and they are therefore deemed denied.

85.      The CBGB Parties deny the allegations in paragraph 85 of the Amended

Complaint.  To the extent paragraph 85 states allegations of law, not fact, no response is

required, and they are therefore deemed denied.

86.        The CBGB Parties deny the allegations in paragraph 86 of the Amended

Complaint, and respectfully refer the Court to the publicly available documents cited therein for

a complete and accurate statement of their contents.  To the extent paragraph 86 states

allegations of law, not fact, no response is required, and they are therefore deemed denied.

87.        The CBGB Parties repeat and reallege the preceding responses as set forth above.

88.        The CBGB Parties deny the allegations in paragraph 88 of the Amended

Complaint and further state that Cause of Action I is a Dismissed Claim and no response thereto

is required.

89.        The CBGB Parties deny the allegations in paragraph 89 of the Amended

Complaint and further state that Cause of Action I is a Dismissed Claim and no response thereto

is required.

90.        The CBGB Parties deny the allegations in paragraph 90 of the Amended

Complaint and further state that Cause of Action I is a Dismissed Claim and no response thereto

is required.

91.        The CBGB Parties deny the allegations in paragraph 91 of the Amended

Complaint and further state that Cause of Action I is a Dismissed Claim and no response thereto

is required.

92.        The CBGB Parties deny the allegations in paragraph 92 of the Amended

Complaint and further state that Cause of Action I is a Dismissed Claim and no response thereto

is required.

93.        The CBGB Parties deny the allegations in paragraph 93 of the Amended

Complaint, deny that SWP is entitled to any relief and further state that Cause of Action I is a

Dismissed Claim and no response thereto is required.

17

94.     The CBGB Parties repeat and reallege the preceding responses as set forth above.

95.     The CBGB Parties deny the allegations in paragraph 95 of the Amended Complaint and further state that Cause of Action II is a Dismissed Claim and no response thereto is required.

96.     The CBGB Parties deny the allegations in paragraph 96 of the Amended Complaint and further state that Cause of Action II is a Dismissed Claim and no response thereto is required.

97.     The CBGB Parties deny the allegations in paragraph 97 of the Amended Complaint and further state that Cause of Action II is a Dismissed Claim and no response thereto is required.

98.     The CBGB Parties deny the allegations in paragraph 98 of the Amended Complaint and further state that Cause of Action II is a Dismissed Claim and no response thereto is required.

99.     The CBGB Parties deny the allegations in paragraph 99 of the Amended Complaint and further state that Cause of Action II is a Dismissed Claim and no response thereto is required.

100.     The CBGB Parties deny the allegations in paragraph 100 of the Amended Complaint, deny that SWP is entitled to any relief and further state that Cause of Action II is a Dismissed Claim and no response thereto is required.

101.     The CBGB Parties repeat and reallege the preceding responses as set forth above.

102.     The CBGB Parties deny the allegations of Paragraph 102 of the Amended Complaint, and further state that Paragraph 102 states assertions of law, not fact, to which no response is required.

18

103.     The CBGB Parties deny the allegations of Paragraph 103 of the Amended Complaint, and further state that it contains assertions of law, not fact, to which no response is required.

104.     The CBGB Parties deny that SWP is entitled to any relief, deny the allegations of Paragraph 104 of the Amended Complaint, and state that Paragraph 104 states assertions of law, not fact, to which no response is required.

105.     The CBGB Parties repeat and reallege the preceding responses as set forth above.

106.     The CBGB Parties deny the allegations of Paragraph 106 of the Amended Complaint, and further state that it contains assertions of law, not fact, to which no response is required.

107.     The CBGB Parties deny the allegations of Paragraph 107 of the Amended Complaint, and further state that it contains assertions of law, not fact, to which no response is required.

108.     The CBGB Parties deny the allegations of Paragraph 108 of the Amended Complaint, and further state that it contains assertions of law, not fact, to which no response is required.

109.     The CBGB Parties deny the allegations of Paragraph 109 of the Amended Complaint, and further state that it contains assertions of law, not fact, to which no response is required.

110.     The CBGB Parties deny the allegations of Paragraph 110 of the Amended Complaint, and further state that it contains assertions of law, not fact, to which no response is required.

111.    The CBGB Parties deny the allegations of Paragraph 111 of the Amended Complaint, and further state that it contains assertions of law, not fact, to which no response is required.

112.    The CBGB Parties deny that SWP is entitled to any relief, deny the allegations of Paragraph 112 of the Amended Complaint, and state that Paragraph 112 states assertions of law, not fact, to which no response is required.

113.    The CBGB Parties repeat and reallege the preceding responses as set forth above.

114.    The CBGB Parties deny the allegations in paragraph 114 of the Amended Complaint and further state that Cause of Action V is a Dismissed Claim and no response thereto is required.

115.    The CBGB Parties deny the allegations in paragraph 115 of the Amended Complaint and further state that Cause of Action V is a Dismissed Claim and no response thereto is required.

116.    The CBGB Parties deny the allegations in paragraph 116 of the Amended Complaint and further state that Cause of Action V is a Dismissed Claim and no response thereto is required.

117.    The CBGB Parties deny the allegations in paragraph 117 of the Amended Complaint and further state that Cause of Action V is a Dismissed Claim and no response thereto is required.

118.    The CBGB Parties deny that SWP is entitled to any relief, deny the allegations of Paragraph 118 of the Amended Complaint, state that Cause of Action V is a Dismissed Claim to which no response is required, and further state that Paragraph 118 states assertions of law, not fact, to which no response is required.

119.    The CBGB Parties repeat and reallege the preceding responses as set forth above.

120.    The CBGB Parties deny the allegations of paragraph 120 of the Amended Complaint, except that the CBGB Parties deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding the knowledge or experience of Douglas, iDEKO and Numbers & Figures.  The CBGB Parties further state that Cause of Action VI is a Dismissed Claim, and was not asserted against the CBGB Parties, and no response is required.

121.    The CBGB Parties deny the allegations of paragraph 121 of the Amended Complaint, except that the CBGB Parties deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding the knowledge or experience of Douglas, iDEKO and Numbers & Figures.  The CBGB Parties further state that Cause of Action VI is a Dismissed Claim, and was not asserted against the CBGB Parties, and no response is required.

122.    The CBGB Parties deny the allegations of paragraph 122 of the Amended Complaint, except that the CBGB Parties deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding the conduct or knowledge of Douglas, Korn, iDEKO and Numbers & Figures.  The CBGB Parties further state that Cause of Action VI is a Dismissed Claim, and was not asserted against the CBGB Parties, and no response is required.

123.    The CBGB Parties deny the allegations of paragraph 123 of the Amended Complaint and further state that Cause of Action VI is a Dismissed Claim, and was not asserted against the CBGB Parties, and no response is required.

124.    The CBGB Parties deny SWP is entitled to any relief and further state that Cause of Action VI is a Dismissed Claim, and was not asserted against the CBGB Parties, and that no response to paragraph 124 of the Amended Complaint is required.

125.    The CBGB Parties repeat and reallege the preceding responses as set forth above.

21

126.    The CBGB Parties deny the allegations in paragraph 126 of the Amended Complaint and further state that Cause of Action VII is a Dismissed Claim and no response thereto is required.

127.    The CBGB Parties deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127 of the Amended Complaint and further state that Cause of Action VII is a Dismissed Claim and no response thereto is required.

128.    The CBGB Parties deny the allegations in paragraph 128 of the Amended Complaint, except deny knowledge or information sufficient to form a belief as to the truth of allegations about the conduct of Douglas, iDEKO and Numbers & Figures, and further state that Cause of Action VII is a Dismissed Claim and no response thereto is required.

129.    The CBGB Parties deny the allegations in paragraph 129 of the Amended Complaint, and further state that Cause of Action VII is a Dismissed Claim and no response thereto is required.

130.    The CBGB Parties deny the allegations in paragraph 130 of the Amended Complaint and further state that Cause of Action VII is a Dismissed Claim and no response thereto is required.

131.    The CBGB Parties deny SWP is entitled to any relief and further state that Cause of Action VII is a Dismissed Claim and that no response to paragraph 131 of the Amended Complaint is required.

132.  The CBGB Parties deny the "Conclusion" and prayer for relief set forth in the Amended Complaint, deny any wrongdoing and deny that SWP is entitled to any relief.

**AFFIRMATIVE DEFENSES**

133.    The CBGB Parties repeat and reallege each and every part of every paragraph set forth above as if they were fully set forth herein.

134.    By alleging defenses herein, the CBGB Parties do not intend to alter the burden of proof and/or burden of going forward with the evidence that otherwise exists with respect to any particular issue at law or in equity.  All defenses are pleaded in the alternative and do not constitute admission either of liability or as to whether SWP is entitled to any relief whatsoever. Furthermore, the CBGB Parties reserve all rights to supplement the below affirmative defenses in the event of any future amended pleading or any of the Dismissed Claims being reinstated.

**First Affirmative Defense**

135.    The Claims in the Amended Complaint are barred by the Statute of Frauds.

**Second Affirmative Defense**

136.    The Claims in the Amended Complaint are barred by the lack of agency, insofar as Defendant Productions New York City LLC or its principal Hayes did not have the authority to act on the CBGB Parties' behalf in the manner alleged in the Amended Complaint.

**Third Affirmative Defense**

137.    The Claims in the Amended Complaint are barred by the doctrine of unclean hands, including without limitation based on allegations set forth in the CBGB Parties' Counterclaims, Cross-Claims and Third-Party Claims, below, which allegations are incorporated by reference as if stated fully herein.  The Claims in the Amended Complaint are barred by the doctrine of unclean hands for additional reasons, including without limitation based on SWP's bad faith assertions that CBGB Festival was bound to proposed agreements that it had never accepted, based on SWP's attempts to collect on invoices for amounts that SWP knew were not

due, and based on SWP's attempts to interfere with CBGB Festival's production, permitting and promotion of the 2014 Festival.

### Fourth Affirmative Defense

138.    The Claims in the Amended Complaint are barred due to the existence of an express agreement governing the subject matter of those claims.

### Fifth Affirmative Defense

139.    The Claims in the Amended Complaint, including without limitation for Promissory Estoppel, are barred because SWP fails to adequately allege and/or cannot prove any unconscionable injury.

### Sixth Affirmative Defense

140.    The Claims in the Amended Complaint are barred by the doctrines of fraud, mistake, waiver and/or estoppel.

### Seventh Affirmative Defense

141.    The Claims in the Amended Complaint are barred by SWP's breach of its agreement with CBGB Festival.

### Eighth Affirmative Defense

142.    The Claims in the Amended Complaint are barred because the parties contemplated a further written agreement.

### Ninth Affirmative Defense

143.    The Claims in the Amended Complaint are barred because SWP failed to mitigate its damages.

## COUNTERCLAIMS, CROSS-COMPLAINT AND THIRD-PARTY COMPLAINT AGAINST SWP, PRODUCTIONS NYC, WEISSMAN, HAYES AND DOUGLAS

144.    CBGB Festival and Bowery bring these Counterclaims, Cross-Claims and Third-Party Claims for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), conversion, fraud, tortious interference, unjust enrichment, money had and received, fraudulent conveyance, alter ego liability, breach of contract, indemnification and contribution, and, in the alternative, breach of fiduciary duty and negligent misrepresentation.

### Nature of the Counterclaims, Cross-Claims and Third-Party Claims

145.    Bowery and CBGB Festival bring these counterclaims, cross-claims and third-party claims arising from a nearly three-year saga of lies, broken promises and outright theft.

146.    Bowery owns the rights to the storied brand CBGB®, which refers to the iconic music venue that had operated in downtown Manhattan from 1973 until 2006.  From 2012 through 2014, CBGB Festival, Bowery's wholly owned subsidiary, produced a multi-day, city-wide festival featuring live music performances, music-related film screenings and other events branded as the "CBGB Music and Film Festival."  Each year, the multi-day festival culminated in an all-day multi-stage free music concert, open to the public, in Times Square (the "Times Square Concert").  CBGB also funded and co-branded with Amnesty International a live music event at the Barclays Center in Brooklyn in February 2014 ("Amnesty").

147.    CBGB engaged Hayes to promote the CBGB brand, in part due to Hayes' professed relationships in the entertainment industry and his experience holding live events in New York City, including through his wholly owned production company Defendant Productions New York City LLC ("Productions NYC").

148.    Hayes and Productions NYC arranged for CBGB to hire Weissman, through his company SWP, as a vendor to produce three major live music events: the 2012 Times Square

25

Concert, the 2013 Times Square Concert, and the 2014 Amnesty event.   Over the course of those events, SWP, Productions NYC, Weissman and Hayes, with the assistance and agreement of Douglas, deliberately overcharged CBGB for SWP's services and scammed CBGB out of hundreds of thousands of dollars.

### Overview of CBGB's Civil RICO, Common Law and New York Statutory Claims

149.    From at least 2012 to 2014, Productions NYC, SWP, Hayes and Weissman acted as an association in fact, an enterprise that produced live events for CBGB and other clients in New York City.  They conducted the affairs of that enterprise pursuant to a pattern of racketeering by using interstate wires in furtherance of schemes to fraudulently overcharge CBGB.  Specifically, on numerous occasions, Productions NYC, SWP, Hayes and Weissman arranged for CBGB to transmit payments to SWP for amounts deliberately inflated by tens or hundreds of thousands of dollars.  They furthered the schemes by transmitting and causing to be transmitted dozens of emails over interstate wires in violation of 18 U.S.C. § 1343, the federal Wire Fraud statute.

150.    Their schemes included false representations about amounts due, bogus line items included in SWP's budgets, and the intentional concealment or alteration of estimates and invoices.  Indeed, Hayes expressly told CBGB's owners that Productions NYC had ceased operations and no longer made a dime, even while he secretly used that company to divert hundreds of thousands of dollars from CBGB to his own pockets.  Douglas conspired with them to carry out the pattern of racketeering, and aided and abetted the fraud on CBGB and the conversion of CBGB's funds.

151.    Through the schemes, Productions NYC, SWP, Hayes, Weissman and Douglas defrauded CBGB out of more than $550,000 that CBGB has identified (to date), injuring CBGB

26

in its business and property.  Under 18 U.S.C. §§ 1962(c), 1962(d) and 1964, Productions NYC,

SWP, Hayes, Weissman and Douglas are jointly and severally liable to CBGB for treble

damages, costs and reasonable attorneys' fees.

152.    As a result of the fraudulent overcharge schemes, Productions NYC, SWP, Hayes,

Weissman and Douglas are also liable to CBGB for fraud, conversion, civil conspiracy, and/or as

aiders and abettors.  On these grounds too, the CBGB Parties are entitled to an award of

compensatory and punitive damages.  In addition, the payments pursuant to the overcharge

scheme, including among SWP, Productions NYC and Hayes, were fraudulent conveyances

under the New York Debtor and Creditor Law.  Accordingly, the CBGB Parties are entitled to a

judgment setting those conveyances aside, including in the form of an award of restitution,

disgorgement or damages, as well as the CBGB Parties' costs and attorneys' fees pursuant to

N.Y. Debtor and Creditor Law section 276-a.

153.    SWP's liabilities do not end there.  Although SWP commenced this action

asserting contract and quasi-contract claims against CBGB, in truth SWP failed to live up to *its

promises* in connection with the Times Square Concert.  SWP charged CBGB higher fees than

permitted under the secretly executed Proposal Agreement and neglected to provide certain

production elements at professional standards, or at all.  In connection with the 2014 Times

Square Concert, when CBGB Festival hired a competing production company instead of SWP to

produce the event, SWP retaliated.  SWP intentionally derailed CBGB Festival's plans by

squatting on the relevant permit application and forcing CBGB to move its event to another day,

thereby tortiously interfering with CBGB Festival's business opportunity.  CBGB Festival is

entitled to compensatory damages and punitive damages for SWP's breaches and tortious

interference.

27

154.    In addition, if SWP is ultimately entitled to any recovery in this action, such liability is attributable in whole or in part to Hayes and Productions NYC.  Bowery trusted Hayes to help promote the CBGB brand in good faith, and to keep Bowery's Board of Managers (the "Board"), acting on behalf of Bowery, which in turn was the sole member of CBGB Festival, timely and accurately informed with respect to CBGB business.  Instead, Hayes engaged in the above schemes to defraud CBGB, entered into a secret agreement with SWP purportedly on CBGB Festival's behalf, received unauthorized compensation at CBGB's expense, provided incomplete or misleading information, and withheld information entirely from CBGB regarding the CBGB Music and Film Festival.

155.    Hayes and Productions NYC are liable to indemnify the CBGB Parties and to compensate them for any resulting losses.  Accordingly, Hayes and Productions NYC are liable to CBGB for conversion, fraud, unjust enrichment, indemnification and contribution, breach of contract, and, in the alternative for negligent misrepresentation and breach of their fiduciary duties, including under the faithless servant doctrine.

## Parties

156.    Defendant, Counterclaimant, Cross-Claim Plaintiff and Third-Party Plaintiff Bowery is a limited liability company organized under the laws of the State of Delaware, with its principle place of business located in New York, New York.  Bowery owns the CBGB® brand.

157.    Defendant, Counterclaimant, Cross-Claim Plaintiff and Third-Party Plaintiff CBGB Festival is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located in New York, New York.  CBGB Festival is a wholly owned subsidiary of Bowery and was responsible for putting on the CBGB Music and Film Festival in 2012, 2013 and 2014.

158.    Upon information and belief, Plaintiff and Counterclaim Defendant SWP is a corporation organized under the laws of the State of New York with its principal office located at 1560 Broadway, Suite 901, New York, New York.

159.    On information and belief, Third-Party Defendant Stuart Weissman is an individual residing at 610 Bedford Road, Armonk, New York, and is the CEO and founder of Counterclaim Defendant SWP.

160.    Upon information and belief, Defendant and Cross-Claim Defendant Productions NYC is a limited liability company, formed under the laws of the State of New York, with its principal place of business located at 500 Park Avenue, New York, New York 10022.

161.    Upon information and belief, Third-Party Defendant Hayes is the CEO and controlling member of Productions NYC with a residence in New York City and/or Mount Bethel, Pennsylvania.

162.    Third-Party Defendant Jennifer Douglas is an individual residing at 301 Seaman Avenue, Beachwood, New Jersey who, during much of the period relevant to this action, was an employee of SWP who worked at SWP's offices in New York, New York.

163.    Hayes, Weissman, Productions NYC, SWP and Douglas are collectively referred to herein as the "RICO Defendants."

### Jurisdiction And Venue

164.    This Court has jurisdiction over SWP pursuant to CPLR § 301.

165.    This Court has jurisdiction over Productions NYC pursuant to CPLR § 301.

166.    This Court has jurisdiction over Weissman pursuant to CPLR§ 301.

167.    This Court has jurisdiction over Hayes pursuant to CPLR §§ 302(a)(1) and (2).

168.    This Court has jurisdiction over Douglas pursuant to CPLR §§ 302(a)(1) and (2).

169.    Venue in New York County is proper pursuant to CPLR § 503(a) and (c) because CBGB Festival, Bowery, SWP, Productions NYC, Weissman, Hayes and Douglas had their principal places of business in New York County at the time this action was commenced and are therefore deemed to reside there.

## Factual Background

170.    Defendant Bowery owns the CBGB® brand, assets, intellectual property and licensing rights.  The name "CBGB" refers to the iconic music performance club that operated in lower Manhattan from 1973 to 2006, and is widely regarded as the preeminent fixture of the New York punk rock scene, hosting bands like the Ramones and Blondie in the early years, and later bands like Green Day and Guns N' Roses.

171.    Bowery is owned by individual owners and is managed by the Board, composed of Michael Smith and Michael Arougheti, who collectively hold a majority interest in Bowery. Bowery has no officers and the Board has the exclusive authority to bind Bowery.  Bowery's wholly owned subsidiaries are all member-managed and have no officers and as a result, Bowery has the exclusive authority to bind such subsidiaries (including CBGB Festival).

172.    Bowery engaged Hayes as an independent contractor to help promote the CBGB brand, given his experience and relationships in the entertainment industry and his experience related to producing live events.  At Hayes' request, all payments for Hayes' services were directed to Hayes' company, Productions NYC.  In the alternative, to the extent Hayes contends that CBGB engaged Productions NYC and not Hayes personally, then Hayes is an alter ego of Productions NYC, and the two are referred herein collectively as the "Hayes Defendants."

173.    Bowery and Hayes reached an agreement as follows: Bowery would pay Hayes, through his company Productions NYC, approximately $10,000 per month to develop the CBGB

brand, an amount that 315 Bowery and Hayes later agreed to increase to approximately $12,000

per month; Hayes was not permitted to enter into any agreement on behalf of CBGB without the

written approval of the Board; with respect to using CBGB credit cards and/or checks, Hayes

was not permitted to consummate any transaction over $1,000 without the approval of at least

one member of the Board; and Hayes would keep CBGB and the Board informed of CBGB-

related business.

174.    In or around late 2011, CBGB directed Hayes to begin work on attempting to

produce a large, multi-day annual music festival in New York City under the CBGB brand,

which concept would become the CBGB Music and Film Festival.  The anticipated event would

include live concerts at numerous venues, a festival of music industry-themed films, and other

events throughout New York City.  CBGB Festival was formed to handle all business activities

related to the CBGB Music and Film Festival.

175.    One component of the CBGB Music and Film Festival was the Times Square

Concert.  Upon information and belief, in or around late 2011 and/or early 2012, Hayes began

discussions with Weissman about engaging SWP as a vendor to produce the 2012 Times Square

Concert.  Hayes ultimately arranged for CBGB Festival to engage SWP to produce several live

entertainment events in New York City.  Unbeknownst to CBGB at the time, Hayes had set up

CBGB to be the victim of sustained fraudulent schemes that would cost CBGB hundreds of

thousands of dollars.

I.    **Hayes, Weissman, Productions NYC and SWP Form an Association-in-Fact Enterprise to Produce Live Events in New York City**

176.    From at least 2012 until 2014, SWP, Productions NYC, Weissman, and Hayes

operated as an enterprise, in the form of an association in fact among them that was distinct from

each of them (the "Enterprise").  The purpose of the Enterprise was to arrange and produce live

31

events in New York City for clients, including CBGB.  The Enterprise was engaged in and affected interstate commerce, including without limitation because the Enterprise's live events involved vendors, performing artists and thousands of audience members from different states.

177.    The members of the Enterprise had a defined relationship in which they worked together with different roles.  Hayes, individually and through Productions NYC, sourced clients who wanted to promote live events, and arranged for them to engage SWP, which was headed by Weissman and staffed with various employees, including Douglas.  SWP arranged for the event permits, procured vendors and subcontractors, and assembled other necessary resources.  During the period 2012 to 2014, the Enterprise arranged and produced live events for CBGB and, on information and belief, other clients such as AT&T.

178.    For CBGB, the Enterprise arranged and produced three major live music events: the Times Square Concert in July 2012, the Times Square Concert in October 2013 and the Amnesty event in February 2014.  Each event involved months of planning, and the Enterprise operated continuously during this period.

179.    To CBGB, Hayes described SWP as the City's preferred live event vendor, and portrayed himself as negotiating with SWP at arm's length on CBGB's behalf for better terms.

180.    In reality, SWP and the Hayes Defendants did not operate at arm's length at all. The Enterprise functioned as collusive unit, focused on extracting the maximum amount of money from CBGB.  At times, Hayes secured the CBGB Board's financial commitment or specific payments by misrepresenting the purpose or deadline for the charges, by falsely reporting the preferences or promises of the City, or by misrepresenting that some charges were for the benefit of the City rather than SWP.

181.     Thus, in 2012, Hayes executed the Proposal Agreement purportedly committing CBGB Festival to hire SWP for two events, without informing the CBGB Board.  (The Proposal Agreement, dated June 21, 2012, as appended to SWP's Amended Complaint, is attached hereto as Exhibit 1).  Thereafter, the Enterprise all but ignored that agreement when it suited SWP – Weissman many times requested fees and other payments for SWP beyond what the Proposal Agreement allowed, and Hayes without objection arranged for CBGB to pay them.  For example, in on or about June 27, 2012, Hayes asked CBGB Board member Michael Smith to issue a check from Bowery to SWP for $75,000.  Under the recently executed Proposal Agreement, however, only $50,000 was due.  Hayes represented to Smith that the amount included a $25,000 deposit toward the 2012 event and a $50,000 "option guarantee" for the following year, the 2013 Times Square Concert.  The Proposal Agreement did not require any "option guarantee" payment for 2013 at all.

182.     The relationship among the members of the Enterprise was closer and more cohesive than they presented to outsiders.  Without informing the CBGB Board, in 2013 Hayes proposed a "Business Alliance Agreement" between Productions NYC and SWP, "to serve as a framework for cooperation between PNY and SWP and to leverage each Party's respective know-how and experience for the Parties' mutual benefit."  By 2014, Weissman and Hayes were discussing having Productions NYC move into adjoining office space with SWP.

183.     For years, SWP, Productions NYC, Weissman and Hayes bilked hundreds of thousands of dollars out of CBGB through a persistent pattern of overcharging CBGB for SWP's services.

**II.  Hayes, Weissman, Productions NYC and SWP Conduct the Affairs of the Enterprise Through a Pattern of Racketeering, Repeatedly Defrauding CBGB Through Overcharges**

184.    Hayes, Weissman, Productions NYC and SWP conducted the affairs of the Enterprise through a pattern of racketeering activity, including wire fraud, causing substantial injury to CBGB's business or property.

185.    Hayes, Weissman, Productions NYC and SWP knowingly and intentionally participated in schemes to defraud CBGB and to obtain money from CBGB under false or fraudulent pretenses and representations.  Pursuant to the schemes, Hayes requested that CBGB make payments to SWP or others purportedly as amounts needed for production of CBGB live events.  The amounts were deliberately inflated.  Weissman and SWP would pay the excess amounts to Hayes through Productions NYC, and Hayes and Productions NYC in turn continued to source live events to SWP for production.

186.    On numerous occasions, the RICO Defendants transmitted or caused to be transmitted writings through interstate wires for the purpose of executing those fraudulent schemes, in violation of 18 U.S.C. § 1343, the Wire Fraud statute.

187.    Over the course of producing three separate live events from 2012 to 2014, the RICO Defendants arranged for CBGB make at least nine payments to SWP, totaling over $3 million.  As a result of the RICO Defendants' fraudulent scheme, most of those payment requests were for deliberately inflated amounts.  Upon receiving payment from CBGB, SWP forwarded some or all of the overcharged portions to the Hayes Defendants, in some cases on the same day.

188.    On several occasions, Hayes and Productions NYC simply overstated to the CBGB Board the amounts that SWP had invoiced or requested.  SWP then transferred the excess amounts to Hayes and Productions NYC, either as a separate payment or as a credit against amounts that Productions NYC owed SWP on other projects.

189.    In other instances, the fraudulent overcharges were built into the production

budgets prepared by SWP, as bogus line items representing amounts that Weissman intended to

divert to Hayes.  The RICO Defendants, in production budgets circulated among themselves,

listed these line items as "production management services" or "miscellaneous," sometimes with

Productions NYC expressly listed as the vendor.  These amounts were included in the total

amounts requested or invoiced by SWP.  Hayes and Productions NYC would then communicate

those amounts (or still larger, further inflated amounts) to the CBGB Board.  These bogus budget

items totaled $100,000 in fraudulent overcharges.

190.    Later, when a dispute arose between SWP and Productions NYC, Weissman

openly mocked the notion that these production budget entries had any legitimate purpose:

> Thank you for the swift reply.  I can't help but to see the irony of
> your $100,000.00 settlement offer being the exact same amount
> SWP paid your other company out of the production budget as a
> "consulting fee" for the first two years.

S. Weissman email to T. Hayes, Aug. 27, 2014 (attached hereto as Exhibit 16, produced at

SWP005269).

191.    On information and belief, Douglas agreed to participate in the schemes with

respect to some or all of the overcharges.  Douglas did so with actual knowledge of the the

fraudulent schemes and intending carry out those schemes.  Douglas took affirmative acts in

furtherance of the schemes and substantially assisted Hayes, Weissman, SWP and Productions

NYC in carrying out the schemes, including by composing and/or transmitting the production

budgets with the bogus line entries, helping the Hayes Defendants in altering or concealing the

actual production expenses, composing and/or transmitting records of the excess amounts

received from CBGB, composing and/or transmitting records of the excess amounts diverted to

Productions NYC, and issuing one or more checks to divert funds to Productions NYC.

35

192.    Through their pattern of racketeering activities, the RICO Defendants defrauded

CBGB out of no less than $550,000, and potentially much more.  The RICO Defendants imposed

numerous fraudulent overcharges on CBGB, including without limitation, the particular

payments set forth below.

**a.  Overcharges in Connection with the 2012 Times Square Concert**

193.    The RICO Defendants imposed fraudulent overcharges on CBGB in connection

with the 2012 Times Square Concert.

194.    On or about June 14, 2012, SWP paid $25,000 to Hayes or Productions NYC by

check.

195.    In or around July 2012, the RICO Defendants arranged for the same $25,000 to be

included in the production budget for the event being funded by CBGB.  The line item appeared

in a list of "non-budgeted items," as "Production Management Services," with the vendor listed

as "Productions New York."   In furtherance of the fraudulent schemes, the RICO Defendants

transmitted or caused to be transmitted the production budget reflecting the bogus $25,000 line

item for Productions NYC among themselves, by email over interstate wires.  Such emails

included an email from an SWP agent or employee to Weissman and Douglas on July 6, 2012

(produced at SWP002730-31).

196.    On or about July 16, 2012, SWP, through Douglas, transmitted to Hayes emails

sent through interstate wires attaching different versions of an SWP invoice for $63,103.28.  One

or more versions concealed that the total amount invoiced included the bogus $25,000 charge.

197.    On or about July 17, 2012, at Hayes's request, CBGB issued a payment to SWP in

the form of a check for $81,545.25, an amount greater than the $63,103.28 invoiced by SWP.

The erroneous amount requested by Hayes resulted in an overcharge of $18,441.97, in addition

to the bogus $25,000 "production management services" charge.  The same day, July 17, 2012,

36

SWP issued a check to Productions NYC for $18,444.97 (exactly three dollars ($3.00) more than the overpayment described above).

198.    Through their fraudulent schemes, the RICO Defendants arranged for CBGB to pay at least at least $43,444.97 in overcharges for the 2012 Times Square Concert, thereby injuring CBGB in its business or property.

### b.    Overcharges in Connection with the 2013 Times Square Concert

199.    The 2013 Times Square Concert took place on October 12, 2013.  From May to October 2013, CBGB made numerous payments to SWP, all of which were inflated by amounts that the RICO Defendants deliberately arranged, some or all of which were diverted to Hayes through Productions NYC.

200.    On or about May 8, 2013, Hayes sent an email to the CBGB Board requesting that they arrange for a $100,000 check to be paid.  Hayes stated, "The 100K deposit really should be paid before the end of this week.  They requested that it be in by Jan. 1.  Our grace period has come to an end."  T. Hayes email to M. Smith, M. Arougheti, dated May 8, 2013 (produced at CBGB0015383).  On or about May 16, 2013, CBGB issued the check requested by Hayes to SWP for $100,000, which Hayes offered by email to deliver personally.  On or about May 16, 2013, SWP paid $47,500 back to Hayes by issuing a check to Production NYC.

201.    On or about July 8, 2013, Douglas transmitted to Hayes by email over interstate wires an invoice for the "TS Festival" for $100,000.00, consisting of a "June 2013 Production Fee" for $50,000 and a "July 2013 Production Fee" for $50,000.  Under the payment terms that SWP had accepted in the Proposal Agreement, no production fees were in fact due in June or July 2013.

202.    At Hayes's request, CBGB issued a check to SWP for $100,000 in response to the July 2013 invoice.  On or about July 16, 2013, SWP paid $45,000 back to Hayes by issuing a check to Productions NYC.

203.    In August 2013, the RICO Defendants extracted the single largest overcharge from CBGB in the history of their fraudulent schemes, $250,000 in one payment.  On August 12, 2013, Hayes requested by email sent over interstate wires that the CBGB Board issue a wire to SWP's account for $1.3 million, including in an email dated August 12, 2013 (attached hereto as Exhibit 3, produced at ARES0000624).  In another email that day, Hayes represented to Michael Smith, "I just spent the last 90 minutes with Evan Korn from the Mayors office.  It will make our path forward much more favorable if the funds get wired today."  T. Hayes email to M. Smith, Aug. 12, 2013 (attached hereto as Exhibit 4, produced as ARES0000632).  In fact, the City was not requesting, and never requested, $1.3 million in connection with the 2013 Times Square Concert.

204.    Following Hayes's request, CBGB wired $1,300,000 to SWP on or about August 12, 2013.  Specifically, Michael Smith exchanged emails with his contacts at JP Morgan Chase, which held the bank account for CBGB, requesting the wire to SWP.  That same day, SWP paid $250,000 back to Hayes by issuing a check to Productions NYC.  Douglas signed the SWP check (attached hereto as Exhibit 5, produced at SWP008094).

205.    On October 11, 2013, one day before the 2013 Times Square Concert, Douglas emailed Hayes, "Any word on monies coming in?"  Hayes replied that day that he was "working on it," and that he would request the wire within 90 minutes "after I go through the numbers again."  Hayes then warned Douglas, "only talk budget & money with me."  Douglas replied, "I

38

never speak numbers with anyone else." J. Douglas email to T. Hayes, Oct. 11, 2013 (attached

hereto as Exhibit 6, produced at CBGB0000953).

206.    Later that day, Hayes requested that CBGB wire $531,275 to SWP.  Specifically,

on October 11, 2013, Hayes emailed Michael Smith over interstate wires transmitting a

spreadsheet of purported costs, explaining "These are additions above and beyond the core

production.  This needs to be wired today to SWP.  Routing info to follow." T. Hayes email to

M. Smith, Oct. 11, 2013 (attached hereto as Exhibit 7, produced at ARES0000811-12).  The

spreadsheet included items like "Band Backline," "Dressing Room Motorhomes," and many

others.  On information and belief, the spreadsheet misstated the actual costs SWP had estimated

or incurred.

207.    Also that day, October 11, 2013, in response to Hayes's request, CBGB wired

$531,275 to SWP.  Specifically, Michael Smith exchanged emails with JP Morgan Chase,

requesting the wire to SWP.  One week later, on or about October 18, 2013, SWP paid $57,275

back to Hayes by issuing a check to Productions NYC.  SWP recorded the payment to Hayes as

two separate transactions, one for $25,000 corresponding to a line item on the budget for

Production Management Services, and one for $32,275.

208.    In their own records, the RICO Defendants recorded the May, July, August and

October 2013 payments to Hayes as debits against CBGB's payments.  The purported cost of the

Times Square Concert, as reported to CBGB, was thereby fraudulently inflated by an amount at

least equal to the secret payments that SWP was making to Hayes.  These records included,

without limitation, production budgets circulated among the RICO Defendants.  (*See, e.g.*,

J. Douglas email to S. Weissman, dated Oct. 18, 2013, produced at SWP004476-77, attached

budget at p.1 of 14, hereto as Exhibit 9.)

209.    Through their fraudulent schemes, the RICO Defendants arranged for CBGB to pay at least $399,775.00 in overcharges for the 2013 Times Square Concert, thereby injuring CBGB in its business or property.

**c.    Overcharges in Connection with the 2014 Amnesty Event**

210.    The RICO Defendants also charged inflated amounts, again for the purpose of diverting some or all of them to Hayes through Productions NYC, in connection with the February 2014 Amnesty event.

211.    On January 27, 2014, Hayes requested that CBGB make a payment to SWP for the Amnesty event.  Hayes made the request in an email to Smith requesting that CBGB wire $107,350 to SWP.  Hayes assured him, "I will have full, itemized documents for every item on for the concert that will show each vendor and asset.  This is for the stage and load-in[.]"  T. Hayes email to M. Smith, Jan. 27, 2014 (attached hereto as Exhibit 11, produced at ARES000856).   On or about January 29, 2014, based on Hayes's request, CBGB wired $107,350 to SWP.

212.    The Amnesty event took place on February 4, 2014.  That morning, Hayes requested that CBGB wire SWP an additional $603,000.  In an email to Smith that day, Hayes wrote, "Load in is going great.  SWP wrote some checks to get people in the door.  We are keeping a full accounting. Please wire $603,000 this morning to [SWP.]"  T. Hayes email to M. Smith, Feb. 4, 2014 (attached hereto as Exhibit 12, produced at ARES0000868).   That day, based on Hayes's request, CBGB wired $603,000 to SWP.

213.    These requests caused CBGB to pay substantial overcharges, which the RICO Defendants intended to divert to Hayes through Productions NYC.

214.    After the Amnesty event was over, Weissman sent Hayes a worksheet for "closing out" the Amnesty event, by email dated February 24, 2014 (attached hereto as Exhibit

40

<u>13</u>, produced at SWP001255-56).  The worksheet also covered separate live events that the

Enterprise had carried out for AT&T.  The worksheet clearly documented two fraudulent

overcharges paid by CBGB.

215.    First, although CBGB had paid SWP $710,350.00 over two wires, the worksheet

revealed that SWP had only been due $648,838.57.  Thus, CBGB had overpaid $61,511.43, a

figure that appeared on the worksheet with the description "Amount Due back Productions NY."

216.    Second, the worksheet revealed that the amount due SWP was inflated by an

*additional* $50,000.  Next to the figure purportedly due SWP ($648,838.57), Weissman had

noted for Hayes, "your $50k is in this number."  Hayes and Weissman had again included a

bogus line item for Productions NYC in the production budget, in this instance $50,000.  On

January 20, 2014, for example, Weissman had sent an email to Hayes, copied to Douglas, with

the subject line "All things money," attaching the Amnesty production budget.  The budget

included a line item for $50,000 described only as "Miscellaneous," with the annotation "OK."

S. Weissman email to T. Hayes, Jan. 20, 2014 (produced at SWP005455-57).

217.    The RICO Defendants transmitted the above emails or caused them to be

transmitted over interstate wires in furtherance of the fraudulent schemes.

218.    Through their fraudulent schemes, the RICO Defendants arranged for CBGB to

pay at least at least $111,511.43 in overcharges for the 2014 Amnesty event for the purpose of

diverting those monies to Hayes and Productions NYC, thereby injuring CBGB in its business or

property.

    **d.    Hayes Misrepresents Productions NYC as Inactive in Order to Continue
            Eliciting Consulting Fees from CBGB, in Addition to the Fraudulent
            Overcharges**

219.    By diverting the fraudulent overcharges, Hayes repeatedly breached the express

agreement with Bowery as to Hayes's compensation.  Bowery paid Hayes $12,000 per month to

41

promote the CBGB brand, including to oversee production of each Times Square Concert and the 2014 Amnesty event.  Hayes arranged additional unauthorized compensation for himself, in the form of the excess payments charged to CBGB, without CBGB's knowledge.

220.    Hayes nonetheless expressly told the CBGB Board that Productions NYC was not receiving any other money, including in emails transmitted over interstate wires – in each instance a blatantly false statement.

221.    For example, in January 2013, Hayes emailed Smith stating Hayes was "all in" with CBGB, and that he had walked away from his Productions NYC business:

> I want you to know that I really want to deliver this for you & Mike [Arougheti].  I had a nice production company that I wholly owned for six year.  Productions New York produced major projects for many top tier broadcast properties that include all of the major network[s].  *I walked away from it to go "all in" with CBGB.*

T. Hayes email to M. Smith, dated Jan. 23, 2013 (emphasis added) (attached hereto as Exhibit 2, produced at CBGB0016563).  Hayes had already diverted money, an amount no less than $25,000 at that time, from CBGB to the purportedly abandoned Productions NYC through the above fraudulent schemes.

222.    In July 2013 email, Hayes emailed Smith, representing that "I closed Productions NY last year to focus exclusively on 315 Bowery," and that "I am not doing any work 'on the side' for someone else."  T. Hayes email to M. Smith, dated July 22, 2013 (produced at ARES0000613).

223.    In October 2013, Hayes emailed Smith about the timing of his consulting payments.  He again represented that he was not receiving any money through Productions NYC other than his agreed upon consulting fees from CBGB: "I would like to have Melissa cut a salary check for me tomorrow.  I am focused on CBGB 24/7 and I depend on it now to keep the family going *since leaving productions ny*."  T. Hayes email to M. Smith, Oct. 14, 2013

42

(attached hereto as Exhibit 8, produced at ARES0000827).  In fact, by October 2013, Hayes had already diverted hundreds of thousands of dollars from CBGB through Productions NYC, through the fraudulent overcharge schemes.

> **e.  The RICO Defendants' Participation in the Schemes to Defraud was Knowing and Intentional**

224.     On information and belief, the RICO Defendants, and each of them, participated in the fraudulent schemes knowingly and intentionally.

225.     Hayes and Productions NYC intentionally arranged for the excess payments to be transferred to Hayes through his company Productions NYC, and he collaborated with SWP, Weissman and Douglas to arrange those payments.  While doing so, he misrepresented to CBGB that Productions NYC was inactive and no longer a source of income.  He sent emails and other communications to CBGB that blatantly misrepresented the amount and nature of payments that were due, arranged for SWP to be hired on false pretenses, concealed the fact that he had purportedly signed a two-year commitment to SWP on behalf of CBGB Festival in the Proposal Agreement and sent altered or incorrect financial information to CBGB.

226.     SWP likewise participated in the fraudulent schemes knowingly and intentionally.  SWP issued all of the checks to Productions NYC from the excess amounts defrauded out of CBGB.  SWP generated budgets that included bogus "productions management services" or "miscellaneous" charges that helped inflate the numbers ultimately requested from CBGB, while never transmitting those budgets to the CBGB Board.

227.     On information and belief, Weissman knew and intended that the excess payments diverted to Hayes were part of the schemes to defraud.  Weissman at all times was the CEO of SWP, and was Hayes's main point of contact on the Times Square Concerts and Amnesty event.  Weissman was deeply involved in the details of all the live events.  The excess

43

payments received by SWP and diverted to Hayes were material in relation to the total cost of producing the live events and material to SWP's cash position as a company. For the 2013 Times Square Concert alone, the payments to Hayes represented SWP's largest single "expense" other than City permitting fees, and on information and belief were booked by SWP as "partner fees."

228.    In addition, Weissman knew and intended that illegitimate payments were being made to Hayes. Weissman knew that items budgeted for Productions NYC as "production management services" or "miscellaneous" were bogus. He composed and/or transmitted production budgets that included such an item for $25,000 for the 2012 Times Square Concert, another such item for $25,000 for the 2013 Times Square Concert, and a $50,000 expense item for the Amnesty event. At the conclusion of the Amnesty event, Weissman compiled and transmitted a summary chart listing the amounts charged to CBGB, with the note, "your 50k is in this number." (Exhibit 13) In an August 2014 email to Hayes, he openly mocked the notion that these budgeted payments totaling $100,000 represented legitimate fees. (Exhibit 16)

229.    On information and belief, Weissman knew and intended that the arrangements with Hayes were classic kickback schemes. Based on his email communications with Hayes, Weissman knew that Michael Smith and Michael Arougheti, the members of the CBGB Board, were the individuals funding the production expenses. Weissman also knew that, in response to every overpayment, SWP was diverting the overcharged amounts to Hayes, the person advising CBGB to engage SWP. In many instances, SWP issued the relevant check to Hayes on the same day as it received payment from CBGB.

230.    On information and belief, Weissman knew and intended that CBGB repeatedly overpaid amounts due, and that the overcharges were diverted to Hayes and Productions NYC.

The resulting pattern of overpayment by CBGB, followed by SWP paying those amounts to Productions NYC, was evident from records that Weissman saw, records that he transmitted to others and/or records that he composed.

231.    For example, in connection with the 2013 Times Square Concert, Weissman personally reviewed or composed numerous versions of the production budget, which tracked an ever-growing list of overpayments from CBGB.  The "Payments" column alternated between a large positive number and a smaller negative number, betraying that every single payment collected from CBGB had been inflated.  Weissman received a version of the budget circulated on October 18, 2013, several days after the 2013 Times Square Concert, that listed the "Payments" received by SWP as follows:

| Payments |
| --- |
| $            100,000.00 |
| $            (47,500.00) |
| $            100,000.00 |
| $            (45,000.00) |
| $         1,300,000.00 |
| $          (250,000.00) |
| $         1,157,500.00 |
|  |
| $            531,275.00 |
| $            (32,275.00) |
| $            (25,000.00) |
| **$         1,631,500.00** |

"Internal" 2013 Times Square Concert budget, p. 1 of 14 (attached to email at Exhibit 9).

232.    Thus, CBGB's consistent overpayments to SWP repeatedly stared Weissman in the face.  Weissman and the other RICO Defendants circulated similar production budgets among themselves, for example, in an email from Douglas to Weissman on September 17, 2013; an email from Weissman to Douglas on October 1, 2013; an email from Douglas to Weissman and Hayes on October 3, 2013; an email from Hayes to Douglas, copied to Weissman on October

45

3, 2013; and an email from Douglas to Weissman, also on October 3, 2013, with the subject line "Internal CBGB Budget" (produced at SWP003212, 003509, 003513 and 003518-19).  All of the above emails were transmitted over interstate wires and in furtherance of the fraudulent schemes.

233.    On information and belief, Douglas knowingly and intentionally agreed to participate in the racketeering schemes.  Douglas signed the single largest SWP check to Productions NYC, for $250,000, which she issued within one day of SWP receiving an enormous overpayment from CBGB.  Douglas composed, viewed and transmitted the production budgets that reflected repeated overpayments by CBGB and that showed at least some of the diverted payments to Productions NYC.

234.    Douglas's knowledge and intent with respect to the fraudulent schemes is also reflected in her participation in efforts with Hayes to conceal the inflated charges from CBGB.  On at least one occasion, Douglas sent Hayes an SWP invoice and then, at his request, re-sent the same invoice in MS Word, expressly noting this would allow Hayes to "edit" the invoice.  On another occasion, moments before sending a grossly inflated payment request to the CBGB Board, Hayes warned Douglas, "only talk budget & money with me," and Douglas replied, "I never speak numbers with anyone else."  (Exhibit 6)  Approximately one week later SWP paid $57,275 to Productions NYC.

## III.    SWP Violates the Contractual Terms of Its Engagement By Charging Excessive Fees and by Providing Shoddy Work

235.    In addition to participating in the brazen fraudulent schemes against CBGB, SWP also breached its contractual obligations.  SWP violated the agreed upon terms for its engagement on the 2012 and 2013 Times Square Concert, both with regard to SWP's financial demand and the quality of SWP's work.

46

236.    Without the authorization or approval of the CBGB Board, Hayes purported to
execute the Proposal Agreement with SWP on behalf of CBGB Festival.  Hayes did not disclose
the existence or terms of the Proposal Agreement to the CBGB Board.

237.    To the extent the Proposal Agreement was binding on CBGB Festival, it provided
the particular fees that SWP could charge in connection with the 2013 Times Square Concert.
In breach of those provisions, SWP charged higher amounts than were due under that contract or
that were not due at all.

238.    For example and without limitation, the Proposal Agreement provided that if
CBGB increased the Times Square Concert's geographic footprint, SWP would be entitled to an
additional fee, on a "per block" basis.  On information and belief, SWP calculated its fee for
2013 by adding $150,000 for three extra blocks, or $50,000 per block.  This was more than
double what was actually permitted by the Proposal Agreement, which set the 2013 extra block
fee at $20,000 per block.  Also in connection with the 2013 Times Square Concert, on
information and belief, SWP incorporated a "contingency" cost equal to 5% of production costs,
totaling nearly $70,000.  The Proposal Agreement did not provide for this item at all.

239.    As part of the engagement for the Times Square Concert, SWP promised that all
work performed by SWP and its hired professionals would be performed according to current
professional standards as best possible to achieve the results desired by CBGB Festival.  That
promise was part of a binding contract between CBGB Festival and SWP for production of the
2012 Times Square Concert and the 2013 Times Square Concert.  Without limitation of the
foregoing, to the extent the Proposal Agreement was binding on CBGB Festival, that contract
provided, "SWP assures that all worked [*sic*] performed by SWP and it's [*sic*] hired
professionals will be done to current professional standards . . . ."

47

240.    Among other deficiencies, SWP provided a failing audio system, which caused music delay systems to die twice for approximately 40 minutes at a time.

241.    SWP provided inadequate lighting rigs.  A significant number of stage lights never lit up because SWP simply forgot to plug them in.

242.    SWP neglected to build three raised side-stages, to be equipped with a public address and sound system, monitors, electrical outlets, backdrops and a sound engineer, without any explanation.  Attached hereto as Exhibit 10 are true and correct copies of photographs of bands performing at the 2013 Times Square Concert either on makeshift stages or in the street.

243.    In providing video footage of the 2013 Times Square Concert, SWP procured inferior, antiquated camera equipment, which SWP failed to staff.  SWP also delayed providing, or refused to provide altogether, the hard drives containing the event footage, to the extent any usable footage existed.

244.    CBGB Festival was injured by SWP's breaches in the form of paying excess amounts to SWP, receiving sub-standard work on the 2013 Times Square Concert, having to expend significant resources to patch up SWP's failures, including out-of-pocket expenses to other vendors, and lost profits and lost business opportunities.

## IV.    Weissman and Hayes End Their Relationship in Hostility, and Ultimately Sabotage the 2014 Times Square Concert

### a.    Hayes Declines to Hire SWP for the 2014 Times Square Concert, and SWP Retaliates by Interfering with CBGB Festival's Business

245.    CBGB Festival decided to hold the CBGB Music and Film Festival again in 2014, with the 2014 Times Square Concert to be held on October 11, 2014, the Saturday of Columbus Day weekend.

246.    On information and belief, sometime in early 2014, SWP submitted an event permit application to the City of New York.  SWP's application covered several blocks in the

48

Times Square area for an all-day event, to be held on Saturday, October 11, 2014, the intended

date for CBGB's 2014 Times Square Concert.  While the application was on file, Weissman

continued to press Hayes to agree on terms for CBGB Festival to engage SWP to produce the

CBGB event, to no avail.

247.    CBGB Festival never hired SWP to produce the 2014 Times Square Concert.

SWP nonetheless sent invoices to Hayes in connection with the 2014 event, for deposits and

other amounts purportedly already due.

248.    At the same time, Weissman knew that he had no agreement in place as to the

2014 Times Square Concert, and he repeatedly acknowledged that CBGB Festival had not

accepted various proposals for SWP to handle the 2014 event.  By June 2014, SWP engaged

outside counsel, who reached out to Hayes about entering into an entirely new agreement for

hiring SWP for the 2014 event.  No agreement was reached.

249.    Soon after, SWP became overtly malicious, and ultimately ruined CBGB

Festival's opportunity to hold the Times Square Concert on the desired date of October 11.

250.    Specifically, SWP intentionally induced the City to deny an event permit to

CBGB Festival for the planned date of the 2014 Times Square Concert.  CBGB Festival, through

Hayes, had filed a permit application for the planned October 11, 2014 event with the City of

New York, separate and apart from SWP's application.

251.    With competing permit applications for events at the same location on the same

date, the City announced that it could not issue an event permit to either applicant.  On July 1,

2014, the City contacted Hayes and Weissman separately to let them know that, because there

were two applications for the same day in roughly the same location, the City could not grant

*either* application.

49

252.    Weissman lashed out at Hayes and CBGB Festival and persisted in his permit application with the City.  SWP through its counsel in an email dated July 1, 2014 declared to Hayes categorically that "***SWP will not retract its application for this event***." (emphasis added) SWP's counsel also told Hayes that CBGB Festival's competing application was a breach of the parties' prior contract, although Weissman was fully aware that no contract was in place for 2014.  A true and correct copy of the July 1, 2014 email from SWP's counsel Zigel to Hayes, enclosing the July 1, 2014 letter from the City to Weissman, is attached at Exhibit 14.

253.    SWP's conduct was wrongful and culpable, if not outright illegal, and taken purely out of malice, without any potential benefit to SWP.  By that point, SWP had no event to produce on October 11, 2014.  It nonetheless maintained and refused to withdraw a permit application with a local government agency.  SWP thus needlessly tied up several city blocks from being used by other applicants, failed to inform the City that it no longer had any prospects of holding the corporate-sponsored, multi-stage music event that SWP had described in its original application, and forced the actual event holder, CBGB Festival, to undo extensive preparations for the event.

254.    On information and belief, SWP deliberately misled CBGB and the City about its intention to maintain the permit application.  Although unknown to CBGB and the City at the time, on information and belief, SWP had no intention of maintaining its permit application and knew that it would have to withdraw its application before the October 11, 2014 event.  SWP nonetheless falsely represented its intent to pursue its permit application, with the intention that CBGB and the City would rely on those representations.

255.    Had SWP not purported to maintain its application for an unuseable permit, in defiance of the City's request, the City would have granted CBGB Festival's request to hold the

Times Square Concert on October 11 as planned.  The City made this clear in its July 1, 2014 letters, when it requested that either side change its application, noting "[i]f either party is willing to request an alternate date we will look to accommodate both requests."

256.    SWP thus intentionally induced the City to deny CBGB Festival's event permit, and ruined CBGB Festival's business opportunity to produce the 2014 Times Square Concert on the planned date of Saturday, October 11.  With that opportunity foreclosed, CBGB Festival was forced to reschedule the entire Times Square Concert to one day later, Sunday, October 12.  With many plans for the original date already set, and the need to extend the overall CBGB Festival by an extra day, the change caused significant inconvenience and expense to CBGB Festival. Conversely, the disruption to the Times Square Concert did not benefit SWP in any way.

257.    Weissman later acknowledged his own malicious motives, which he flaunted as supposed leverage.  For example, in an August 25, 2014 email to Hayes, Weissman explained that SWP had been counseled to pursue a plan that was "so aggressive that it surprised even" him, and that the goal of SWP's "no holds barred" approach was to gain an "advantage" by creating "carnage and pain" for CBGB Festival:  "Not only were the numbers they feel are appropriate astounding, these guys think it is an advantage to create *carnage and pain along the way* if it helps move anything favorably in our direction."  Weissman added, "a substantial amount of my leverage revolves around attacking you BEFORE the festival starts this year."  A true and correct copy of Weissman's August 25, 2014 email to Hayes is attached as Exhibit 15.

### b.  Hayes Keeps CBGB in the Dark Regarding SWP's Increasingly Hostile Demands

258.    Throughout much of these developments, Hayes left CBGB and the Board critically uninformed of SWP's increasingly hostile stance on the 2014 event.  Hayes failed to inform and/or expressly or implicitly misled CBGB as to the nature, timing and substance of the

51

communications with SWP, thereby hiding from CBGB and the Board for months a potential dispute with SWP.

259.    Hayes thus breached his agreement to keep CBGB and the Board informed of CBGB-related business developments, including all information regarding the CBGB Music and Film Festival.  Hayes further breached his agreement to obtain the approval of the Board before conducting business on CBGB's behalf.  CBGB reasonably relied on Hayes' statements and omissions, to its substantial detriment.  To the extent CBGB is found liable to SWP in this action, Hayes deprived CBGB Festival of the opportunity to avoid or mitigate any alleged liability to SWP.

260.    By way of example and without limitation, Hayes failed to disclose to CBGB and the Board, or expressly or implicitly misled CBGB and the Board regarding, the occurrence and/or extent of following events alleged by SWP:

a.    that, in or around April 2014, SWP sent one or more invoices to the Hayes Defendants demanding payment for amounts that SWP contended had already been incurred in connection with the 2014 Times Square Concert;

b.    that SWP had submitted an event permit application with the City of New York on the date planned for CBGB Festival's 2014 Times Square Concert;

c.    that SWP was holding itself out to the City of New York as working on behalf of CBGB Festival on the 2014 Times Square Concert;

d.    that SWP was treating its discussions with Hayes about the 2014 Times Square Concert as a legal matter; and

e.    that SWP complained to Hayes that he was not responding to and/or deliberately ignoring SWP's communications.

261.    Furthermore, SWP alleges in the Amended Complaint that SWP was led by Hayes' "representations" to believe that SWP would be hired or had been hired to produce the 2014 Times Square Concert and that SWP should begin preparatory work on such event, including filing an event permit application.  CBGB denies these allegations but, in the alternative, to the extent that Hayes made any such statements, promises or representations, or engaged in any conduct alleged or found to be the bases of SWP's Amended Complaint, those alleged statements and actions occurred without the knowledge or approval of CBGB, and in violation of Hayes's agreement with CBGB.

262.    CBGB detrimentally relied on the Hayes Defendants' omissions and/or misstatements regarding the events and communications relating to SWP and the 2014 Times Square Concert.

263.    CBGB was damaged as a result of the Hayes Defendants' statements and omissions.  By way of example and without limitation, to the extent CBGB is found liable to SWP in this action, the Hayes Defendants deprived CBGB of the opportunity to avoid or mitigate any such liability to SWP.

## Causes of Action

### First Claim for Relief
### Racketeering in Violation of 18 U.S.C. § 1962(c)
### (CBGB Parties against SWP, Productions NYC, Weissman and Hayes)

264.    CBGB repeats and realleges each and every part of every paragraph set forth above as if they were fully set forth herein.

265.    Defendants SWP, Productions NYC, Weissman and Hayes formed the Enterprise, an association in fact among them and distinct from each of them.

266.    The Enterprise was engaged in and affected interstate commerce, including without limitation the live entertainment events that the Enterprise arranged and produced.

53

267.    Hayes, Weissman, SWP and Productions NYC conducted the affairs of the

Enterprise through a pattern of racketeering.  They knowingly and intentionally carried out

schemes to defraud CBGB by repeatedly overcharging CBGB for SWP's services.  The pattern

of racketeering involved at least seven instances in which the RICO Defendants overcharged

CBGB for SWP's services, and at least eight payments or transfers to Productions NYC of the

excess amounts.  Without limitation, these overpayments totaled over $550,000 and included the

following:

    a.    $43,444.97 that CBGB was overcharged on or about July 17, 2012 for the
          2012 Times Square Concert.

    b.    $47,500 that CBGB was overcharged on or about May 16, 2013 for the
          2013 Times Square Concert.

    c.    $45,000 that CBGB was overcharged on or about July 16, 2013 for the
          2013 Times Square Concert.

    d.    $250,000 that CBGB was overcharged on or about August 12, 2013 for
          the 2013 Times Square Concert.

    e.    $57,275 that CBGB was overcharged on or about October 11, 2013 for the
          2013 Times Square Concert.

    f.    $111,511.43 that CBGB was overcharged over two payments on or about
          January 29, 2014 and on or about February 4, 2014, for the 2014 Amnesty
          event.

268.    In furtherance of the schemes, from 2012 to 2014, the RICO Defendants

transmitted and caused to be transmitted numerous email communications over interstate wires,

in each instance, a violation of the Wire Fraud statute, 18 U.S.C. § 1343.  Such interstate wire

communications included, without limitation, the following:

    a.    Emails in which the RICO Defendants communicated about invoice

amounts, the production budgets, altering or concealing financial information and/or the bogus

54

budget entries for Productions NYC's "production management services" or "miscellaneous"

fees, including without limitation:

- An email from an SWP agent to Weissman and Douglas on July 6, 2012 (produced at SWP002730)

- Emails between J. Douglas and T. Hayes on July 16, 2012 (produced at CBGB00018809-10, *see also* CBGB0000528-32, 0000633, 0001454)

- An email from Douglas to Hayes dated July 8, 2013 (produced at CBGB0015127-28)

- An email from Douglas to Weissman, dated Sept. 17, 2013 (produced at SWP003212)

- An email from Weissman to Douglas, dated Oct. 1, 2013 (produced at SWP003509-11)

- An email from Douglas to Weissman and Hayes, dated Oct. 3, 2013 (also produced at SWP003509)

- An email from Hayes to Douglas, copied to Weissman, dated Oct. 3, 2013 (produced at SWP003513)

- An email from Douglas to Weissman, dated Oct. 3, 2013 (subject line "Internal CBGB Budget") (produced at SWP003518-19)

- Emails between Douglas and Hayes dated Oct. 11, 2013 (produced at CBGB0000953)

- An email from Douglas to Weissman, dated Oct. 18, 2013 (produced at SWP004476-77)

- An email from Weissman to Hayes, dated Jan. 20, 2014  (produced at SWP005455-57)

- An email from Weissman to Hayes, dated Feb. 24, 2014 (produced at SWP001255-56)

- An email from Weissman to Hayes, dated Aug. 27, 2014 (produced at SWP005269)

b.    Emails from Hayes to the CBGB Board regarding requests for payment to

SWP, including without limitation:

55

- An email from Hayes to Smith and Arougheti, dated May 8, 2013 (produced at CBGB0015381)

- Emails from Hayes to Smith, dated Aug. 12, 2013 (produced at ARES0000627, ARES0000633)

- An email from Hayes to Smith, dated Oct. 11, 2013 (produced at ARES00000811)

- An email from Hayes to Smith, dated Jan. 26, 2014 (produced at ARES000859)

- An email from Hayes to Smith, dated Feb. 4, 2014 (produced at CBGB 0007278)

c.    Emails in which Hayes made misrepresentations to the CBGB Board designed to conceal the fraudulent scheme, including his statements that Productions NYC no longer existed or no longer generated any income, including without limitation:

- An email from Hayes to Smith, dated Jan. 23, 2013 (produced at CBGB-0016563)

- An email from Hayes email to M. Smith, dated July 22, 2013 (produced at ARES0000613)

- An email from Hayes to M. Smith, dated Oct. 14, 2013 (produced at ARES0000827)

d.    Emails that the RICO Defendants caused the CBGB Board to transmit to their financial institution, requesting wire payments to SWP, including without limitation:

- Emails between Smith and JP Morgan Chase personnel, dated Aug. 12, 2013 (produced at ARES0000627)

- Emails between Smith and JP Morgan Chase personnel, dated Oct. 11, 2013 (produced at ARES00000815)

269.    The RICO Defendants' acts of racketing constituted a pattern, including without limitation by virtue of (i) the sheer number of interstate wire communications and the number of fraudulent overcharge schemes that they carried out; (ii) the repeated occurrence over a substantial period of time, from 2012 and 2014; (iii) the continuous and self-perpetuating nature

56

of the schemes, with SWP diverting excess payments to Hayes, and Hayes then arranging for

SWP to be hired for more events; (iv) the repeated use of the common method of Hayes eliciting

deliberately inflated payments from CBGB, after which SWP, at times on the same day, would

make a secret side payment or transfer to Hayes for the excess amounts; and (v) the common

purpose, result and victim of these acts of racketeering, namely SWP's purported client CBGB,

in its business and property.

270.     Through the scheme, SWP, Productions NYC, Weissman and Hayes defrauded

CBGB out of more than $550,000, and possibly much more.

271.     Accordingly, SWP, Productions NYC, Weissman and Hayes each knowingly and

intentionally conducted the affairs of the Enterprise through a pattern of racketeering, which

injured CBGB in its business and property, in violation of 18 U.S.C. § 1962(c).

272.     Under 18 U.S.C. §§ 1962(c) and 1964, SWP, Productions NYC, Weissman and

Hayes are joint and severally liable to CBGB for treble damages in an amount to be determined

at trial but no less than $1,650,000, as well as costs and reasonable attorneys' fees.

<u>Second Claim for Relief</u>
**Conspiracy to Commit Racketeering in Violation of 18 U.S.C. § 1962(d)**
**(CBGB Parties against Douglas, SWP, Productions NYC, Weissman and Hayes)**

273.     CBGB repeats and realleges each and every part of every paragraph set forth

above as if they were fully set forth herein.

274.     On information and belief, Douglas entered into an agreement or conspiracy with

SWP, Productions NYC, Weissman and Hayes to participate, directly or indirectly, in conducting

the Enterprise through a pattern of racketeering.

275.     On information and belief, each of Douglas, SWP, Productions NYC, Weissman

and Hayes joined the agreement or conspiracy knowing of its objective to conduct or participate,

directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity, as set forth above, and intending to achieve that objective.

276.     Under 18 U.S.C. §§ 1962(d) and 1964, Douglas is jointly and severally liable to CBGB for treble damages in an amount to be determined at trial but no less than $1,650,000, as well as costs and reasonable attorneys' fees.

277.     Under 18 U.S.C. §§ 1962(d) and 1964, in addition to and/or in the alternative to their liability set forth in CBGB's First Claim for Relief, SWP, Productions NYC, Weissman and Hayes are jointly and severally liable to CBGB for treble damages in an amount to be determined at trial but no less than $1,650,000, as well as costs and reasonable attorneys' fees.

<u>**Third Claim for Relief**</u>
**Conversion**
**(CBGB Parties against SWP, Productions NYC, Weissman, Hayes and Douglas)**

278.     CBGB repeats and realleges each and every part of every paragraph set forth above as if they were fully set forth herein.

279.     The funds that CBGB used to pay SWP for the production of live entertainment events were the property of CBGB.

280.     SWP, Weissman and Douglas, in concert with Productions NYC and Hayes deliberately inflated the payments that CBGB made to SWP, thereby intentionally interfering with CBGB's possession of such funds, and allowing SWP, Weissman and Douglas to acquire dominion and control over such funds, and depriving CBGB of such funds.

281.     Productions NYC and Hayes deliberately inflated the payments that CBGB made to SWP and arranged for SWP to divert the excess funds to Hayes through Productions NYC, thereby intentionally interfering with CBGB's possession of such funds, allowing Hayes and Productions NYC to acquire dominion and control over such funds, and depriving CBGB of such funds.

58

282.    In addition, or in the alternative, on information and belief, SWP, Productions NYC, Weissman, Hayes and Douglas entered into a corrupt agreement between and among themselves to convert CBGB's money and property.

283.    On information and belief, each of SWP, Productions NYC, Weissman, Hayes and Douglas knowingly and intentionally participated in the furtherance of a plan or purpose to convert CBGB's property.  The information supporting CBGB's belief that their participation in the plan to commit conversion was knowing and intentional is set forth above, including but not limited to the circumstances set forth at paragraphs 224 to 234.

284.    Each of SWP, Productions NYC, Weissman, Hayes and Douglas committed numerous overt acts in furtherance of the agreement or conspiracy, as set forth above, including without limitation summarized at paragraph 291, which is hereby incorporated herein.

285.    SWP, Productions NYC, Weissman, Hayes and Douglas directly and by conspiracy converted CBGB's property.

286.    By their conversion of CBGB's property and their conspiracy to convert CBGB's property, SWP, Productions NYC, Weissman, Hayes and Douglas caused damages to CBGB in an amount to be determined but no less than $550,000.

287.    Accordingly, SWP, Productions NYC, Weissman, Hayes and Douglas are liable to CBGB for conversion, including for replevin, compensatory damages in an amount to be determined at trial but no less than $550,000, and punitive damages in an amount to be determined at trial.

## Fourth Claim for Relief
## Aiding and Abetting Conversion
## (CBGB Parties against SWP, Productions NYC, Weissman, Hayes and Douglas)

288.    CBGB repeats and realleges each and every part of every paragraph set forth above as if they were fully set forth herein.

289.    CBGB pleads in the alternative that one or more of SWP, Productions NYC, Weissman, Hayes and Douglas committed conversion of CBGB's Property, and that the others aided and abetted such conversion.

290.    On information and belief, each of SWP, Productions NYC, Weissman, Hayes and Douglas had knowledge of the conversion of CBGB's property.  The information supporting CBGB's belief that they had knowledge of the conversion is set forth above, including but not limited to the circumstances set forth at paragraphs 224 to 234.

291.    Each of SWP, Productions NYC, Weissman, Hayes and Douglas provided substantial assistance in committing conversion of CBGB's property, in the manner set forth above, including without limitation, as follows:

a.    Hayes and Productions NYC sent emails and other communications to CBGB that blatantly misrepresented the amount and nature of payments that were due; sent altered or incorrect invoices or financial information to CBGB; arranged for SWP to be hired on false pretenses; arranged for SWP to be paid; took affirmative steps to conceal information from CBGB, including without limitation the existence of the Proposal Agreement; and misrepresented to CBGB that Productions NYC was inactive and no longer a source of income.

b.    SWP issued the checks to Productions NYC from the excess amounts defrauded out of CBGB; generated budgets that included bogus "production management services" or "miscellaneous" charges that helped inflate the numbers ultimately requested from CBGB; never transmitted those budgets to the CBGB Board; and carried out the actions taken by Weissman and Douglas described herein.

c.    Weissman acted as Hayes's main point of contact on the Times Square Concerts and Amnesty event; communicated with Hayes and Douglas regarding excess amounts

60

being collected from CBGB with the intent of diverting some or all of them to Hayes through

Productions NYC; included bogus line items in the productions budgets for payments to Hayes

through Productions NYC, under the guise of "production managements services," or

"miscellaneous" fees; and sent Hayes information about the overcharges, including a financial

summary of the Amnesty event, in which Weissman listed the amounts charged to CBGB with

the note to Hayes, "your 50k is in this number."

        d.     Douglas signed one or more of the SWP checks issued to Productions

NYC, including the single largest such diverted payment for $250,000 in August 2013.  Douglas

composed and/or transmitted the production budgets reflecting repeated overpayments by CBGB

as well as showing at least some of the diverted payments to Productions NYC.  Douglas sent

Hayes invoices from SWP in support of the conspiracy to defraud CBGB, including without

limitation, at least one instance in which she transmitted an MS Word version of an invoice

expressly so that Hayes could "edit" it.  Douglas also affirmatively avoided disclosing to anyone

working with CBGB other than Hayes information about the payments to SWP, and provided

assurances to Hayes that she would keep such information secret.

        292.    In addition to and/or in the alternative to their liability to CBGB for Conversion

(Third Claim for Relief, above), Productions NYC, SWP, Hayes, Weissman and Douglas are

jointly and severally liable to CBGB for aiding and abetting conversion of CBGB's property.

        293.    Accordingly, SWP, Productions NYC, Weissman, Hayes and Douglas are liable

to CBGB for replevin, compensatory damages in an amount to be determined at trial but no less

than $550,000, and punitive damages in an amount to be determined at trial.

61

**Fifth Claim for Relief**
Fraud
**(CBGB Parties against Productions NYC and Hayes
and for conspiracy against SWP, Weissman, and Douglas)**

294.     CBGB repeats and realleges each and every part of every paragraph set forth

above as if they were fully set forth herein.

295.     The Hayes Defendants made statements to CBGB and the Board regarding the

amount of payments due to SWP for its performance of production services.  These statements

included without limitation the communications set forth above in or around July 2012 for the

2012 Times Square Concert, in or around August and October 2013 for the 2013 Times Square

Concert, and in or around January and February 2014 for the Amnesty event.  In these

communications by phone, email and in person, the Hayes Defendants intentionally

misrepresented to CBGB and the Board that the requested funds represented the amounts

required to pay for SWP's services or amounts that SWP needed to pay others for necessary

resources, including the City.

296.     The Hayes Defendants also intentionally misrepresented to CBGB and the Board

that Hayes was not generating any income through Productions NYC, and that he was not

receiving any income other than his regular consulting payments from CBGB.  These statements

included without limitation the communications in or around January 2013, July 2013 and

October 2013 set forth above at paragraphs 219 to 223.

297.     The Hayes Defendants' representations were expressly and materially false and

misleading because (i) the amounts reportedly due to SWP, in fact, were not necessary to pay for

SWP's services or other legitimate expenses but were inflated for the sake of funding side

payments to Productions NYC, for the benefit of Hayes; and (ii) Hayes had not ceased

generating revenue through Productions NYC, but in fact was using Productions NYC to channel

62

side payments from excess amounts paid by CBGB, so that Hayes was drawing income over and above the agreed upon consulting payments he received from CBGB.

298.    In addition, or in the alternative, in communications with CBGB and the Board, the Hayes Defendants intentionally omitted material facts, including without limitation, that the purported SWP payment amounts were inflated by side payments.  The omission of such information rendered the Hayes Defendants' communications false and misleading.

299.    CBGB's reliance on the Hayes Defendants' statements and omissions was reasonable.

300.    On information and belief, SWP, Weissman, and Douglas entered into a corrupt agreement among themselves and with Hayes and Productions NYC to commit fraud against CBGB.

301.    On information and belief, each of SWP, Weissman, and Douglas, along with Productions NYC and Hayes, knowingly and intentionally participated in the furtherance of a plan or purpose to defraud CBGB.  The information supporting the belief that their participation in the plan to defraud was knowing and intentional is set forth above, including but not limited to the circumstances set forth at paragraphs 224 to 234.

302.    Each of SWP, Weissman and Douglas, along with Productions NYC and Hayes, committed numerous overt acts in furtherance of the agreement or conspiracy, as set forth above, including without limitation summarized at paragraph 291.

303.    As a result of the conspiracy among Hayes, Productions NYC, SWP, Weissman and Douglas to defraud CBGB, CBGB was damaged in an amount to be determined at trial but no less than $550,000.

63

304.    CBGB was damaged by the Hayes Defendants' fraudulent representations and

omissions and by the conspiracy among SWP, Weissman, Douglas, Productions NYC and Hayes

to defraud CBGB, including without limitation by the excess payments from CBGB to SWP in

the amounts and on the dates set forth at paragraph 267.

305.    Accordingly, Hayes, Productions NYC, SWP, Weissman and Douglas are liable

to CBGB for fraud by express misrepresentation and/or omission.  Each of Hayes, Productions

NYC, SWP, Weissman and Douglas is jointly and severally liable to CBGB for compensatory

damages in an amount to be determined at trial but no less than $550,000 and punitive damages

in an amount to be determined at trial.

**Sixth Claim for Relief**
**Aiding and Abetting Fraud**
**(CBGB Parties against SWP, Weissman and Douglas)**

306.    CBGB repeats and realleges each and every part of every paragraph set forth

above as if they were fully set forth herein.

307.    Hayes and Productions NYC committed fraud against CBGB.  SWP, Weissman,

and Douglas aided and abetted Productions NYC and Hayes committing such fraud.

308.    On information and belief, each of SWP, Weissman and Douglas had knowledge

of the fraud against CBGB.  The information supporting CBGB's belief that they had such

knowledge is set forth above, including but not limited to the circumstances set forth at

paragraphs 224 to 234.

309.    Each of SWP, Weissman and Douglas provided substantial assistance in

committing fraud on CBGB, in the manner set forth above, including without limitation, as

summarized at paragraph 291.

310.     In addition to and/or in the alternative to their liability to CBGB for fraud (Fifth Claim for Relief, above), SWP, Weissman and Douglas are joint and severally liable to CBGB for aiding and abetting fraud against CBGB.

311.     Accordingly, SWP, Weissman and Douglas are liable to CBGB for compensatory damages in an amount to be determined at trial but no less than $550,000, and punitive damages in an amount to be determined at trial.

**Seventh Claim for Relief**
**Unjust Enrichment**
**(CBGB Parties against SWP, Productions NYC & Hayes)**

312.     CBGB repeats and realleges each and every part of every paragraph set forth above as if they were fully set forth herein.

313.     SWP, Productions NYC and Hayes induced CBGB to make inflated payments to SWP, including inflated amounts that Hayes requested from CBGB and fees that SWP charged in excess of what it had agreed to accept under the Proposal Agreement.  The excess amounts were, in whole or in part, paid to SWP and/or diverted to Hayes through Productions NYC.  For the inflated amounts paid, CBGB did not receive any value in return.

314.     SWP, Productions NYC and Hayes thereby benefited at CBGB's expense in a manner and under circumstances such that equity and good conscience require that SWP, NYC Productions and Hayes not retain such benefit.

315.     Accordingly, SWP, Productions NYC and Hayes have been unjustly enriched at CBGB's expense, and CBGB is entitled to a judgment of disgorgement, restitution, and/or compensatory damages in an amount to be determined at trial.

65

### Eighth Claim for Relief
**Money Had and Received**
**(CBGB Parties against SWP, Productions NYC & Hayes)**

316.    CBGB repeats and realleges each and every part of every paragraph set forth above as if they were fully set forth herein.

317.    SWP, Productions NYC and Hayes received excess payments from CBGB in connection with the 2012 Times Square Concert, the 2013 Times Square Concert and the 2014 Amnesty event.

318.    The excess amounts rightfully belonged to the CBGB Parties.

319.    SWP, Productions NYC and Hayes all benefitted from the receipt of the excess payments from CBGB.  On information and belief, SWP benefitted insofar as SWP spent the excess amounts on side payments to Productions NYC and Hayes, whom SWP regarded as a source of business opportunities for SWP.   SWP also benefitted from fees charged in excess of what it had agreed to accept under the Proposal Agreement.  Productions NYC and Hayes benefitted, because those excess amounts were diverted ultimately to Productions NYC and, on information and belief, to Hayes.

320.    Equity and good conscience dictate that the excess payments should not be kept by SWP, Productions NYC and/or Hayes.

321.    Accordingly, SWP, Productions NYC, and Hayes are liable to CBGB under the theory of money had and received for compensatory damages in an amount to be determined at trial but no less than $550,000.

66

**Ninth Claim for Relief**
**Constructive Fraudulent Conveyance in Violation of**
**N.Y. Debtor and Creditor Law §§ 273 and 275**
**(CBGB Parties against SWP, Productions NYC & Hayes)**

322.     CBGB repeats and realleges each and every part of every paragraph set forth

above as if they were fully set forth herein.

323.     SWP received excess payments from CBGB in connection with the 2012 Times

Square Concert, the 2013 Times Square Concert and the 2014 Amnesty event.  SWP conveyed

some or all of those excess payments to Productions NYC.

324.     On information and belief, Productions NYC conveyed some or all of those

excess payments to Hayes.  The circumstances and effects of the conveyances from Productions

NYC to Hayes are peculiarly within the knowledge of Productions NYC and Hayes, and are

alleged herein, without limitation, based on the allegations set forth above, based on the belief

that Hayes is the sole member of Productions NYC and based on Productions NYC's

representations that it is insolvent.

325.     For purposes of N.Y. Debtor and Creditor Law sections 273 and 275, the

conveyances from SWP to Productions NYC and from Productions NYC to Hayes were made

without fair consideration, including without limitation because the conveyances were not made

and not received in good faith, and because no property was exchanged nor any valid antecedent

debt satisfied in exchange for such conveyance.

326.     For purposes of N.Y. Debtor and Creditor Law section 273, on information and

belief, when SWP conveyed some or all of the excess payments to Productions NYC, SWP

thereby rendered itself insolvent; and when Productions NYC conveyed some or all of the excess

payments to Hayes, Productions NYC thereby rendered itself insolvent.

67

327.    For purposes of N.Y. Debtor and Creditor Law section 275, on information and belief, when SWP conveyed some or all of the excess payments to Productions NYC, SWP intended or believed that it would incur debts beyond its ability to timely pay; and when Productions NYC conveyed some or all of the excess payments to Hayes, Productions NYC intended or believed that it would incur debts beyond its ability to timely pay.

328.    CBGB is a creditor of SWP, Productions NYC and Hayes, including without limitation because those parties had an obligation to return the excess payments to CBGB and because they are liable to CBGB for the claims stated herein.

329.    Under N.Y. Debtor and Creditor Law sections 273 and 275, therefore, the above conveyances from SWP to Productions NYC and the above conveyances from Productions NYC to Hayes were constructively fraudulent as to CBGB.

330.    Accordingly, the CBGB Parties are entitled to a judgment against SWP, Productions NYC and Hayes setting aside the above conveyances, including without limitation an award of restitution, disgorgement or damages in an amount equal to the fraudulent conveyances, to be determined at trial but no less than $550,000.

**Tenth Claim for Relief**
**Intentional Fraudulent Conveyance in Violation of**
**N.Y. Debtor and Creditor Law §§ 276 and 276-a**
**(CBGB Parties against SWP, Productions NYC & Hayes)**

331.    CBGB repeats and realleges each and every part of every paragraph set forth above as if they were fully set forth herein.

332.    SWP received excess payments in connection with the 2012 Times Square Concert, the 2013 Times Square Concert and the 2014 Amnesty event, including without limitation in the amounts and on the dates set forth at paragraph 267.   SWP conveyed some or all of those excess payments to Productions NYC.

68

333.     On information and belief, Productions NYC conveyed some or all of those excess payments to Hayes.  On information and belief, Productions NYC conveyed some or all of those excess payments to Hayes.  The circumstances and effects of the conveyances from Productions NYC to Hayes are peculiarly within the knowledge of Productions NYC and Hayes, and are alleged herein, without limitation, based on the allegations set forth above, based on the belief that Hayes is the sole member of Productions NYC and based on Productions NYC's representations that it is insolvent.

334.     On information and belief, SWP, Productions NYC and Hayes entered into the above conveyances with the actual intent to hinder, delay, or defraud either present or future creditors, including specifically CBGB.   The actual intentions of SWP, Productions NYC and Hayes to hinder, delay or defraud present or future creditors, specifically CBGB, are peculiarly within the knowledge of those parties, and are alleged herein based on the allegations set forth above, including without limitation at paragraphs 224 to 234.

335.     CBGB is a creditor of SWP, Productions NYC and Hayes, including without limitation because those parties had an obligation to return the excess payments to CBGB and because they are liable to CBGB for the claims stated herein.

336.     Under N.Y. Debtor and Creditor Law section 276, therefore, the above conveyances from SWP to Productions NYC and the above conveyances from Productions NYC to Hayes were fraudulent as to CBGB.

337.     Accordingly, the CBGB Parties are entitled to a judgment against SWP, Productions NYC and Hayes setting aside the above conveyances, including without limitation an award of restitution, disgorgement or damages in an amount equal to the fraudulent conveyances, to be determined at trial but no less than $550,000.  In addition, under N.Y. Debtor

69

and Creditor Law section 276-a, CBGB is entitled to an award of its reasonable costs and attorneys' fees in this action against SWP, Productions NYC and Hayes.

**Eleventh Claim for Relief**
**Alter Ego Liability**
**(CBGB Parties against Hayes)**

338.    CBGB repeats and realleges each and every part of every other paragraph set forth above as if they were fully set forth herein.

339.    To the extent that Hayes denies that he is personally liable in connection with payments made to Productions NYC, then in addition and in the alternative Hayes is responsible for the liabilities of Productions NYC as set forth herein on the grounds of alter ego or veil piercing liability.

340.    Hayes exercised complete domination over Productions NYC's involvement in the live events sponsored by CBGB and in the engagement of SWP to produce those events.

341.    Hayes abused the corporate form of Productions NYC in order to commit a series of frauds against CBGB, thereby harming CBGB.  Hayes caused CBGB to make overpayments to SWP, and SWP then issued checks for the excess amounts payable to Productions NYC.  At the same time, Hayes misrepresented to CBGB that Productions NYC was closed, inactive, and had no income, all in furtherance of the scheme to defraud CBGB, including without limitation the misrepresentations set forth above at paragraphs 219 to 223.  On information and belief, Hayes took the diverted payments for himself, leaving Productions NYC insolvent and unable to satisfy a judgment in CBGB's favor for the diverted overpayments and other claims.

342.    Hayes so ignored Productions NYC's separateness that it primarily transacted Hayes's business rather than its own, and it can fairly be called Hayes's alter ego.

70

343.    Accordingly, Hayes is liable for the obligations of Productions NYC, including without limitation the liabilities to CBGB set forth herein and for any judgment in CBGB's favor against Productions NYC in this action.

**Twelfth Claim for Relief**
**Alternative Claims for Breach of Fiduciary Duty,**
**Negligent Misrepresentation and Faithless Servant**
**(CBGB Parties against Productions NYC & Hayes)**

344.    CBGB repeats and realleges each and every part of every other paragraph set forth above as if they were fully set forth herein.

345.    As an alternative basis for relief, to the extent that the Hayes Defendants successfully argue that their agreement did not require them to keep CBGB and the Board informed of all business dealings, and/or argue that they were not required to obtain CBGB and the Board's approval before engaging in business on CBGB's behalf, then in the alternative, the Hayes Defendants owed fiduciary duties to CBGB.  Under such alternative claim for relief, the Hayes Defendants' fiduciary duties prohibited them, *inter alia*, from acting in any manner inconsistent with their agency and trust and at all times requiring the Hayes Defendants to exercise the utmost good faith and loyalty in the performance of their duties.

346.    In such alternative case, the Hayes Defendants had a special or privity-like relationship with CBGB, imposing a duty on the Hayes Defendants to impart correct information to CBGB, including regarding the Times Square Concert and CBGB Festival.

347.    In such alternative case, the Hayes Defendants breached their fiduciary duties owed to CBGB, and negligently or intentionally made misrepresentations to CBGB, including by failing to keep CBGB timely and accurately informed regarding the Hayes Defendants' dealings with SWP, and failing to inform CBGB that SWP was making adverse claims against CBGB for the 2014 Times Square Concert.

348.    CBGB reasonably relied on the Hayes Defendants' statements or omissions. CBGB, as a result, suffered damages in an amount to be determined at trial.

349.    CBGB is entitled to compensatory damages and other relief as a result of the Hayes Defendants' breaches of their fiduciary duties.

350.    Furthermore, the Hayes Defendants allowed SWP to charge higher fees than SWP was entitled, submitted invoices and payment requests to CBGB that were grossly inflated, and engaged in side deals with SWP to receive unauthorized additional compensation in connection with the Times Square Concert at CBGB's expense.  In so doing, the Hayes Defendants acted contrary to CBGB's interests.

351.    In the above alternative case, by reason of their secret side deals, the Hayes Defendants breached their fiduciary duty owed to CBGB, and are thereby faithless servants.

352.    CBGB has been damaged by the Hayes Defendants' conduct.

353.    CBGB is entitled to compensatory damages in an amount to be determined at trial but no less than $550,000, including all excess payments that the Hayes Defendants facilitated or allowed to be charged by SWP, and punitive damages.  In addition, and without limitation of the foregoing, CBGB is entitled to disgorgement of payments, including all compensation paid by CBGB to the Hayes Defendants at any time after their breach of fiduciary duty, whether or not as a result of such breach, pursuant to the faithless servant doctrine.

### Thirteenth Claim for Relief
### Alternative Claim for Aiding and Abetting Breach of Fiduciary Duty
### (CBGB Parties against SWP, Weissman and Douglas)

354.    CBGB repeats and realleges each and every part of every other paragraph set forth above as if they were fully set forth herein.

355.    To the extent Hayes and/or Productions NYC breached their fiduciary duties to CBGB, then SWP, Weissman, and Douglas aided and abetted them in breaching such duties.

72

356.    On information and belief, each of SWP, Weissman and Douglas had knowledge of Productions NYC's and Hayes' breaches of fiduciary duties against CBGB.  The information supporting CBGB's belief that they had such knowledge is set forth above, including but not limited to the circumstances set forth at paragraphs 224 to 234.

357.    Each of SWP, Weissman and Douglas provided substantial assistance in Productions NYC and Hayes breaching their fiduciary duties to CBGB, in the manner set forth above, including without limitation, as summarized at paragraph 291.

358.    In addition to and/or in the alternative to the alternative claim for breach of fiduciary duty (Tenth Claim for Relief, above), SWP, Weissman and Douglas are joint and severally liable to CBGB for aiding and abetting breach of fiduciary duty against CBGB.

359.    Accordingly, SWP, Weissman and Douglas are liable to CBGB for compensatory damages in an amount to be determined at trial but no less than $550,000, and punitive damages in an amount to be determined at trial.

### Fourteenth Claim for Relief
### Alternative Claim for Breach of Contract
### (CBGB Festival against SWP)

360.    CBGB Festival repeats and realleges each and every part of every paragraph set forth above as if they were fully set forth herein.

361.    To the extent CBGB Festival is found to have entered into a valid agreement with SWP to produce the 2012 and 2013 Times Square Concerts, including the Proposal Agreement, CBGB Festival performed all of its obligations under any agreement with SWP.

362.    To the extent the Proposal Agreement was binding on CBGB Festival it provided the particular amounts that SWP could charge in connection with the 2013 Times Square Concert.

73

363.    In breach of those provisions, SWP charged higher amounts to CBGB Festival than were due under the Proposal Agreement or that were not due at all.  These included (i) at least $550,000 in the numerous inflated amounts charged to CBGB, for which the excess payments were diverted to Hayes through Productions NYC; and, separately, (ii) inflated fees for SWP's services that, on information and belief, were charged and retained by SWP for its own benefit.

364.    CBGB Festival was damaged by SWP charging inflated amounts in breach of the parties' agreement.

365.    In addition, in connection with the 2013 Times Square Concert, SWP promised to provide services that, at a minimum, were performed to "current professional standards" of quality.

366.    SWP breached its agreement with CBGB Festival when it failed to perform at professional standards of quality, among other ways, by:

   a.    Providing failing audio systems;

   b.    Providing non-functional lighting rigs;

   c.    Neglecting to build three raised side-stages equipped with public address and sound system, monitors, electrical outlets, backdrops and a sound engineer;

   d.    Providing unusable video footage and using inferior, antiquated camera equipment; and

   e.    Failing or refusing to provide event footage.

367.    As a result of SWP's workmanship deficiencies, CBGB Festival suffered damages, including the reduced value of SWP's services, costs incurred by CBGB Festival to remedy SWP's failures and lost profits.

74

368.    Accordingly, SWP is liable to CBGB Festival for breach of contract, and CBGB Festival is entitled to recover compensatory damages in an amount to be determined at trial, and other appropriate relief.

### Fifteenth Claim for Relief
### Tortious Interference with Prospective Business Opportunity
### (CBGB Festival against SWP)

369.    CBGB Festival repeats and realleges each and every part of every paragraph set forth above as if they were fully set forth herein.

370.    CBGB Festival had a business relationship and specific business opportunity with the City of New York to hold a concert on City-controlled property in and around the Times Square area on October 11, 2014, including a pending application for a special event permit that the City was willing to grant.

371.    SWP had actual knowledge of CBGB Festival's business opportunity to hold the Times Square Concert on October 11, 2014.

372.    SWP induced the City to deny CBGB Festival's permit application, and thereby intentionally interfered with CBGB Festival's business opportunity to hold the event on that date.

373.    In so doing, SWP engaged in conduct that was improper, illegal, tortious, and either amounted to a crime and/or was substantially culpable.  Among other reasons, (i) SWP maintained its special event application on file with a City agency, describing an all-day multi-block music event, even though it had no such event to produce; (ii) SWP deliberately declined to amend its statements to the City regarding the scope, timing and location of an event to be produced by SWP on October 11, which uncorrected statements SWP knew to be inaccurate, false and misleading; (iii) in support of its refusal to withdraw its application for a special event permit that SWP knew it could not use, SWP cited rights under a "contract" that SWP knew did not exist and was not enforceable and (vi) SWP misrepresented that it would not withdraw its

75

application when, on information and belief, SWP knew it would not be able to follow through

with its own application and SWP intended the City and CBGB Festival to rely on its false and

misleading statements.

374.    SWP interfered with CBGB Festival's October 11 business opportunity with the

City solely out of malice.  Without limitation, several aspects of SWP's conduct make clear that

it was motivated solely by a desire to injure CBGB Festival: (i) SWP could not produce an event

on October 11 with CBGB Festival; (ii) SWP did not stand to enjoy any financial benefit by

blocking *both* itself and CBGB Festival from obtaining a permit for that date; (iii) SWP had no

contract to produce the 2014 Times Square Concert, and SWP knew that CBGB Festival was

free to work with a different vendor; and (iv) SWP revealed its malicious intent when Weissman

later acknowledged his own desire to impose "carnage and pain" on CBGB Festival, and when

SWP, without any conceivable benefit to itself, filed an ill-fated TRO application to shut down

the Times Square Concert on a few days' notice.

375.    But for SWP's interference, the City would have granted CBGB Festival its

requested permit, along with the business opportunity to hold the 2014 Times Square Concert on

the planned and preferred date of October 11.

376.    SWP's interference injured and destroyed CBGB Festival's business opportunity

with the City to hold the 2014 Times Square Concert on the planned date of October 11, around

which significant preparations had already been made.  CBGB Festival suffered significant

losses in the form of loss of credibility with sponsors, artists or other festival participants,

additional costs and expenses, loss of good will, loss of value in the 2014 CBGB Festival and

other damages.

377.    Accordingly, SWP is liable to CBGB Festival for tortious interference with a prospective business opportunity, and CBGB Festival is entitled to recover compensatory damages in an amount to be determined at trial, but no less than $200,000, as well as punitive damages and other appropriate relief.

### Sixteenth Claim For Relief
**Breach of Contract**
**(CBGB Parties against Productions NYC & Hayes)**

378.    CBGB repeats and realleges each and every part of every paragraph set forth above as if they were fully set forth herein.

379.    Bowery entered into a valid agreement with Hayes, or in the alternative, the Hayes Defendants, including by retaining Hayes, or in the alternative the Hayes Defendants, as an independent contractor or contractors to promote the CBGB brand in exchange for a monthly payment, including to support the efforts of CBGB Festival.

380.    Bowery performed all of its obligations under its agreement with the Hayes Defendants.

381.    The Hayes Defendants breached their contractual obligations, including by

a.    Failing to keep CBGB and the Board timely and accurately informed regarding the Hayes Defendants' dealings with SWP in connection with the CBGB Music and Film Festival and Times Square Concerts, despite CBGB's express admonishments;

b.    Failing to inform CBGB and the Board that SWP had signed the 2012 Proposal Agreement and failing to inform CBGB and the Board that SWP was charging fees to CBGB Festival over and above what SWP had accepted in the Proposal Agreement;

c.    Failing to inform CBGB and the Board that SWP had filed a permit application in SWP's name for an event on October 11, 2014;

d.    Failing to inform CBGB and the Board SWP was making adverse claims against CBGB for the 2014 Times Square Concert; and

e.      Engaging in side deals with SWP to receive unauthorized additional compensation in connection with the Times Square Concert at CBGB's expense.

382.    The Hayes Defendants' breaches injured CBGB by causing CBGB to incur additional costs and by depriving CBGB of the opportunity to mitigate or avoid any dispute with SWP.

383.    Accordingly, the Hayes Defendants are liable to CBGB for breach of contract and CBGB is entitled to recover compensatory damages in an amount to be proved at trial and other appropriate relief.

**Seventeenth Claim for Relief**
**Common Law Indemnification and Contribution**
**(CBGB Parties against Productions NYC & Hayes)**

384.    CBGB repeats and realleges each and every part of every paragraph set forth above as if they were fully set forth herein.

385.    CBGB denies any and all liability to SWP, but, as an alternative claim for relief, if CBGB is found to be liable to SWP, such liability arose entirely without the fault of the CBGB Parties.

386.    The Hayes Defendants were charged with responsibility for communicating with potential vendors, such as SWP, regarding the Times Square Concert, and had a duty to timely and accurately inform CBGB regarding these communications.

387.    The Hayes Defendants did not properly carry out their responsibilities for communicating with potential vendors, including SWP, regarding the Times Square Concert, and did not properly carry out their duty to timely and accurately inform CBGB regarding these communications.

388.    If CBGB is found to be liable to SWP, it is due entirely to the representations, omissions or conduct of the Hayes Defendants, including without limitation due to any conduct

78

by the Hayes Defendants that is the basis for SWP's claims against CBGB, and due to the Hayes

Defendants' failure to keep CBGB timely and accurately informed regarding its dealings with

SWP.

389.    CBGB has been damaged in an amount equal to any legal fees, costs, or expenses

they have incurred in defending the Amended Complaint and will continue to be damaged in an

amount equal to any legal fees, costs, or expenses incurred in continuing to defend this lawsuit

will be further damaged if CBGB is requested to pay any amount to SWP as a result of this

lawsuit.

390.    Accordingly, CBGB is entitled to indemnification by the Hayes Defendants,

including for any losses relating to any legal fees, costs, expenses, settlements, or judgments in

this action.

391.    Furthermore, if CBGB is found to be liable to SWP, such liability arose entirely

because the Hayes Defendants breached a duty owed either to CBGB or to SWP.

392.    In the event SWP is found entitled to recover any damages against CBGB, such

damages were caused or augmented by the breaches by the Hayes Defendants of their duties to

SWP and/or their duties to CBGB.

393.    As a result, the Hayes Defendants are liable to CBGB for contribution toward any

judgment in favor of SWP to the extent subject to contribution under CPLR § 1401.

394.    Further, CBGB is entitled to contribution from the Hayes Defendants for any

settlements or judgments in this action.

## DEMAND FOR ANSWER TO CROSS-CLAIM AND THIRD-PARTY CLAIM

395.    CBGB hereby demands that Cross-Claim Defendant Productions NYC and Third-

Party Defendants Weissman, Hayes and Douglas to serve answers to the above Cross-Claims and

Third-Party Claims no later than 20 days after service of this Second Amended Answer,

79

Amended Counterclaims, Amended Cross-Claims and Amended Third-Party Complaint, and any

summons, subject to any modification by court order.

## **PRAYER FOR RELIEF**

WHEREFORE, the CBGB Parties pray for judgment in its favor as follows:

1.      Dismissal of SWP's Amended Complaint with prejudice;

2.      Treble damages pursuant to 18 U.S.C. § 1964 in favor of CBGB against SWP,

Productions NYC, Weissman, Hayes and Douglas in an amount to be determined at trial but no

less than $1,650,000;

3.      Compensatory damages in favor of CBGB against SWP, Productions NYC,

Weissman, Hayes and Douglas in an amount to be determined at trial but no less than $550,000;

4.      Punitive damages against SWP, Productions NYC, Weissman, Hayes and

Douglas in an amount to be determined at trial;

5.      Indemnification against Productions NYC and Hayes for the CBGB Parties' legal

fees, costs, or expenses incurred to defend this action, and for the CBGB Parties' payment of any

settlements or judgments in this action;

6.      Contribution against Productions NYC and Hayes toward the CBGB Parties'

payment of any settlements or judgments in this action;

7.      Disgorgement, restitution and/or replevin against SWP, Productions NYC and

Hayes, including without limitation against Productions NYC and Hayes pursuant to the faithless

servant doctrine, in an amount to be determined at trial;

8.      An award of costs, disbursements and attorneys' fees against SWP, Productions

NYC, Weissman, Hayes and Douglas, including pursuant to 18 U.S.C. § 1964;

9.      Pre- and post-judgment interest as permitted by law; and

10.     For such other and further relief as the Court deems just and proper.

Dated: May 3, 2016
       New York, New York

                              MANATT, PHELPS & PHILLIPS, LLP


                              By:   _/s/  Kimo S. Peluso_____
                                    Kimo S. Peluso
                                    Benjamin J. Wolfert

                              7 Times Square
                              New York, New York 10036
                              (212) 790-4500

                              *Attorneys for Defendants, Counterclaimants,
                              Cross-Claim Plaintiffs and Third-Party
                              Plaintiffs CBGB Festival, LLC and 315
                              Bowery Holdings, LLC*

FILED: NEW YORK COUNTY CLERK 05/03/2016 05:05 PM

NYSCEF DOC. NO. 556

INDEX NO. 652990/2014

RECEIVED NYSCEF: 05/03/2016

Case 16-00186-ref    Doc 1-1    Filed 06/06/16    Entered 06/06/16 14:02:00    Desc
Exhibit A    Page 87 of 149

# EXHIBIT 1



# Proposal                                6/21/12

## Scope of Work:

SW Productions, Inc. (SWP) ("producer") will procure and produce for CBGB Festival LLC.
(CBGB) ("client") for Time Square Music Festival ("event") to be held in Times Square New
York, NY on July 7th, 2012.

### Plan of Action:
- File the following necessary permit applications with the requisite government & municipal agencies and
  organizations including, but not limited to; divisions of the NYC Mayor's Office, Park's Department, TS
  Alliance, FDNY and any other requisite government agency.
- Meet with NYC Mayor's Office of Citywide Event Coordination and Management for a viability assessment
  and to enlist their services with any other city agency as required.
- Procure and produce the event

### City Guidelines and Outline for the Event
- The first event to be held July 7th, 2012
- All cross streets are to remain open.
- TKTS line will be place on Father's Duffy Square
- Nothing on Father Duffy Square and Red steps stay open to the public at all times.
- Musical performance no longer than 4 hours start to finish. Music must be played consecutively with sound
  & video allowed to play a half hour before. Music is scheduled form 12-2pm and 4-6pm.
- Show must end by 6pm.
- No amplified sound between the hours of 2-4pm.
- Activation for event/sponsors can start an hour before and continue an hour after the musical component.
- Sound: event will have a sound limit of 90 decibels at all times. No amplified sound between the hours of 2-
  4pm. Sound will be controlled by SWP not CBGB staff or the band.
- Load in to begin on the evening of July 6th.
- CBGB cannot represent that they are in a "partnership" with the city for the Times Square multistage music
  festival. The relationship for the Times Square multistage music festival with the city belongs solely to SWP.
- All talent to be vetted with the city
- Talent must be diverse. No specific demographic and must appeal to a large diverse audience.
- You can have alcohol sponsors but NO ALCOHOL permitted on city pedestrian/park areas.
- Can have "blocks" sponsored
- Any food or beverage done by sponsors are still determined by the mayor's office
- Any sponsor who plans to make sales onsite must go through NYC vetting process. Example: Nike wants to
  sell shoes. Sponsor must pay the permitting fees to do so. All Times Square permits will be handled through
  SWP.
- All sponsor set ups/displays must be vetted by SWP within 72 hours of submission by CBGB. SWP will
  make all good faith efforts to approve sponsor displays. Reasonable approvals will not be withheld. All
  Times Square permits must come through SWP. i.e. make sure infrastructures over 10 feet tall will go
  through the regular SWP DOB permitting approval process.
- SWP to provide infrastructure comments for corporate activation. We will provide power and water. Each
  block will have 100 K W generators on each side of the block. If a sponsor requires additional power
  requirements outside of the allotment, sponsor will pay the incremental amounts. This will vary sponsor-to-
  sponsor and depending on what is being asked for.
  - Examples: If sponsor power needs exceed the allotment and the generator needs to be upgraded to
    a 200 K W generator; sponsor will pay the difference.

# **Proposal** (con't)

### Deal Terms

This is a 5-year contract if all options are exercised by CBGB Festival LLC. This pays SWP up to $500,000 in options & production management payments PLUS an estimated $540,000 in production service fees over the next 4 years if all options are exercised by CBGB Festival LLC. [$1,040,000 estimate for years 1-5 based on 2012 size event and no changes]

### 2012

$595,000.00 firm cap turnkey production for 2 stages of festival presentation for national tour level live bands-outlined services attached (Exhibit 1) for site drawing attached (Exhibit 2). The fee is broken down into a $545,000 production budget and a $50,000.00 SWP production management fee. Price per block is $10,000.00.

### 2013

CBGB Confirmed

Actual assessment

Actual production costs & I have the ability to substitute other established vendors (Defined Below in "Additional Deal Points" section)

CBGB will pay: SWP $100,000 for production management. Price per block is $20,000

CBGB Agrees to pay a 10% ($10,000) non-refundable deposit due at time of renewal.

CBGB will also pay 15% service fee on non-permit production actuals (Defined Below in "Additional Deal Points" section)

### 2014

CBGB agrees to pay SWP $150,000 option guarantee & production if we renew within 90 days of 2013 concert. Price per block is $30,000.

CBGB Agrees to pay a 10% ($15,000) non-refundable deposit due at time of renewal.

Actual assessment

Actual production costs & I have the ability to substitute other established vendors (Defined Below in "Additional Deal Points" section)

CBGB will also pay 15% service fee on non-permit production actuals (Defined Below in "Additional Deal Points" section)

### 2015

CBGB agrees to pay SWP $200,000 option guarantee & production if we renew within 90 days of 2014 concert. Price per block is $40,000

CBGB Agrees to pay a 10% ($20,000) non-refundable deposit due at time of renewal.

Actual assessment

Actual production costs & I have the ability to substitute other established vendors (Defined Below in "Additional Deal Points" section)

CBGB will also pay 15% service fee on non-permit production actuals (Defined Below in "Additional Deal Points" section)

### 2016

CBGB agrees to pay SWP $200,000 option guarantee & production if we renew within 90 days of 2015 concert. Price per block is $40,000.00

CBGB Agrees to pay a 10% ($20,000) non-refundable deposit due at time of renewal.

Actual assessment

Actual production costs & I have the ability to substitute other established vendors (Defined Below in "Additional Deal Points" section)

CBGB will also pay 15% service fee on non-permit production actuals (Defined Below in "Additional Deal Points" section)

nitial:



# **Proposal** (con't)

**Additional Deal Points**

- No identical or near identical single service [ie: hourly rate of a position or rental of an identical or near identical type of equipment] to increase more than 10% per annum. SWP will make all good faith efforts to transform this into a 10-hour event with 6 hours of music plus 4 hours of non-live music entertainment.
- If the number of blocks in years 2-5 decrease from the 2012 (exhibit 2) site plan, the options and production fee paid to SWP will accurately decrease by the price per block specified above in that year to reflect the smaller size event.
- Additionally, if the number of blocks increases in years 2-5 from the 2012 (exhibit 2) site plan, the options and production fees paid to SWP will accurately increase by the price per block specified above in that year to reflect the larger size event.
- Budget will be a net documented budget
- All items substituted or not will be contracted through SWP
- Budget will be maintained by SWP
- 15% service fee on non permit production actuals to include SWP contracted and substituted budget items
- Production items added after the approved budget will need sign off of both SWP and CBGB prior to spend. Additional items will also be subject to the SWP 15% service fee
- Once budget is approved, SWP reserves the right to move monies between line items as necessary to keep within original approved budget.
- Additional sponsor requirements outside of approved outlined expenses will be charged back solely to the sponsor with a 15% service fee on top
- Budgets and option guarantees for years 2-4 for com
- CBGB will make all conscious efforts to adhere to city regulations regarding press and marketing.
- City guidelines may change from year to year and CBGB must adhere to all city guidelines. If there is a breach in such guidelines, CBGB understands that the city can cancel the event at anytime. If such cancellation occurs, any fees paid to SWP up to the cancellation date will be non refundable.
- CBGB understands that SW Production, Inc. is the owner of the permits for the Times Square Festival
- It is understood that CBGB need to announce phase 1 of the press release plan given to the city on June 20, 2012 (exhibit 3) by Tuesday June 26, 2012.

## Terms:

Terms are as follows:
- $50,00.00 due within 3 business days from the execution of this agreement.
- $545,000.00 due by July 2, 2012.
- Additional year's Payment terms will be outlined in each years renewal agreement as outlined above

Permits will remain with SWP staff until final payment is made and will be held by SWP staff throughout the event.

## Validity:

This proposal is only valid if the attached event announcements are allowed to happen in the times noted on the schedule.



nitial:



3

# **Proposal** (con't)

### INSRUANCE

CBGB Festival LLC. shall produce evidence of Commercial General Liability insurance with limits of not less than _____ per occurrence and in the aggregate and shall include 'SWP' as an Additional Insured. As well, evidence of Auto Liability (owned, non-owned and/or hired) should be provided. These liability limits may be obtained with the use of an "Umbrella" policy. *We suggest $1m should be the very minimum and higher limits should be request depending on the scope of operations of the vendor/subcontractor. The ideal would be for subcontractors to carry equal liability limits to SWPs or higher).*

In addition, evidence of Workers Compensation including Employers Liability with limits of not less than $1,000,000 each for coverage A & B shall be provided to 'SWP' *(It is up to your client whether they will accept limits of $500,000 as some WC policies provide this limit.*

If you would like to request that Subcontractor/Vendor also provide a copy of insurance certificates to us, please feel free to provide my contact details as we will be happy to review any certificates you receive to make sure your client is being appropriately listed. Have certificates either be faxed or emailed so we can review them as soon as they are issued.

Michael Mauriello/Carol Thornhill
Robertson Taylor (NA) Inc.
70 West 40th Street, Mezz. Fl.
New York, NY 10001
(212) 279-4519 phone
(212) 279-4536 fax
Michael.mauriello@rtib.ne

Disclaimer:

Event permitting is an inexact science and a substantial portion is inherently subjective. SWP assures that all worked performed by SWP and it's hired professionals will be done to current professional standards and that SWP will use it's influence, as best possible, to achieve the desired result within the parameters described above, as we have in hundreds of other events. SWP cannot guarantee that a correctly produced and conforming application within the governing rules and regulations will be approved. Permits and all fees and costs associated with them are issued and determined by the respective municipality or agency, not by SWP. Although SWP has the ability to vet potential permitting scenarios, pricing estimates are exactly that, estimates. Final pricing is at their sole discretion and can be changed at their discretion. Compliance with all rules and regulations set forth by any governing body is the sole responsibility of the client.

The Client grants SW Productions, Inc. and it's assignees and successors, the right to take photographic images of the event process before, during, and after, and it's contents or any part of it or them ("the images"), and copy, publish, display and use the images in all forms of media including composite or modified representations throughout the world for the full term of copyright. The client confirms that the images may be used without inspection or further consent or approval by the client of the event or the use to which it may be applied and without the Client inspecting any text that is used in conjunction with the images. The Client represents that he/she is the authorized representative of the event to be photographed and it's contents and has full right and authority to solely enter into this agreement.

Initial:



# **Proposal** (con't)

CBGB Festival LLC.
(Sign and Date)

Printed Name: Tim Hayes

Title: Partner

Company: CBGB Festival LLC

Company Address: 245 Park Ave    150 W 51st St

Address (Con't): NYC NY 10020

Phone: 646-455-0400

Fax:

Email: TimHayes@CBGB.com

SW Productions, Inc.
(Sign and Date)

Printed Name: STUART WEISSMAN

Title: PRESIDENT

Company: SW PRODUCTIONS INC

Company Address: 1500 BROADWAY SUITE 801

Address (Con't): New York NY 10036

Phone: 212-993-6444

Fax: 917-591-6666

Email: Stuart@swpnyc.com



initial:



5

Times Square Music Festival
CBGB Press Release Timeline
(Exhibit 3)

Prepared By:
Stuart Weissman, President SW Productions, Inc
Tim Hayes, President CBGB

Prepared For:
Christie Huus, Assistant Executive Director
        City Wide Event Coordination & Management
Emil Lissauer, Deputy Commissioner, SAPO

Day of Event
7/7/12

NY Times Interview scheduled for Thursday 6/21/12
Points to be mentioned:
- CBGB Festival scheduled to have multistage event in Times Square.
- The Times Square event is one part of the larger festival set to take place at numerous venues around New York City from 7/5/12 to 7/8/12. Here is a list of some of the talent that will be participating at various venues: Clap Your Hands, The Hold Steady, Superchunk, CBGB veteran Duff McKagen's Loaded, Zulu Wave, Upper West, Rosanne Cash.
- The CBGB Festival will be held Saturday July 7th
- MultipleStages
- The CBGB Festival will also include food (MarkyRamone's Meatballs0, drinks, and booths from music shops. Harley Davidson and music themed activations for people of all ages.
- CBGB fans span generations and this first annual event will bring fans and family together of all ages.

It is presently unclear when the Times plans to run this interview, but seeing as this press release has yet to be approved, the sponsor realizes that if this is released without the consent of the City of New York, the sponsor is putting their application for the festival in jeopardy, and the event may be denied.

Monday 6/25/12 Press Release
- CBGB Festival scheduled to have multistage event in Times Square.
- The Times Square event is one part of the larger festival set to take place at numerous venues around New York City from 7/5/12 to 7/8/12. Here is a list of some of the talent that will be participating at various venues: Clap Your Hands, The Hold Steady, Superchunk, CBGB veteran Duff McKagen's Loaded, Zulu Wave, Upper West, Rosanne Cash.
- The CBGB Festival will be held Saturday July 7th

Initial _____

Times Square Music Festival
CBGB Press Release Timeline
(Exhibit 3)

- MultipleStages
- The CBGB Festival will also include food (MarkyRamone's Meatballs0, drinks, and booths from music shops.  Harley Davidson and music themed activations for people of all ages.
- CBGB fans span generations and this first annual event will bring fans and family together of all ages.

Thursday 7/5/12 Press Release (to be published on 7/6/12)
- Everything that was already said above
- Plus, specific line up for Times Square.  Full line up of talent without performance times.

Initial

# EXHIBIT 2

**From:**          Tim Hayes / CBGB <timhayes@cbgb.com>
**Sent:**          Wednesday, January 23, 2013 5:02 PM
**To:**            mlsmith@aresmgmt.com
**Subject:**       Tim Hayes NYC: 212-889-2807

Mike,

Here is our home number at the apartment.  212-889-2807

I want you to know that I really want to deliver this for you & Mike.  I had a nice production company that I wholly owned for six years.  Productions New York produced major projects for many top tier broadcast properties that include all of the major network.  I walked away from it to go "all in" with CBGB.  I am happy with that decision every day.  I only share this because I am not sure what you know about the team's day-to-day obligations.

I think that I have delivered a few things of note including the big deals with the Mayor's Office, Amnesty and many of other tangible successes from the past festival.  The Mayor's Office approved us because I showed them 13 years (7 at ABC + 6 with Productions NY) that I know how to run productions on a major scale.  I was able to do it for that long because I was able to make it profitable.

I think that we just need a clearer structure.

Thank you again,

Tim Hayes

1

CBGB-0016563

FILED: NEW YORK COUNTY CLERK 05/03/2016 05:05 PM
INDEX NO. 652990/2014
NYSCEF DOC. NO. 136
RECEIVED NYSCEF: 05/03/2016

Case 16-00186-ref    Doc 1-1    Filed 06/06/16    Entered 06/06/16 14:02:00    Desc
Exhibit A    Page 97 of 149

# EXHIBIT 3

| **From:** | Tim Hayes <timhayes@cbgb.com> |
|---|---|
| **Sent:** | Monday, August 12, 2013 12:13 PM |
| **To:** | Michael Smith <mlsmith@aresmgmt.com> |
| **Cc:** | joed@cbgb.com |
| **Subject:** | Re: Funds to the city |

$1.3mm funds for city production to:

Please make check payable to: SW Productions, INC.
Wire Instructions: Citibank, 435 main street, Armonk NY 10504, tel: 914 273 2207
ABA: 021000089 Account # ██████████
Fed ID: ██████    Redacted
        Redacted

On Mon, Aug 12, 2013 at 9:25 AM, Tim Hayes <timhayes@cbgb.com> wrote:
  ok


On Mon, Aug 12, 2013 at 8:55 AM, Michael Smith <mlsmith@aresmgmt.com> wrote:
  Tim -
  Will need the wire instructions for the city.
  Please send. Thanks
  Michael L. Smith
  Ares Management LLC
  (212) 750-4914
  This message, including any attachments, may include privileged, confidential and/or inside information.
  Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly
  prohibited unless authorized by the sender and may be unlawful.
  If you are not the intended recipient, please notify the sender by replying to this message and then delete it
  from your system.




  --
  Tim Hayes

CONFIDENTIAL                                                      ARES0000624

FILED: NEW YORK COUNTY CLERK 05/03/2016 05:05 PM

NYSCEF DOC. NO. 155

INDEX NO. 652990/2014

RECEIVED NYSCEF: 05/03/2016

Case 16-00186-ref    Doc 1-1    Filed 06/06/16    Entered 06/06/16 14:02:00    Desc:
Exhibit A    Page 99 of 149

# EXHIBIT 4

| From: | Tim Hayes <timhayes@cbgb.com> |
| Sent: | Monday, August 12, 2013 3:24 PM |
| To: | Michael Smith <mlsmith@aresmgmt.com> |
| Subject: | Re: Funds to the city |

Hi Mike, I just spent the last 90 minutes with Evan Korn from the Mayors office. It will make our path forward much more favorable if the funds get wired today. Is that still possible? They did not seem to go through yet

Thanks

Sent from my iPhone

On Aug 12, 2013, at 8:55 AM, Michael Smith <mlsmith@aresmgmt.com> wrote:

> Tim -
> Will need the wire instructions for the city.
> Please send. Thanks
> Michael L. Smith
> Ares Management LLC
> (212) 750-4914
> This message, including any attachments, may include privileged, confidential and/or inside information.
> Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited unless authorized by the sender and may be unlawful.
> If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system.
>
>

ARES0000632

INDEX NO. 652990/2014

NYSCEF DOC. NO. 266

RECEIVED NYSCEF: 05/03/2016

# EXHIBIT 5



SWP
• NYC •

SW Productions Inc.
Operating Account
1560 Broadway Suite 901
New York, NY 10036
212-993-6444

citibank®
CITIBANK, N.A. (RR #454
8150 Broadway
NEW YORK, NY
1-8-210

PAY TO THE
ORDER OF _____ Production n/y

6-24

8/10/13

$ 30.00

NOT NEGOTIABLE

DOLLARS

AUTHORIZED SIGNATURE

MEMO

⑈000064 24⑈

Redacted

SWP008094

# EXHIBIT 6

Gmail

Tim Hayes <timhayes@cbgb.com>

---

## Re: hi there

1 message

---

**Jennifer Douglas** <jennyd@swpnyc.com>                                     Fri, Oct 11, 2013 at 1:07 PM
To: Tim Hayes <timhayes@cbgb.com>

I never speak numbers with anyone else

Jennifer Douglas
Stuart Weissman Productions
1560 Broadway, Suite 901
New York, NY 10036
Jennyd@swpnyc.com
O: 646-205-9811
M: 732-300-7227
SWPNYC.COM

**Please note new Office Phone Number


On Oct 11, 2013, at 1:03 PM, Tim Hayes <timhayes@cbgb.com> wrote:

I am working on it right now - only discuss budget & money with me. I will putting in the request for the wire in about 90 minutes after I go through the numbers again.

to avoid confusion, only talk budget & money with me.

Tim Hayes
CBGB & CBGB Festival

(917) 804-0058


On Fri, Oct 11, 2013 at 12:53 PM, Jennifer Douglas <jennyd@swpnyc.com> wrote:
    Any word on monies being wired?

Jennifer Douglas
Stuart Weissman Productions
1560 Broadway, Suite 901
New York, NY 10036
Jennyd@swpnyc.com
O: 646-205-9811
M: 732-300-7227
SWPNYC.COM

**Please note new Office Phone Number

CBGB-0000954

# EXHIBIT 7

| **From:** | Tim Hayes <timhayes@cbgb.com> |
| **Sent:** | Friday, October 11, 2013 2:48 PM |
| **To:** | Michael Smith <mlsmith@aresmgmt.com>; Melissa Roman <melissa@cbgb.com> |
| **Subject:** | Times Square Wire for today |
| **Attach:** | - Times Square Show Additions.xlsx |

The final number for Times Square is $531,275.  These are additions above and beyond the core production.
This needs to be wired today to SWP.  Routing info to follow.


Tim Hayes
CBGB & CBGB Festival

(917) 804-0058

CONFIDENTIAL

Exception:    Produced In Native Format

Filename:    - Times Square Show Additions.xlsx

Folder:    Ares Production 6-10-15\Email\

ARES0000812

| TIMES SQUARE ADDED ITEMS | AMOUNT |
|---|---|
| SIGNAGE TOWERS STRUCTURES | $24,565.00 |
| BAND BACKLINE | $15,610.00 |
| DRESSING ROOM MOTORHOMES | $9,700.00 |
| DSNY SANITATION FOR FOOD SERVICE | $30,000.00 |
| VIP EXPERIENCE | $129,440.00 |
| ADDITIONAL STAGING COSTS- PRESS RISERS | $2,500.00 |
| GROUND TRANSPORTATION | $620.00 |
| ARTIST PARKING | $1,500.00 |
| VENDOR & PRODUCTION TENTS | $67,470.00 |
| ARTIST TRUCKING | $2,230.00 |
| TALENT WRANGLERS | $2,500.00 |
| SIGNATURE WALLS | $480.00 |
| MTV PALLADIA 15 CAMERA PRODUCTION | $94,500.00 |
| BANNERS, BACKDROPS & SIGNS | $77,110.00 |
| MID-BLOCK STAGES, PA & SOUND CREWS | $3,450.00 |
| MMJ ADDITIONAL LIGHTS | $11,200.00 |
| ADDED SECURITY | $4,200.00 |
| COMPOUND COORDINATORS | $1,500.00 |
| POWER DROPS, GENERATORS & ELECTRICANS FOR TENTS | $48,100.00 |
| DOB PERMIT MUNICPLE CONSULTANTS | $200.00 |
| ADDITIONAL CONE-HEADS | $1,500.00 |
| EXPENDIBLES | $2,500.00 |
| TOWELS | $400.00 |
| SUBTOTAL ADD-ONS | $531,275.00 |
| **TOTAL** | $531,275.00 |

FILED: NEW YORK COUNTY CLERK 05/03/2016 05:05 PM

NYSCEF DOC. NO. 169

INDEX NO. 652990/2014

RECEIVED NYSCEF: 05/03/2016

Case 16-00186-ref    Doc 1-1    Filed 06/06/16    Entered 06/06/16 14:02:00    Desc
Exhibit A    Page 110 of 149

# EXHIBIT 8

| **From:** | Tim Hayes <timhayes@cbgb.com> |
|---|---|
| **Sent:** | Monday, October 14, 2013 6:59 PM |
| **To:** | Michael Smith <mlsmith@aresmgmt.com> |
| **Subject:** | Bookkeeping |

Mike,

I would like to have Melissa cut a salary check for me tomorrow. I am focused on CBGB 24/7 and I depend on it now to keep the family going since leaving productions ny.

Please let me know if you would like something different.

Thanks again

Tim Hayes

Sent from my iPhone

ARES0000825

FILED: NEW YORK COUNTY CLERK 05/03/2016 05:05 PM

NYSCEF DOC. NO. 264

INDEX NO. 652990/2014

RECEIVED NYSCEF: 05/03/2016

Case 16-00186-ref   Doc 1-1   Filed 06/06/16   Entered 06/06/16 14:02:00   Desc
Exhibit A    Page 112 of 149

# EXHIBIT 9

**From:**        Jennifer Douglas <jennyd@swpnyc.com>
**Sent:**        Friday, October 18, 2013 5:53 PM
**To:**          Stuart Weissman
**Subject:**     cbgb
**Attachments:** CBGB 2013 V6 Internal.xls


Jennifer Douglas
Stuart Weissman Productions
1560 Broadway, Suite 901
New York, NY 10036
Jennyd@swpnyc.com
O:  646-205-9811
M:  732-300-7227
SWPNYC.COM

**Please note new Office Phone Number

1

SWP004476

Filename:       CBGB 2013 V6 Internal.xls

Exception:      File Produced Natively

SWP004477

STUART WEISSMAN PRODUCTIONS

**TIMES SQ MUSIC AND ARTS FESTIVAL- CBGB**

**TIMES SQUARE PARTY**
**BROADWAY PEDESTRIANS PLAZA BET 46 AND 47 AND ALL OF BROADWAY UP TO 54st ST**
**PREPARED FOR CBGBs**
  **12-Oct-13**
**BUDGET OUTLINE VERSION 2013 V3**

| SECTION | CATEGORY | ESTIMATED 2013 | CorrectedESTIMATED 2013 | Need Approval | | Payments |
|---|---|---|---|---|---|---|
| | | | | | | $  100,000.00 |
| A | PRODUCTION STAFF | $ 54,700.00 | $ 54,700.00 | | | $  (47,500.00) |
| B | TALENT COSTS | $  - | $  - | | | $  100,000.00 |
| C | PRODUCTION SUPPLIES | $ 12,350.00 | $ 12,350.00 | | | $  (45,000.00) |
| D | CREATIVE | $ 11,000.00 | $ 11,000.00 | | | $ 1,300,000.00 |
| E | CREW | $ 76,950.00 | $ 76,950.00 | | | $ (250,000.00) |
| F | VIDEO AND SOUND | $ 98,000.00 | $ 98,000.00 | | | $ 1,157,500.00 |
| G | LIGHTING | $ 14,500.00 | $ 14,500.00 | | | |
| H | INFRASTRUCTURE | $ 84,400.00 | $ 84,400.00 | | | $  531,275.00 |
| I | CATERING (CREW) | $ 8,200.00 | $ 8,200.00 | | | $  (32,275.00) |
| J | VENUE | $ 307,500.00 | $ 532,500.00 | | $ 225,000.00 | $  (25,000.00) |
| K | **NON BUDGETED ITEMS** | **$95,105.00** | **$95,105.00** | **$0.00** | | **$ 1,631,500.00** |
| L | **ADDITIONAL BLOCKS (4)** AT $100K PER BLOC | **$400,800.00** | **$75,600.00** | | | |
| M | **ADD ONS** | | | | | |
| | **SUBTOTAL** | **$ 1,163,505.00** | **$ 1,063,305.00** | **$279,350.00** | | |
| | **5% CONTINGENCY** | **$ 58,175.25** | **$ 53,165.25** | **$ 13,967.50** | | |
| | **SWP FEE** | **$  -** | **$ 50,000.00** | | | |
| | **SWP FEE 15% production** | **$  -** | **$ 79,620.75** | **$ 41,902.50** | | |
| | **Additional $50k per block** | | **$ 150,000.00** | | | |
| | **GRAND TOTAL** | **$ 1,163,505.00** | **$ 1,396,091.00** | **$335,220.00** | **$ 1,731,311.00** | **Grand total** |
| | | | $ 279,620.75 | | $  573,811.00 | Variance |

| A | PRODUCTION STAFF | | AMOUNT | AMOUNT | |
|---|---|---|---|---|---|
| 1001 | PRODUCTION COORDINATOR | A Korus Line | $ 5,000.00 | $ 5,000.00 | |
| 1002 | PRODUCTION Coordinator Assistant | Grant Gardner | $ 1,200.00 | $ 1,200.00 | |
| 1003 | PRODUCTION MANAGER | | $  - | $  - | |
| 1003A | PRODUCTION MANAGER MAIN STAGE | Jay Weissman/ Run of show | $ 3,000.00 | $ 3,000.00 | |
| 1003B | PRODUCTION MANAGER 2ND STAGE | Jeff Young/ steven fissel | $ 3,000.00 | $ 3,000.00 | |
| 1004A | STAGE MANAGER SOUTH | Dan Jones | $ 1,000.00 | $ 1,000.00 | |

BUDGET V1

STUART WEISSMAN PRODUCTIONS

| | | | | | | |
|---|---|---|---|---|---|---|
| 1004B | STAGE MANAGER NORTH | Scott Bozak | $ | 1,000.00 | $ | 1,000.00 | |
| 1005A | TALENT WRANGLER SOUTH | Michelle Angelino | | | | | |
| 1005B | TALENT WRANGLER NORTH | Hillary Capps | | | | | |
| | TALENT COORDINATOR NORTH | Loam Disher | | | | | |
| | | | | | | |
| 1006 | ASST PRODUCTION MANAGER | Jason Scharf/ Chompage | $ | 1,500.00 | $ | 1,500.00 | |
| 1007 | ASST PRODUCTION MANAGER | Andrew Edell | $ | 1,500.00 | $ | 1,500.00 | |
| 1008 | NIGHT PRODUCTION  MANAGER | | $ | 1,500.00 | $ | 1,500.00 | |
| 1009 | VENDOR COORDINATOR | | $ | 2,500.00 | $ | 2,500.00 | |
| 1010 | COMPOUND COORDINATOR | | $ | 1,500.00 | $ | 1,500.00 | |
| 1011 | TALENT COORDINATOR | | $ | 1,500.00 | $ | 1,500.00 | |
| 1012 | RUNNERS AND PAS | Doug Baker | $ | 3,850.00 | $ | 3,850.00 | |
| 1012B | PAS | Dennis Marmon | | | | | |
| 1012C | PAS | Dennis Balingit | | | | | |
| 1012D | PAS | Berry Hatfield | | | | | |
| 1013 | PLUMBER | | $ | - | $ | - | |
| 1014 | STAGING SUPERVISOR | | $ | - | $ | - | |
| 1015 | SECURITY | Startwatch | $ | 15,000.00 | $ | 15,000.00 | |
| 1016 | ELECTRICIAN | A. GIOVANNETTI ELECTRIC | $ | 1,000.00 | $ | 1,000.00 | |
| 1017 | ARCHITECT | Andrew Formicella | $ | 6,250.00 | $ | 6,250.00 | |
| 1018 | DOB Permit Municple consultants | Municipal Building Consulants | $ | 500.00 | $ | 500.00 | |
| 1019 | CONE HEADS- R&L MANPOWER | jason romero | $ | 1,500.00 | $ | 1,500.00 | |
| 1020 | PRODUCTION- BUDGETING | Ina Jacobs | $ | 2,400.00 | $ | 2,400.00 | |
| 1021 | | | | | | | |
| 1022 | | | | | | | |
| 1023 | | | | | | | |
| 1024 | | | | | | | |
| | | | | | | |
| **1025** | **TOTAL PRODUCTION STAFF** | | **$** | **54,700.00** | **$** | **54,700.00** | |

BUDGET V1

STUART WEISSMAN PRODUCTIONS

STUART WEISSMAN PRODUCTIONS

| B | TALENT COSTS | | AMOUNT | AMOUNT | |
|---|---|---|---|---|---|
| 1026 | HEADLINER | TBD | $ - | $ - | |
| 1027 | SUPPORT ACTS | TBD | $ - | $ - | |
| 1027A | RIDER REQUIREMENTS | | $ - | $ - | |
| 1027B | DRESSING ROOM TRAILERS-FURNITURE | | | | |
| 1028 | BACKLINE | Below | $ - | $ - | |
| 1028A | RISERS | SIR | | | |
| 1029 | EMCEE | | $ - | $ - | |
| 1030 | TALENT TRAVEL AND HOTEL | | $ - | $ - | |
| **1031** | **TOTAL TALENT COSTS** | | **$ -** | **$ -** | |

| C | PRODUCTION SUPPLIES | | AMOUNT | AMOUNT | |
|---|---|---|---|---|---|
| 1032 | EXPENDABLES | SWP | $ 2,500.00 | $ 2,500.00 | |
| 1033 | INSURANCE | | $ - | $ - | |
| 1034 | LEGAL | | $ 1,500.00 | $ 1,500.00 | |
| 1035 | SHIPPING/FED EX/ MESSINGERS | | $ - | $ - | |
| 1036 | OFFICE SUPPLIES | | $ - | $ - | |
| 1037 | PARKING | | $ - | $ - | |
| 1038 | PASSES | ?? | $ 1,600.00 | $ 1,600.00 | |
| 1039 | PETTY CASH | ina | $ 2,500.00 | $ 2,500.00 | |
| 1040 | PRODUCTION OFFICES (SITE) | O'Brien | $ 2,400.00 | $ 2,400.00 | |
| 1040a | PRE PRODUCTION OFFICES (SITE) | | $ - | $ - | |
| 1040b | PREPRODUCTION OFFICE | | $ - | $ - | |
| 1041 | PRODUCTION VEHICLES | | $ 650.00 | $ 650.00 | |
| 1042 | TELEPHONES (VERI/ZON) | | $ - | $ - | |
| 1043 | TELEPHONES (AAA COMMUNICATIONS) | | $ - | $ - | |
| 1044 | INTERNET CONNECTIONS | | $ - | $ - | |
| 1045 | TRUCKING | | $ - | $ - | |
| 1046 | WALKIE TALKIES | AAA | $ 1,200.00 | $ 1,200.00 | |
| **1049** | **TOTAL PRODUCTION SUPPLIES** | | **$ 12,350.00** | **$ 12,350.00** | |

| D | CREATIVE | | AMOUNT | AMOUNT | |
|---|---|---|---|---|---|
| 1050 | SITE DESIGNER | Jeremy Thom | $ 7,500.00 | $ 7,500.00 | |
| 1050A | LAYOUT | | $ - | $ - | |
| 1051 | PRODUCTION DESIGNER | | $ - | $ - | |
| 1052 | SET DESIGNER | | $ - | $ - | |
| 1052A | SET MAIN STAGE | | $ - | $ - | |
| 1053 | FURNITURE AND TENT INTERIORS | SWP IKEA | $ 3,500.00 | $ 3,500.00 | |
| 1054 | ADDITIONAL SHOW SUPPORT | | $ - | $ - | |
| 1055 | HAIR AND MAKE UP | | $ - | $ - | |
| 1055A | HAIR AND MAKE UP ASSTS. | | $ - | $ - | |

BUDGET V1

STUART WEISSMAN PRODUCTIONS

| 1056 | WARDROBE/COSTUMES | | $ | - | $ | - | |
|------|-------------------|--|----|----|----|----|--|
| 1057 | HEAD COSTUMER | | $ | - | $ | - | |
| 1058 | DRESSERS | | $ | - | $ | - | |
| 1059 | SUBTOTAL CREATIVE | | $ | 11,000.00 | $ | 11,000.00 | |
| 1060 | SALES TAX at 8.65% | | $ | - | $ | - | |
| **1061** | **TOTAL CREATIVE** | | **$** | **11,000.00** | **$** | **11,000.00** | |

STUART WEISSMAN PRODUCTIONS

| E | CREW | | AMOUNT | AMOUNT | |
|---|---|---|---|---|---|
| 1064 | IATSE UNION LABOR | | $ - | $ - | |
| 1065 | LOAD IN | Ghostlight | $ 30,000.00 | $ 30,000.00 | |
| 1066 | SHOW | | $ 8,000.00 | $ 8,000.00 | |
| 1067 | LOAD OUT | | $ 15,000.00 | $ 15,000.00 | |
| 1068 | TEAMSTER UNION LABOR IN | | $ 3,500.00 | $ 3,500.00 | |
| 1069 | TEAMSTER UNION LABOR OUT | | $ 3,500.00 | $ 3,500.00 | |
| 1070 | CASUAL LABOR IN | South Shore | $ 6,500.00 | $ 6,500.00 | |
| 1071 | CASUAL LABOR SHOW | | $ 1,200.00 | $ 1,200.00 | |
| 1072 | CASUAL LABOR OUT | | $ 3,250.00 | $ 3,250.00 | |
| 1073 | ADDITIONAL LABOR | | $ - | $ - | |
| 1074 | PRE PRODUCTION- casual labor | R&L Manpower | $ 3,000.00 | $ 3,000.00 | |
| 1075 | POST PRODUCTION- casual labor | SWP | $ 3,000.00 | $ 3,000.00 | |
| 1074 | TOTAL CREW | | $ 76,950.00 | $ 76,950.00 | |

| F | VIDEO AND SOUND | | AMOUNT | AMOUNT | |
|---|---|---|---|---|---|
| 1075 | 6 CAMERA IMAG SHOOT (3X2) | BML Video | $ 25,000.00 | $ 25,000.00 | |
| 1075A | MASTER DIRECTOR | | | | |
| 1075B | MASTER SWITCHER | | | | |
| 1075C | PLASMA SCREENS | BML Video | $ 3,500.00 | $ 3,500.00 | |
| 1076 | SCREEN INTERFACE | | $ - | $ - | |
| 1077 | INTERACTIVITY PACKAGE | | $ - | $ - | |
| 1077A | DIGITAL BILLBOARD RENTALS | | $ - | $ - | |
| 1077B | VIDEO CONTENT CREATION | | $ - | $ - | |
| 1078 | VIDEO SCREEN SOUTH STAGE | BML Video | $ 18,500.00 | $ 18,500.00 | |
| 1078A | VIDEO SCREEN NORTH STAGE | BML Video | $ 18,500.00 | $ 18,500.00 | |
| 1078B | WIRELESS PACKAGE | BML Video | $ 2,500.00 | $ 2,500.00 | |
| 1079 | HOUSE PA SYSTEM SOUND DELAYS | RSA | $ 15,000.00 | $ 15,000.00 | |
| 1079A | PA SYSTEMS NORTH STAGE AND DELAYS | RSA | $ 15,000.00 | $ 15,000.00 | |
| | ENG HOST | | | | |
| 1082 | TOTAL EQUIPMENT | | $ 98,000.00 | $ 98,000.00 | |

| G | LIGHTING | | AMOUNT | AMOUNT | |
|---|---|---|---|---|---|
| 1085 | LIGHTING DESIGNER | | $ - | $ - | |
| 1086 | BOARD OPERATOR | | $ - | $ - | |
| 1087 | GAFFER | | $ - | $ - | |
| 1088 | VIP LIGHTING | | $ - | $ - | |
| 1089 | TENT LIGHTING | BML Blackbird | $ 2,500.00 | $ 2,500.00 | |
| 1090 | SHOW LIGHTING | BML Blackbird | $ 12,000.00 | $ 12,000.00 | |
| 1091 | TOTAL LIGHTING | | $ 14,500.00 | $ 14,500.00 | |

BUDGET V1

STUART WEISSMAN PRODUCTIONS

| H | INFRASTRUCTURE | | AMOUNT | AMOUNT | |
|---|---|---|---|---|---|
| 1093 | VENDOR HOTEL ROOMS | Ameritania | $ 4,000.00 | $ 4,000.00 | |
| 1094 | CRASH BARRICADE | BML | $ 2,500.00 | $ 2,500.00 | |
| 1095 | PLANS AND PLAN WORK (PRELIMINARY) | | $ - | $ - | |
| 1096 | RENDERINGS | | $ - | $ - | |
| 1097 | BATHROOM TRAILERS | | $ 4,500.00 | $ 4,500.00 | |
| 1097A | PORTOSANS | | $ 500.00 | $ 500.00 | |
| 1097B | SOUTH STAGE | THIS IS IT | $ 10,000.00 | $ 10,000.00 | |
| 1098 | ADDITIONAL STAGE AND DECKING (MIX PO | CONSULTANT ZEE | $ 3,200.00 | $ 3,200.00 | |
| 1098A | ADDITIONAL TRUSSING (VIDEO SUPPORTS) | BML Video | $ 8,500.00 | $ 8,500.00 | |
| 1098B | NORTH STAGE | THIS IS IT | $ 7,800.00 | $ 7,800.00 | |
| 1098C | VIP TOWER | | | | |
| 1099 | POWER/DISTRIBUTION | O'BRIEN | $ 13,500.00 | $ 13,500.00 | |
| 1100 | FUEL | O'BRIEN | $ 2,000.00 | $ 2,000.00 | |
| 1101 | STAGE FLOORING (MARLEY) | | $ - | $ - | |
| 1102 | STEP AND REPEAT | | $ - | $ - | |
| 1103 | TENTING | ALAN PARTY RENTALS | $ 8,500.00 | $ 8,500.00 | |
| 1103A | BALLAST | O'BRIEN | $ 2,000.00 | $ 2,000.00 | |
| 1104 | TABLES AND CHAIRS | ALAN PARTY RENTALS | $ 1,200.00 | $ 1,200.00 | |
| 1105 | LINENS | | $ - | $ - | |
| 1106 | SOFT GOODS (CUSTOM) | | $ - | $ - | |
| 1107 | HEAVY EQPT | UNITED | $ 15,000.00 | $ 15,000.00 | |
| 1109 | CLEAN UP | O'BRIEN | $ 1,200.00 | $ 1,200.00 | |
| 1110 | ADDITIONAL FLOOR COVERING | | $ - | $ - | |
| 1112 | TRUCK RENTAL- 1 truck(4) 1 van (4) | CC RENTALS | | | |
| 1111 | VENDOR TRAVEL | | $ - | $ - | |
| **1114** | **TOTAL  INFRASTRUCTURE** | | **$   84,400.00** | **$   84,400.00** | |

| I | CATERING/CRAFT SERVICE | | AMOUNT | AMOUNT | |
|---|---|---|---|---|---|
| 1115 | CRAFT SERVICE / LOCATION | Patty Gutarra | $ 4,500.00 | $ 4,500.00 | |
| 1116 | BACKSTAGE/TALENT/GREENROOM CATERING | | $ 3,500.00 | $ 3,500.00 | |
| | CATERING RUNNER | Bertrand Thomas | | | |
| | CATERING RUNNER | Ben Camp | | | |
| | CATERING RUNNER | David Williams | | | |
| | | | | | |
| | Keurig Machines | | | | |
| 1117 | ADDL MEALS | SWP | $ 200.00 | $ 200.00 | |
| **1118** | **TOTAL CATERING** | | **$   8,200.00** | **$   8,200.00** | |

BUDGET V1

STUART WEISSMAN PRODUCTIONS

| J | VENUE FEES | | AMOUNT | AMOUNT | | |
|---|---|---|---|---|---|---|
| 1118 | PRIMARY TIMES SQUARE SPACE | CITY | $ 300,000.00 | $ 300,000.00 | | |
| 1119 | Times Square Alliance | TS Alliance | $ - | $ 30,000.00 | | |
| 1120a | FDNY- Genies | add 3 blocks | $ - | $ 195,000.00 | | |
| 1120b | Sound Permit | | | | | |
| 1120c | DCA permit | | | | | |
| 1120d | Dep health permit | | | | | |
| 1120e | Sanitation Permit | | | | | |
| 1121 | SUPPORT PERMITTING | NYC | $ 7,500.00 | $ 7,500.00 | | |
| 1122 | TOTAL VENUE | | $ 307,500.00 | $ 532,500.00 | $ - | $ 532,500.00 |

BUDGET V1

STUART WEISSMAN PRODUCTIONS

| K | NON BUDGETED ITEMS | | AMOUNT | AMOUNT | |
|---|---|---|---|---|---|
| 1123 | SIGNAGE TOWERS | CONSULTANT ZEE | $15,000.00 | $15,000.00 | |
| 1124 | Production Management Services | Productions New York | $25,000.00 | $25,000.00 | |
| 1125 | SST | | | | |
| 1126 | BACKLINE | | $5,000.00 | $5,000.00 | |
| 1127 | DRESSINGROOM MOTORHOMES | 1st Cin Prod | $7,200.00 | $7,200.00 | |
| 1128 | BACKSTAGE/TALENT/GREENROOM CATERING | | | | |
| 1129 | CRASH BARRICADE | BML | | | |
| 1130 | ADDITIONAL STAGING COSTS- PRESS RISER | BML | $2,500.00 | $2,500.00 | |
| 1131 | GROUND TRANSPORTATION | | | | |
| 1132 | ARTIST PARKING | | $1,500.00 | $1,500.00 | |
| 1133 | ARTIST TRUCKING | | $2,500.00 | $2,500.00 | |
| 1134 | Talent Wranglers- paid by glen angelino | Michelle & ? | $2,500.00 | $2,500.00 | |
| 1135 | Signature Wall | Tim Keiser | | | |
| 1136 | Crew Catering- 40% | Patty | | | |
| | Banners | Stagetops | $20,000.00 | $20,000.00 | |
| | United- 2 gators, fork, 2 pallett jacks | United | | | |
| | STAGE/ NORTH SOUTH | THIS IS IT | | | |
| 1137 | Towels | Max Tex | $1,500.00 | $1,500.00 | |
| 1138 | SUBTOTAL ADD-ONS | | $82,700.00 | $82,700.00 | |
| 1139 | 15% CONTING | | $12,405.00 | $12,405.00 | |
| | **TOTAL** | | $95,105.00 | $95,105.00 | |

| L | ADDITIONAL BLOCKS | PER BLOCK | AMOUNT | AMOUNT | |
|---|---|---|---|---|---|
| 1140 | PRODUCTION STAFF | | $3,500.00 | $3,500.00 | |
| 1141 | CITY COSTS | | $65,000.00 | $0.00 | |
| 1142 | ALLIANCE COSTS | | $10,000.00 | $0.00 | |
| 1143 | TENTS | | $5,000.00 | $5,000.00 | |
| 1144 | ADDITIONAL SOUND | | $2,500.00 | $2,500.00 | |
| 1145 | TABLES AND CHAIRS | | $2,500.00 | $2,500.00 | |
| 1146 | SIGNAGE | | $5,000.00 | $5,000.00 | |
| 1147 | POWER | | $3,200.00 | $3,200.00 | |
| 1148 | LABOR | | $3,500.00 | $3,500.00 | |
| 1149 | **TOTAL ADDITIONAL BLOCKS** | | **$100,200.00** | **$25,200.00** | |

BUDGET V1

STUART WEISSMAN PRODUCTIONS

| Category | Vendor | Amount of invoice | Paid | Cut Checks | Not released | Total Due | Payment | | |
|---|---|---|---|---|---|---|---|---|---|
| staging | this is it | $ 11,486.31 | | | | $ 11,486.31 | | | |
| staging-banners | this is it | $ 12,236.46 | | | | $ 12,236.46 | | | |
| Designer | Jeremy Thom | $ 19,995.00 | $ (2,500.00) $ (750.00) | | | $ 16,745.00 | | | |
| Hotel | Jeremy Thom | $ 438.07 | | | | $ 438.07 | | | |
| Motor Homes | Shooting Star | $ 4,278.79 | $ (4,278.79) | | | $ - | cc | | |
| Laminator | Staples | $ 163.29 | $ (163.29) | | | $ - | CC | | |
| Tents | Classic Party Rentals | $ 51,775.28 | | | | $ 51,775.28 | | | |
| Hard Drives | Amazon | $ 1,437.84 | $ (1,437.84) | | | $ - | | | |
| Backline | esportsonline | $ 198.53 | $ (198.53) | | | $ - | CC | | |
| Backline | Guitar Center | $ 211.11 | $ (211.11) | | | $ - | CC | | |
| Backline | Steel Deck | $ 3,086.61 | | | | $ 3,086.61 | | | |
| Power/Motor Homes | O'Briens | $ 45,877.20 | | $ (45,877.20) | | $ - | 6578 | | |
| Coneheads | Southshore | $ 23,550.00 | | $ (16,485.00) $ (7,065.00) | | $ - | 6586 | | |
| Casual Labor | Southshore | $ 40,420.00 | | $ (21,420.00) $(19,000.00) | | $ - | 6586 | 6582 | 6581 |
| Stagehand Labor | Premier | $ 222,485.55 | $(195,755.82) | | $(26,729.73) | $ - | 6585 | | |
| Banners | National Flag | $ 52,183.79 | | $ (52,183.79) | | $ - | 6584 | | |
| Cleaning | Avery | $ 7,105.00 | | $ (7,105.00) | | $ - | 6588 | | |
| Construction-Flats | Tim Kaiser | $ 9,975.00 | $ (5,800.00) | $ (4,175.00) | | $ - | 6524 | 6587 | |
| Heavy Equipment | United Rentals | $ 20,577.82 | | $ (20,577.82) | | $ - | 6592 | | |
| Location Manager | Doug Baker | $ 3,000.00 | | $ (3,000.00) | | $ - | 6598 | | |
| Location Coordinator | Rob Vandelaar | $ 900.00 | | $ (900.00) | | $ - | 6593 | | |
| Runner | Paul Jennings | $ 800.00 | | $ (800.00) | | $ - | 6597 | | |
| Runner | Brendan Milvhill | $ 260.00 | | $ (260.00) | | $ - | 6601 | | |
| Runner | Matthew Trifiletti | $ 540.00 | | $ (540.00) | | $ - | 6596 | | |
| Runner | Anthony Jamass | $ 540.00 | | $ (540.00) | | $ - | 6600 | | |
| Runner | Joseph Campanella | $ 200.00 | | $ (200.00) | | $ - | 6602 | | |
| Runner | Jennifer Glickman | $ 1,320.00 | | $ (1,320.00) | | $ - | 6603 | | |
| Runner | Tanya Fable | $ 200.00 | | $ (200.00) | | $ - | 6604 | | |
| Runner | Allan Abrahms | $ 200.00 | | $ (200.00) | | $ - | 6599 | | |
| Crafty | Patricia Guterra | $ 10,365.00 | | $ (10,365.00) | | $ - | 6551 | | |
| Decking | Consultant Zee | $ 78,088.00 | | $ (50,000.00) | | $ 28,088.00 | 6577 | | |
| Radios | AAA Communications | $ 325.00 | | $ (325.00) | | $ - | 6576 | | |
| Backline | Best Instrumental Rental Services | $ 3,454.61 | | $ (3,454.61) | | $ - | 6548 | | |
| Backline | Best Instrumental Rental Services | $ 4,125.00 | | $ (4,125.00) | | $ - | 6547 | | |
| Runner | Daniel Trawin | $ 2,780.00 | | $ (2,780.00) | | $ - | 6618 | | |
| Runner | Catie-Rae Zappala | $ 440.00 | | $ (440.00) | | $ - | 6611 | | |
| Runner | Dennis Marmon | $ 880.00 | | $ (880.00) | | $ - | 6616 | | |
| Runner | Bertrand Thomas | $ 2,320.00 | | $ (2,320.00) | | $ - | 6617 | | |
| Runner | Nigel S Clayton | $ 1,140.00 | | $ (1,140.00) | | $ - | 6612 | | |
| Runner | Mohammad Motaleb | $ 1,780.00 | | $ (1,780.00) | | $ - | 6614 | | |

checks needed

STUART WEISSMAN PRODUCTIONS

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Producer Fee | Productions NY | $ 32,275.00 | | | $ (32,275.00) | $ - | | 6526 |
| Producer Fee | Productions NY | $ 25,000.00 | | | $ (25,000.00) | $ - | | 6526 |
| Runner | Grant Gardner | $ 300.00 | | | $ (300.00) | $ - | | 6580 |
| Signage | Fed Ex | $ 1,207.97 | $ (1,207.97) | | | $ - | cc | |
| Expendables | Home Depot | $ 729.67 | $ (729.67) | | | $ - | cc | |
| Stage Management | Lauren Guida | $ 1,000.00 | $ (1,000.00) | | | $ - | | 6552 |
| Stage Management | Martin Yee | $ 1,500.00 | $ (1,500.00) | | | $ - | | 6572 |
| Stage Management | Liane Moccia | $ 1,000.00 | $ (1,000.00) | | | $ - | | 6573 |
| Stage Management | Troy Morehouse | $ 2,250.00 | $ (2,250.00) | | | $ - | | 6574 |
| Stage Management | Victorea Vanech | $ 400.00 | $ (400.00) | | | $ - | | 6569 |
| Stage Management | Jason Weiss | $ 250.00 | $ (250.00) | | | $ - | | 6570 |
| Stage Management | Michael Matuza | $ 3,000.00 | $ (3,000.00) | | | $ - | | 6571 |
| Stage Management | Alex Ortiz | $ 450.00 | $ (450.00) | | | $ - | | 6566 |
| Stage Management | Lorraine Baranek | $ 300.00 | $ (300.00) | | | $ - | | 6567 |
| Stage Management | Moreno Brown | $ 500.00 | $ (500.00) | | | $ - | | 6568 |
| Stage Management | Loam Doscher | $ 1,250.00 | $ (1,250.00) | | | $ - | | 6564 |
| Stage Management | Umi Productions Inc | $ 2,000.00 | $ (2,000.00) | | | $ - | | 6565 |
| Stage Management | Cynthia Baker | $ 450.00 | $ (450.00) | | | $ - | | 6561 |
| Stage Management | Hillary Capps | $ 300.00 | $ (300.00) | | | $ - | | 6562 |
| Video | BML Video | $ 95,000.00 | $ (25,000.00) | | | $ 70,000.00 | Wire | |
| Trussing | BML Theatrical | $ 73,521.88 | $ (25,000.00) | | | $ 48,521.88 | Wire | |
| | Priority Steel | $ 9,647.75 | $ (2,168.75) | $ (3,732.41) | $ (4,879.00) | $ (1,132.41) | cc    cc | 6542 |
| Permits | SAPO | $ 426,640.00 | $(426,640.00) | | | $ - | CC | |
| Permits | Citibike | $ 8,601.13 | $ (8,601.13) | | | $ - | | 6559 |
| Permits | Alliance | $ 22,000.00 | $ (22,000.00) | | | $ - | | |
| | Mike Murphy | | | | | $ - | | |
| | Joe K | | | | | $ - | | |
| Permits | Sound Permit | $ 45.00 | $ (45.00) | | | $ - | | |
| Permit | DOH | $ 71.74 | $ (71.74) | | | $ - | Petty Cash | |
| Permit | DOH | $ 71.74 | $ (71.74) | | | $ - | Petty Cash | |
| Power | Filmwerks | $ 41,047.60 | | | | $ 41,047.60 | | |
| Security | D. Sterling | $ 10,343.12 | | | | $ 10,343.12 | | |
| Sound | RSA | $ 29,000.00 | | | | $ 29,000.00 | | |
| Internal Staff | Tommy | $ 2,200.00 | $ (2,200.00) | | | $ - | | |
| Internal Staff | Beth | $ 1,200.00 | | | | $ 1,200.00 | | |
| Internal Staff | Amber | $ 850.00 | | | | $ 850.00 | | |
| Internal Staff | Andrew | $ 500.00 | | | | $ 500.00 | | |
| Internal Staff | Adam | $ 850.00 | | | | $ 850.00 | | |
| | A Royal Flush | | | | | $ - | | |
| | | | | | | $ - | | |
| | | | | | | $ - | | |
| | | | | | | $ - | | |
| | | | | | | $ - | | |
| | | | | | | $ - | | |
| | | | | | | $ - | | |
| | | | | | | $ - | | |

checks needed

STUART WEISSMAN PRODUCTIONS

|  | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| $ | 1,436,891.86 | $(738,731.38) | $ (4,482.41) | $ - | $(315,847.42) | $(52,794.73) | $ (325,035.92) | $(693,678.07) |

| | | |
|---|---|---|
| Production Fee 15% | $ | 215,533.78 |
| Fee Per Block | | 200000 |
| Total | $ | 1,852,425.64 |
| Amount Paid | $ | 1,631,500.00 |
| | $ | (220,925.64) |

Payments

| | |
|---|---|
| $ | **100,000.00** |
| $ | (47,500.00) |
| $ | 100,000.00 |
| $ | (45,000.00) |
| $ | 1,300,000.00 |
| $ | (250,000.00) |
| $ | 1,157,500.00 |
| $ | 531,275.00 |
| $ | (32,275.00) |
| $ | (25,000.00) |
| $ | **1,631,500.00** |

checks needed

STUART WEISSMAN PRODUCTIONS

mike zee
glenn -revised- ghostlight
alan party rentla
patty invoice and ikea
obrien

need

STUART WEISSMAN PRODUCTIONS

need

FILED: NEW YORK COUNTY CLERK 05/03/2016 05:05 PM

NYSCEF DOC. NO. 265

INDEX NO. 652990/2014

RECEIVED NYSCEF: 05/03/2016

Case 16-00186-ref    Doc 1-1    Filed 06/06/16    Entered 06/06/16 14:02:00    Desc
Exhibit A    Page 129 of 149

# EXHIBIT 10



Image 1.  Side "Stage" at the 2013 Festival



Image 2.  Darling Parade's "Stage" at the 2013 Festival

# EXHIBIT 11

| From: | Tim Hayes <timhayes@cbgb.com> |
|---|---|
| Sent: | Monday, January 27, 2014 1:07 AM |
| To: | Michael Smith <mlsmith@aresmgmt.com> |
| Subject: | 1 of 2 wires for Monday |

Mike,

Imagine Dragons had a huge performance on the Grammys tonight. They were one of the bands that stole the show. They also won a big Grammy too!

I will have full, itemized supporting documents for every item on for the concert that will show each vendor and asset. This is for the stage and load-in:

$107,350.00 to
SW Productions, Inc.
Wire Instuctions: Citibank NA, 435 Main Street, Armonk, NY 10504 ABA #: 021000089 A/C #:                Redacted

Thanks

Tim

FILED: NEW YORK COUNTY CLERK 05/03/2016 05:05 PM
NYSCEF DOC. NO. 260

INDEX NO. 652990/2014

RECEIVED NYSCEF: 05/03/2016

Case 16-00186-ref    Doc 1-1    Filed 06/06/16    Entered 06/06/16 14:02:00    Desc
Exhibit A    Page 133 of 149

# EXHIBIT 12

| **From:** | Tim Hayes <timhayes@cbgb.com> |
| **Sent:** | Tuesday, February 4, 2014 11:00 AM |
| **To:** | Michael Smith <mlsmith@aresmgmt.com>; Kirsten Agnello <kirsten.drew.a@gmail.com>; Elizabeth Crecca <ecrecca@aresmgmt.com> |
| **Subject:** | Wire this morning |

Load in is going great.  SWP wrote some checks to get people in the door.  We are keeping a full accounting.
Please wire $603,000 this morning to:

Wire Instructions: SW Productions Inc.  Citibank, 435 main street, Armonk NY 10504, tel: 914 273 2207
ABA: 021000089 Account # ■■■■■■
Fed ID:■■■■■          Redacted
      Redacted

Tim Hayes
CBGB & CBGB Festival

(917) 804-0058

CONFIDENTIAL                                                                    ARES0000868

FILED: NEW YORK COUNTY CLERK 05/03/2016 05:05 PM
INDEX NO. 652990/2014

NYSCEF DOC. NO. 266
RECEIVED NYSCEF: 05/03/2016

Case 16-00186-ref    Doc 1-1    Filed 06/06/16    Entered 06/06/16 14:02:00    Desc
Exhibit A    Page 135 of 149

# EXHIBIT 13

| | |
|---|---|
| **From:** | STUART WEISSMAN <stuart@swpnyc.com> |
| **Sent:** | Monday, February 24, 2014 4:27 PM |
| **To:** | Tim Hayes |
| **Cc:** | Beth Gold |
| **Subject:** | Worksheet to close out AT&T and Amnesty |
| **Attachments:** | Tin Hayes Worksheet.xlsx |

--
Stuart Weissman
CEO
SWP
1560 Broadway
Suite 901
New York NY 10036
Office 212.993.6444
Fax 917.591.6666

The information contained in this transmission may contain privileged and
confidential information.  It is intended only for the use of the person or
people named above. If you are not the intended recipient,  you are hereby
notified that any review, dissemination, distribution or duplication of this
communication is strictly prohibited. If you are not the intended recipient,
please contact the sender by reply email and destroy all copies of the
original message.

Please consider the environment before printing this e-mail.

1

SWP001255

Filename:        Tin Hayes Worksheet.xlsx

Exception:       File Produced Natively

SWP001256

Amnesty & AT&T Cash Reconciliation
SWP/Productions NY

AMNESTY

| | | |
|---|---|---|
| Grand total Expenses per Production Budget | $ 773,838.57 | |
| Less Stagehands: | $ 145,000.00 | |
| Addl SWP Fee | $  20,000.00 | |
| Subtotal Due to SW Productions: | $ 648,838.57 | (your $50k is in this number) |
| | | |
| Wire From Productions NY | $ 603,000.00 | |
| Wire From Productions NY | $ 107,350.00 | |
| Total : | $ 710,350.00 | |
| | | |
| Amount Due back Productions NY: | $  61,511.43 | |

| | | |
|---|---|---|
| AT&T Time Square Actuals | $  90,334.78 | |
| AT&T Permitting Actuals | $  47,550.00 | (3 smaller events) |
| Wire From Productions NY | $ (47,550.00) | To cover those permits |
| | | |
| Total due before AT&T SWP Fees | $  90,334.78 | |

On the Times Square Job
The amount you had originally billed the Marketing Arm        $ 114,000.00

If you add the additional costs to be billed back

| | | |
|---|---|---|
| Additional Permitting | $ | 7,000.00 |
| Snow Removal Team | $ | 2,750.00 |

| | | |
|---|---|---|
| You should have billed Marketing Arm | $ 123,750.00 | |

Your line item expenses

| | | |
|---|---|---|
| Walkies | $ | 500.00 |
| Sound System | $ | 1,750.00 |

So

| | | |
|---|---|---|
| If you take the total billings | $ 123,750.00 | |
| Subtract out your hard costs | $ | 2,250.00 |
| Subtotal | $ 121,500.00 | |
| Subtract out our hard costs | $ | 90,334.78 |
| This makes the profit from AT&T Times Square | $ | 31,165.22 |

So on the SWP Fee side

| | | | |
|---|---|---|---|
| If we do the 2 small events at $2500/each | $ | 2,500.00 | Event One |
| | $ | 2,500.00 | Event 2 |
| If we do the Union Square job at $5,000 | $ | 5,000.00 | |

| | | |
|---|---|---|
| This Makes the subtotal from the 3 little jobs | $ | 10,000.00 |

| | | | | |
|---|---|---|---|---|
| If we split the profit from Times Square | | $ | 31,165.22 | |
| NY Productions | at 33% | $ | 10,284.52 | Fee for Prod NY |
| SWP | at 67% | $ | 20,880.70 | Fee for SWP |

So if this works as written
HERE IS WHAT NEEDS TO HAPPEN:

Prod NY

| | |
|---|---|
| Pay for SWP'S hard costs | $ 90,334.78 |
| Pay SWP Fee Times Square | $ 20,880.70 |
| Pay SWP Fee for 3 little jobs | $ 10,000.00 |
| So the total amount you need to pay us for AT&T | $ 121,215.48 |

And

| | |
|---|---|
| You need to pay SWP the deposit for 2014 CBGB Festival | $ 100,000.00 |
| Total Amount Due SWP | $ 221,215.48 |

FILED: NEW YORK COUNTY CLERK 05/03/2016 05:05 PM
INDEX NO. 652990/2014

NYSCEF DOC. NO. 269
Case 16-00186-ref    Doc 1-1    Filed 06/06/16    Entered 06/06/16 14:02:00    Desc
RECEIVED NYSCEF: 05/03/2016

Exhibit A    Page 141 of 149

# EXHIBIT 14

| | |
|---|---|
| **From:** | Leslie Zigel <leslie@ziglaw.com> |
| **Sent:** | Tuesday, July 01, 2014 4:04 PM |
| **To:** | Tim Hayes; Tim Hayes; Tim Hayes |
| **Cc:** | Stuart Weissman; louise@cbgb.com; Picca, Dominic |
| **Subject:** | Fw: FW: application 142137 |
| **Attachments:** | October Music Festival Applications-SW.pdf |

Dear Tim:

      Attached is a letter that my client just received from the City of New York. We have learned that the competing applicant referred to for this permit is CBGB. This is a clear breach of the prior agreement which currently governs the business relationship between SWP and CBGB. We are 10 days away from the July 11th deadline to be able to announce 60 days out as you requested and SWP has not received monies nor other deliverables requested on numerous occasions from CBGB as required under the agreement. SWP will not retract its application for this event.

      In addition, I am still awaiting a response to my prior emails. If I do not hear back from you promptly, be advised we will take whatever actions necessary to protect SWP's rights under contract, in equity and at law.

      All rights reserved.

Sincerely,
Leslie Zigel

Leslie Jose Zigel
ZIGLAW
4500 Biscayne Blvd., Suite 201
Miami, FL 33137
T  305-604-9944
F  305-604-9945
E  leslie@ziglaw.com
W  www.ziglaw.com

1

CBGB-0006153

**NYC**

Office of the Mayor

Stuart Weissman
1560 Broadway
NY, NY, 10036

July 1st, 2014

Bill de Blasio
Mayor

Cristin D. Burtis
Executive Director
Office of Citywide Event
Coordination and Management

Emil Lissauer
Director
Street Activity Permit Office

100 Gold Street, 2nd Floor
New York, NY 10038

212 788 7567 tel
212 788 7867 fax

Dear Applicant,

The Mayor's Street Activity Permit Office is in receipt of multiple permit applications, by two different sponsors, to hold a music festival in Times Square on October 11, 2014. The applications are for the same dates and times, and are for overlapping streets or ones very close in proximity.

Both you and the other applicant, claim to be the authorized owner of this annual event. The Mayor's Office is not in a position to mediate this dispute. The Mayor's Office cannot issue two permits for the same day, time and location. Additionally, we cannot issue two permits in close proximity for events of this size; therefore until such time as this matter is resolved amicably between the two groups, or a Court decides the issue, a permit will not be issued for this event.

If either party is willing to request an alternate date we will look to accommodate both requests. Should you have any questions please feel free to contact me.

Sincerely,

Emil Lissauer
SAPO Director

# EXHIBIT 15

| | |
|---|---|
| **From:** | STUART WEISSMAN <stuart@swpnyc.com> |
| **Sent:** | Monday, August 25, 2014 12:25 PM |
| **To:** | Tim Hayes; Tim Hayes; Tim Hayes |
| **Subject:** | One last chance |

Tim-

Before I make any irrevocable decisions, I wanted to give this one last chance to get resolution.

It was always my intention to honor our agreement and produce the show, and when things started moving sideways, all I was looking to do was to protect SWPs interest. Whether not I understood why it was happening, it was never my intention to attack you, the festival or the brand.

After meeting with the litigators on Friday, they want to pursue this in a way that is so aggressive that it surprised even me. A plan was laid out not only to get a restraining order to stop the Times Square component of the Festival, but to stop the ENTIRE festival.  They want me  to litigate this, no holds barred,  to maximize the ENTIRE value of what their perception SWP's damages are, from the opportunity cost of the concept, in terms of investment from SWP in years one and two, the potential money lost in years 3, 4 and 5 and the value of the damage to the property from year 6 and well on into the future. Not only were the numbers they feel are appropriate astounding, these guys think it is an advantage to create carnage and pain along the way if it helps move anything favorably in our direction.

I never thought before, and don't think so now, that it is in either of our interests to get involved in a protracted legal battle. But the only way this isn't going to happen is if we can open a dialogue to resolve this and to do it quickly. As the lawyers told me, a substantial amount of my leverage revolves around attacking you BEFORE the festival starts this year. And as distasteful as I find this legal process, I can't walk away from this. And they're chomping at the bit.

I have complete control over what happens now, and very little once this gets started. If you choose not to address this now,  the only thing that is guaranteed to end up happening is we'll make our lawyers rich.

I am available at your convenience to discuss this whenever you're ready.

1

Stuart

--
Stuart Weissman
CEO
SWP
1560 Broadway
Suite 901
New York NY 10036
Office 212.993.6444
Fax 917.591.6666

The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person or people named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Please consider the environment before printing this e-mail.

2

SWP004863

INDEX NO. 652990/2014

NYSCEF DOC. NO. 74                                                    RECEIVED NYSCEF: 05/03/2016

# EXHIBIT 16

**From:**                        STUART WEISSMAN <stuart@swpnyc.com>
**Sent:**                       Wednesday, August 27, 2014 1:16 PM
**To:**                          STUART WEISSMAN
**Subject:**                 FW: Thank you for the swift reply

---

**From:** STUART WEISSMAN <stuart@swpnyc.com>
**Date:** Wednesday, August 27, 2014 at 1:16 PM
**To:** Tim Hayes <maplehound@yahoo.com>, Tim Hayes <timhayes@productionsny.com>, Tim Hayes <timhayes@cbgb.com>
**Cc:** Leslie Zigel <leslie@ziglaw.com>, "Picca, Dominic" <DJPicca@mintz.com>
**Subject:** Thank you for the swift reply

Tim-

Thank you for the swift reply. I can't help but to see the irony of your $100,000.00 settlement offer being the exact same amount SWP paid your other company out of the production budget as a "consulting fee" for the first two years.

Clearly, we view this very differently. You seem to be looking at this entire situation as some kind of a nuisance, while we are looking at it as that you have irreparably damaged my interest in the Festival and caused considerable harm to SWP.

What I am comfortable letting you know is that we intend to seek damages that are in excess of $10,000,000.00, which is more than 100 times higher than your offer. Should you wish to reconsider your offer, we will continue to entertain them.

Stuart

--
Stuart Weissman
CEO
SWP
1560 Broadway
Suite 901
New York NY 10036
Office 212.993.6444
Fax 917.591.6666

The information contained in this transmission may contain privileged and

1

SWP005269

confidential information.  It is intended only for the use of the person or people named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Please consider the environment before printing this e-mail.

SWP005270